# 17-1957-cv

# United States Court of Appeals
*for the*
## Second Circuit

———————◆———————

MICHAEL YAMASHITA, MICHAEL YAMASHITA, INC.,

*Plaintiffs-Appellants,*

— v. —

SCHOLASTIC INC.,

*Defendant-Appellee.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFFS-APPELLANTS

MAURICE HARMON
CHRISTOPHER SEIDMAN
GREGORY N. ALBRIGHT
HARMON SEIDMAN BRUSS & KERR, LLC
101 South Third Street, Suite 265
Grand Junction, Colorado 81501
(970) 245-9075

*Attorneys for Plaintiffs-Appellants*

# CORPORATE DISCLOSURE STATEMENT

# PURSUANT TO RULE 26.1 OF THE

# FEDERAL RULES OF APPELLATE PROCEDURE

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff / Appellant Michael Yamashita, Inc. states that it has no parent corporation, and there is no publicly-held corporation owning 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... v

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF JURISDICTION ........................................................ 3

ISSUES PRESENTED .............................................................................. 5

STATEMENT OF THE CASE ................................................................. 6

    A.    Summary of the case .................................................................. 6

    B.    The facts ......................................................................................... 7

        1.    The parties ........................................................................... 7

        2.    Facts alleged in Yamashita's original Complaint ......... 8

        3.    Facts alleged in the Proposed First Amended
              Complaint ......................................................................... 12

    C.    Pertinent procedural history ............................................... 18

    D.    The District Court's Orders ................................................. 19

        1.    The January 5, 2017 Memorandum Opinion
              and Order .................................................................... 19

        2.    The February 28, 2017 Order ...................................... 20

SUMMARY OF ARGUMENT ............................................................... 21

ARGUMENT .......................................................................................... 23

    I.    The District Court erred when it granted Scholastic's
       motion to dismiss the copyright infringement claims
       in Yamashita's original Complaint ..................................... 23

        A.    Standard of review ........................................................ 23

        B.    The District Court erred in applying *Kelly*'s
            heightened pleading standard for copyright
            infringement ................................................................. 23

i

1. There are only two elements of copyright infringement.........................................................24

2. Copyright infringement is not subject to a heightened pleading standard, and a plaintiff need not prove a *prima facie* case or establish evidentiary details in the complaint...........................................................27

3. A plaintiff is permitted to plead on information and belief when factual details are peculiarly within the defendant's possession and control....................31

4. The District Court erred in when it relied on *Kelly* as a basis for dismissing Yamashita's copyright infringement claim with prejudice........................................................36

C. Yamashita's Complaint is sufficient even under *Kelly*...............................................................41

1. Yamashita adequately alleged "by what acts" Scholastic infringed copyrights.................41

2. Yamashita also adequately alleges "during what time" Scholastic infringed the copyrights............................................................45

D. Many courts have found that infringement complaints no more detailed than Yamashita's – including in other cases *against Scholastic* – adequately state a claim upon which relief can be granted....................................................................49

E. A copyright infringement case like Yamashita's is neither "aimless trawling" nor a "fishing expedition," as Judge Forrest found ...........................50

F. Scholastic's "audit" argument has no merit ................51

ii

G. The injustice of the District Court's error is underscored by its dismissal of Yamashita's claims *with prejudice* ................................................... 52

II. The District Court erred when it denied Yamashita leave to amend with respect to 118 out of 119 of his copyright infringement claims, and denied Yamashita leave to plead his proposed common law claims ................................................................................... 53

A. Standards of review ...................................... 53

B. Leave to amend is liberally granted ............................ 54

C. The Proposed First Amended Complaint adequately pleaded 119 claims of copyright infringement, and the District Court erred when it denied Yamashita leave to pursue 118 of those claims ............................................................ 55

D. The District Court erred when it denied Yamashita leave to plead common law claims ............ 57

1. The District Court's reasons for denying Yamashita leave to amend to plead bailment-based claims were erroneous .............. 57

a. Yamashita's bailment theory does not depend upon the existence of a written contract ......................................... 59

b. The District Court's speculation that "joinder of Corbus" [sic] "might" be required was improper and no basis for dismissal ............................................... 60

c. Judge Forrest erred in holding Yamashita lacks standing to enforce PVAs that Scholastic contends, and Judge Chesler found, bind Yamashita on an agency theory ................ 63

iii

d. Judge Forrest erroneously cherry-picked and misinterpreted provisions of the PVAs, and overlooked Yamashita's allegation that Scholastic refused to account for its uses.......................................................66

2. There also is no merit in Scholastic's additional reasons for opposing Yamashita's motion for leave to amend, which were not adopted by the District Court................................................................68

a. Scholastic does not show futility with unreasonable interpretations of the PVAs ....................................................68

b. Scholastic did not show Yamashita's proposed bailment and conversion claims are futile for lack of Scholastic's "exclusive control" over a "unique" original ....................................71

c. Yamashita's conversion and accounting claims are not preempted........73

CONCLUSION AND SUMMARY OF REQUESTED RELIEF .............75

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Trucking Ass'n, Inc. v.*
    *New York State Thruway Authority*,
    795 F.3d 351 (2d Cir. 2015)................................................. 54, 61, 63

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)..................................................... *passim*

*Arista Records, LLC v. Does 1-16*,
    2009 WL 414060 (N.D.N.Y. 2009), *aff'd*, 604 F.3d 110
    (2d Cir. 2010)................................................................................ 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................... 28, 30, 36, 41

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................ *passim*

*Bob Daemmrich Photography, Inc. v.*
    *McGraw-Hill Global Education Holdings, LLC*,
    2017 WL 2544046 (W.D. Tex. June 12, 2017)............................... 27

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008)............................................................ 31

*Boyle v. Stephens, Inc.*,
    1997 WL 760498 (S.D.N.Y. 1997) ..................................... 26, 58, 72

*Briggs v. Gall*,
    2014 WL 12616828 (E.D. Pa. 2014) ............................................... 49

*Calloway v. Marvel Entertainment Group*,
    1983 WL 1141 (S.D.N.Y. 1983) ..................................................... 39

*Chalasani v. State Bank of India, New York Branch*,
    235 A.D.2d 449, 653 N.Y.S.2d 28 (1997)....................................... 59

*Clifton v. Houghton Mifflin Harcourt Pub. Co.*,
    152 F. Supp.3d 1221 (N.D. Cal. 2015) .................................... 33, 49

v

*Command Cinema Corp. v. VCA Labs, Inc.*,
  464 F. Supp. 2d 191 (S.D.N.Y. 2006) ............................................. 72

*Dauman v. Andy Warhol Foundation for Visual Arts, Inc.*,
  1997 WL 337488 (S.D.N.Y. 1997) ................................................. 26

*Devocean Jewelry LLC v. Associated Newspapers Ltd.*,
  2016 WL 6135662 (S.D.N.Y. 2016) ............................................... 25

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ......................................................... 35

*Elektra Entertainment Group, Inc. v. Barker*,
  551 F.Supp.2d 234, 238 (S.D.N.Y. 2008) ...................................... 27

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ............................................................. 29, 47, 48

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
  499 U.S. 340 (1991) .................................................... 24, 25, 26, 41

*Foman v. Davis*,
  371 U.S. 178 (1962) ....................................................................... 54

*Fonar Corp. v. Domenick*,
  105 F.3d 99 (2d Cir. 1997) ............................................................ 25

*Ford v. Williams*,
  62 U.S. (21 How.) 287, 16 L. Ed. 36 (1858) .................................. 64

*Franklin Electronic Publishers v. Unisonic Products Corp.*,
  763 F. Supp.1 (S.D.N.Y. 1991) ..................................................... 38

*Frerck v. Pearson Educ., Inc.*,
  2012 WL 1280771 (N.D. Ill. 2012) .......................................... 34, 43

*Gee v. CBS, Inc.*,
  471 F. Supp. 600 (E.D. Pa.), *aff'd without opinion*,
  612 F.2d 572 (3d Cir. 1979).................................................. *passim*

*Gonzalez v. Norrito*,
  256 A.D. 2d 440, 682 N.Y.S.2d 100 (2d Dep't 1998) ..................... 70

*Grace v. Corbis Sygma*,
    403 F. Supp. 2d 337, 347 (S.D.N.Y. 2005) (Chin, J.),
    *reversed on other grounds*, 487 F.3d 113 (2d Cir. 2007) ............... 57

*Hartford Fire Ins. Co. v. Empresa Ecuatoriana de Aviacion*,
    945 F. Supp. 51 (S.D.N.Y. 1996), *aff'd*, 122 F.3d 1056
    (2d Cir. 1997) ................................................................. 60

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    759 F.Supp.2d 363 (S.D.N.Y. 2010) ............................... 64

*In re Adelphia Recovery Trust*,
    634 F.3d 678 (2d Cir. 2011) ........................................... 65

*In re Bausch & Lomb, Inc. Securities Litigation*,
    941 F. Supp. 1352 (W.D.N.Y. 1996) ............................... 34

*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*,
    663 F.2d 4 (2d Cir. 1981) ............................................... 64

*John Wiley & Sons, Inc. v. Golden*,
    2015 WL 716880 (D.N.J. 2015) ...................................... 40

*Keller v. Scholastic*,
    E.D. Pa. Case No. 2:16-cv-01829-WB ...................... 49, 51

*Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.*,
    211 N.Y. 68, 105 N.E. 88 (1914) .................................... 64

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd without opinion*,
    23 F.3d 398 (2d Cir. 1994)...................................... *passim*

*Kousnsky v. Amazon.com, Inc.*,
    631 Fed.Appx. 22 (2d Cir. 2015) .............................. 40, 41

*Krist v. Scholastic, Inc.*,
    __ F. Supp. 3d __, 2017 WL 2349004 (E.D.P.A. May 30, 2017).... 40, 49

*Leaf, Inc. v. Burdeen*,
    1996 WL 89070 (N.D. Ill. 1996) ..................................... 39

*Lefkowitz v. McGraw-Hill Global Education Holdings, LLC*,
    23 F. Supp.3d 344 (S.D.N.Y. 2014) ........................ *passim*

*Malleolo v. Malleolo,*
    287 A.D.2d 603, 731 N.Y.S.2d 752 (2d Dep't 2001) ....................... 70

*Martin v. Briggs,*
    235 A.D.2d 192, 663 N.Y.S.2d 184 (1st Dep't 1997) ..................... 60

*Marvin E. Herman, Inc. v. White,*
    1994 WL 363980 (S.D.N.Y. 1994) ................................................. 66

*Marvullo v. Gruner & Jahr,*
    105 F. Supp.2d 225 (S.D.N.Y. 2000) ............................................. 27

*Maven Technologies, LLC v. Vasile,*
    147 A.D.3d 1377, 46 N.Y.S.3d 720 (4th Dep't 2017) ............... 69, 70

*Michaels Bldg. Co. v. Ameritrust Co., N.A.,*
    848 F.2d 674 (6th Cir. 1988) ....................................................... 35

*Mid America Title Co. v. Kirk,*
    991 F.2d 417 (7th Cir. 1993) ....................................................... 28

*Muench v. McGraw-Hill Companies, Inc.,*
    2013 WL 5372785 (S.D.N.Y. 2013) ............................................. 56

*Natkin v. Winfrey,*
    111 F. Supp. 2d 1003 (N.D. Ill. 2000) .................................... 72, 74

*Pacific Stock, Inc. v. Pearson Educ., Inc.,*
    2012 WL 93182 .......................................................................43-44

*Palmer Kane LLC v. Scholastic Corp.,*
    2013 WL 709276 (S.D.N.Y. 2013) ............................................... 43

*Panther Partners Inc. v. Ikanos Communications, Inc.,*
    681 F.3d 114 (2d Cir. 2012) ........................................................ 53

*Peco Pallet, Inc. v. Northwest Pallet Supply Co.,*
    2016 WL 5405107 (N.D. Ill. 2016) .............................................. 62

*Pelaez v. McGraw-Hill Global Education Holdings, LLC,*
    2017 WL 3432303 (S.D.N.Y. Aug. 9, 2017) ................................. 25

*Perrin & Nissen Ltd. v. SAS Group Inc.,*
    2009 WL 855693 (S.D.N.Y. 2009) ............................................... 25

*Pivar v. Graduate School of Figurative Art of the New York Academy of Art*,
290 A.D.2d 212, 735 N.Y.S.2d 522 (1st Dep't 2002) ...................... 59

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017) .......................................... 53

*Quadratec, Inc. v. Turn 5, Inc.*,
2015 WL 4876314 (E.D. Pa. 2015) .................................. 49

*Reed Elsevier, Inc. v. Muchnick*,
559 U.S. 154 (2010) ................................................ 24-25

*Satterwhite v. Harriman Nat'l Bank & Trust Co. of City of New York*,
13 F. Supp. 489 (S.D.N.Y. 1935) ................................... 58

*Seaboard Sand & Gravel Corp. v. Moran Towing Corp.*,
154 F.2d 399 (2d Cir. 1946) ......................................... 59

*Sohm v. Scholastic, Inc.*,
S.D.N.Y. Case No. 16-CV-7098(JPO) ................................ 12, 50, 52

*Sterling Interiors Group, Inc. v. Haworth, Inc.*,
1996 WL 426379 (S.D.N.Y. 1996) .................................. 35

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ....................................... 32

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ................................... 28, 30, 36, 41

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group*,
Inc., 2016 WL 5338550 (S.D.N.Y. 2016) .......................... 25

*TCA Television Corp. v. McCollum*,
151 F. Supp.3d 419 (S.D.N.Y. 2015), *aff'd*, 839 F.3d 168
(2d Cir. 2016), *cert. denied*, 137 S. Ct. 2175 (2017) ................ 23, 25

*Tross v. Ritz Carlton Hotel Company, LLC*,
928 F. Supp. 2d 498 (D. Conn. 2013) ....................... 62, 63

*Urbont v. Sony Music Entertainment*,
831 F.3d 80 (2d Cir. 2016) ......................................... 25

*Ursitti v. Swid,*
 71 N.Y.S.2d 208 (N.Y. City Ct. 1942)............................................58

*Ventures Educ. Sys. Corp. v. Professional Development Assocs., Inc.,*
 2008 WL 3166667 (S.D.N.Y. 2008)...................................25-26

*Warren v. John Wiley & Sons, Inc.,*
 952 F. Supp. 2d 610 (S.D.N.Y. 2013) ................................ 28, 43, 49

*Williams v. Citigroup Inc.,*
 659 F.3d 208 (2d Cir. 2011)...........................................................55

*Yamashita v. Scholastic, Inc.,*
 2017 WL 74738 (S.D.N.Y. 2017) .....................................................7

*Young-Wolff v. McGraw-Hill Companies,*
 2014 WL 349711 (S.D.N.Y. 2014) ..................................................43

*Young-Wolff v. McGraw-Hill School Educ. Holdings, LLC,*
 2015 WL 1399702 (S.D.N.Y. 2015) ...................................48, 49, 51

*Zalewski v. T.P. Builders, Inc.,*
 2011 WL 3328549 (N.D.N.Y. 2011)................................................27

*Zorbas v. United States Trust Co. N.A.,*
 48 F. Supp. 3d 464 (E.D.N.Y. 2014).............................................58

*Zuma Press, Inc. v. Getty Images (US), Inc.,*
 2017 WL 2829517 (June 29, 2017).................................................31

## Statutes

17 U.S.C. § 101 ........................................................................... 3, 71

17 U.S.C. § 106 ........................................................................... 1, 42

17 U.S.C. § 301(b) ...........................................................................74

17 U.S.C. § 411(a) ...........................................................................24

17 U.S.C. § 501(b) ...........................................................................41

28 U.S.C. § 1291 ...............................................................................4

28 U.S.C. § 1331 ...............................................................................3

28 U.S.C. § 1338(a) ................................................................ 4

28 U.S.C. § 1404(a) .............................................................. 63


## Rules

Fed. R. Civ. P. 8 .................................................................. 38

Fed. R. Civ. P. 8(a)(2) ............................................... 28, 29, 35

Fed. R. Civ. P. 9 ......................................................... 27, 34

Fed. R. Civ. P. 12(b)(6) .................................................. *passim*

Fed. R. Civ. P. 12(b)(7) ................................................. 60-61

Fed. R. Civ. P. 12(e) .......................................................... 37

Fed. R. Civ. P. 15(a) ............................................................ 4

Fed. R. Civ. P. 15(a)(2) ....................................................... 54

Fed. R. Civ. P. 19 ...................................................... 22, 61

Fed. R. Civ. P. 19(a) .............................................. 60-61, 63

Fed. R. Civ. P. 19(a)(1)(B) ................................................. 62

Fed. R. Civ. P. 19(b) .................................................. 62, 63

Fed. R. Civ. P. 59(e) ........................................................... 4

Fed. R. Civ. P. 60(b) ........................................................... 4

S.D.N.Y. Local Rule 6.3 ................................................ 4, 6

Second Circuit Local Rule 28.1(b) ........................................ 6


## Other Authorities

8A Am. Jur. 2d Bailments § 1 ............................................. 59

Baicker-McKee, Janssen, and Corr, *Federal Civil Rules Handbook* (2017) ........................................................... 61

H. R. Rep. 94-1476 ............................................................ 72

Wright & Miller, Fed. Prac. & Proc. § 1609 (3d ed. 2015)......................63

Wright, Miller, *et al.*, 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.) ..........61

# PRELIMINARY STATEMENT

Appellant Michael Yamashita is a professional photographer. He and Appellant Michael Yamashita, Inc. (collectively "Yamashita") are owners of copyrights in Mr. Yamashita's photographs. Yamashita alleges 119 instances of Appellee Scholastic, Inc. ("Scholastic") exceeding the scope of limited licenses issued to Scholastic for use of 82 of Yamashita's photographs in Scholastic's publications.

By misapplying an outdated, 38-year-old pleading standard, the District Court granted Scholastic's motion to dismiss under Fed.R.Civ.P. 12(b)(6), finding that Yamashita had not adequately pleaded in adequate detail "by what acts during what time the defendant infringed the copyright." The District Court erred.

First, there are two elements of copyright infringement – ownership of a valid copyright, and copying of constituent elements of the work that are original. Scholastic did not challenge Yamashita's allegations of ownership, and Yamashita plausibly alleged "copying" by identifying the ways Scholastic violated Yamashita's exclusive rights to reproduce, distribute and display the photographs under 17 U.S.C. § 106. Nothing more was required.

1

Second, the District Court disregarded principles articulated in *Arista Records LLC v. Doe 3*:[1] (1) copyright infringement claims are not subject to a heightened pleading standard; and (2) when factual details are peculiarly within the defendant's possession and control, a plaintiff may plead upon information and belief. Here, Scholastic obtained the limited licenses at issue from Corbis Corporation, a stock photography agency. The Corbis Invoices state the license limits and some of the Invoices identify the Scholastic publications in which the images were used. But Corbis issued the Invoices to Scholastic, not Yamashita; Yamashita does not have the Invoices but Scholastic does. In addition, Scholastic treats its print run and other usage information as confidential, and it alone knows the details of when and in what manner it exceeded the limited licenses. Under these circumstances, a complaint like Yamashita's may plead details known only to the defendant upon information and belief, and the defendant cannot legitimately claim lack of "fair notice," as many courts have held – including in copyright cases *against Scholastic*.

Third, the District Court erred when it denied Yamashita leave to

---

[1] 604 F.3d 110 (2d Cir. 2010).

amend to (1) plead further support for 118 of Yamashita's copyright claims and (2) assert common law claims.  Yamashita alleges that Scholastic's refusal to disclose its usage information is wrongful – an effort to get away with the "perfect crime."  Yamashita alleges a pattern: Scholastic knows in advance it will exceed the limits of licenses it requests (securing low-level usage rights to save money); it refuses to disclose its actual uses upon request; and, when sued for infringement it seeks dismissal by faulting the plaintiff for not pleading details – "by what acts during what time the defendant infringed the copyright" – that Scholastic alone knows.  Yamashita sought leave to amend to obtain a remedy – an accounting of Scholastic's uses under contract, bailment, and conversion theories – that would enable Yamashita to plead the details Scholastic (1) alone knows; (2) is wrongfully withholding and, at the same time, (3) is insisting Yamashita must plead to avoid dismissal.  The District Court let Scholastic get away with the perfect crime.

## STATEMENT OF JURISDICTION

This is an action under the Copyright Act, 17 U.S.C. § 101 *et seq*. The District Court had jurisdiction under 28 U.S.C. §§ 1331 (federal

3

question) and 1338(a) (copyright). This Court has jurisdiction under 28 U.S.C. § 1291.

This appeal follows:

(1)     a January 5, 2017 Order granting Scholastic's motion to dismiss Yamashita's original Complaint under Fed.R.Civ.P. 12(b)(6);[2]

(2)     Yamashita's motion, under Fed.R.Civ.P. 15(a), 59(e) and 60(b), and S.D.N.Y. Local Rule 6.3, for (a) reconsideration of the January 5, 2017 Order of dismissal, and (b) leave to file a [Proposed] First Amended Complaint ("PFAC");[3]

(3)     a February 28, 2017 Order that: (a) granted Yamashita's motion for reconsideration and vacated the January 5, 2017 Order; (b) granted Yamashita leave to amend solely with respect to the single image at row 80 of Exhibit 1 to the PFAC; (c) denied Yamashita leave to amend to plead copyright infringement with respect to any other rows in Exhibit 1; and (d) denied Yamashita leave to amend to plead proposed common law claims (Count II - Breach of contract / specific performance; Count III - Bailment / breach of duties of bailee; Count IV

---

[2] SPA1.  Citations in the form "A__" refer to the Joint Appendix, and "SPA__" to the Special Appendix.

[3] A282-446.

- Conversion; and Count V - Accounting);[4] and

(4)    the District Court's June 7, 2017 Judgment.[5]

Yamashita's appeal is from final orders and a judgment that dispose of all parties' claims.[6]  Yamashita's Notice of Appeal was timely filed on June 20, 2017.[7]

## ISSUES PRESENTED

Whether Yamashita adequately pleaded copyright infringement when he alleged (1) copyright ownership of the at-issue photographs and (2) Scholastic copied them – especially where Scholastic, alone, has knowledge of the secret details of its infringements?

Whether the District Court erred when it denied Yamashita leave to file the Proposed First Amended Complaint[8] to (1) amend Yamashita's copyright infringement claims, and (2) assert common law causes of action?

---

[4] SPA4.

[5] SPA5.

[6] *Id.*

[7] A535.

[8] A306-429.

# STATEMENT OF THE CASE

### A.  Summary of the case.[9]

This is a copyright infringement case.  Yamashita owns copyrights in photographs that were licensed for limited use by Scholastic.[10] Yamashita's original Complaint alleges that Scholastic infringed copyright by reproducing, distributing, and displaying copies of Yamashita's photographs in Scholastic's publications either beyond the limits of the licenses or without any license at all.[11]

Following transfer of this action from the District Court for the District of New Jersey,[12] on January 5, 2017 the District Court for the Southern District of New York (the "SDNY"), Honorable Katherine B. Forrest, granted Scholastic's motion to dismiss the original Complaint under Rule 12(b)(6).[13]  Yamashita moved the District Court for reconsideration and leave to file a First Amended Complaint.[14]  On February 28, 2017, Judge Forrest granted Yamashita leave to amend

---

[9] Local Rule 28.1(b).

[10] A10 ¶ 1; A11 ¶ 7, A16-31.

[11] A12-14 ¶¶ 9-20.

[12] A272-78.

[13] SPA1-3.

[14] A282-446.

solely to plead copyright infringement with respect to the image pleaded in row 80 of Exhibit 1 to the PFAC, but denied leave to plead other instances of Scholastic's copyright infringement and related common law claims.[15]

Yamashita filed a First Amended Complaint on March 7, 2017.[16] Scholastic answered.[17]

The parties reached a settlement agreement on the remaining claim (row 80) and on June 6, 2017 filed a Stipulation for Partial Dismissal with Prejudice and Motion for Entry of Final Judgment (with respect to the rest of Yamashita's claims).[18] On June 7, 2017, Judge Forrest granted the parties' Motion and entered Judgment.[19]

## B. The facts.

### 1. The parties.

Plaintiff and Appellant Michael Yamashita is a professional photographer residing in Chester, New Jersey. Mr. Yamashita is sole

---

[15] SPA4; *see Yamashita v. Scholastic, Inc.*, 2017 WL 74738 (S.D.N.Y. 2017).

[16] A500-524.

[17] A525-31.

[18] A532-34.

[19] SPA5-6.

owner of Plaintiff and Appellant Michael Yamashita, Inc.[20]  Plaintiffs are owners of copyrights in the 82 photographic images (the "Photographs") depicted in rows 1-119 of Exhibit 1 to the original Complaint.[21]

Defendant and Appellee Scholastic is a corporation based in New York City.  It is the world's largest publisher and distributor of children's books.[22]

### 2.    Facts alleged in Yamashita's original Complaint.

Yamashita entered into agreements with Corbis Corporation ("Corbis") authorizing Corbis to grant limited licenses to publishers like Scholastic for use of the Photographs.[23]  Between 1999 and 2011, in response to permission requests from Scholastic, Yamashita – acting through Corbis – sold Scholastic limited licenses to use copies of the Photographs in particular education publications identified in Scholastic's requests.[24]  Details are set out in Exhibit 1 to the

_____

[20] A11 ¶ 2; A160 ¶¶ 1-2.
[21] A11 ¶ 7, A16 – 31.
[22] A11 ¶ 4.
[23] A12 ¶ 9.
[24] A12 ¶ 10.

Complaint, including:

(a)    thumbnails of each of the Photographs, together with the

Image ID number and a description of the image;

(b)    copyright registration information, including the

Registration Number and effective date of registration;

(c)    the Corbis Invoice number and date;

(d)    the Scholastic imprint for which Corbis issued a limited

license; and

(e)    in two of the rows (rows 16 and 80), the title of the Scholastic

publication, and the license limits.[25]

Although Yamashita received royalty statements from Corbis,

those statements did not typically include license terms or the limits on

how Corbis's customer may use the photographs, such as number of

copies, distribution area, image size, language, duration and/or media

(print or electronic).[26]  Yamashita did not receive copies of the licenses

that Corbis issued to Scholastic.[27]  But Yamashita only authorized

---

[25] A16-31.

[26] A160-61 ¶ 6.

[27] *Id.*  The Corbis Invoice attached to Yamashita's Proposed First
   Amended Complaint was produced by Corbis, in redacted form, in

Corbis to issue limited licenses,[28] and the original Complaint therefore alleges upon information and belief that "the licenses granted Scholastic were expressly limited by number of copies, distribution area, language, duration and/or media."[29] Yamashita also alleges, upon information and belief, that "at the time Scholastic represented to Corbis that it needed specified, limited licenses to use the Photographs in particular publications, Scholastic often knew its actual uses would exceed the rights it was requesting and paying for."[30]

The original Complaint also alleges, upon information and belief, that "after obtaining the licenses, Scholastic exceeded the licenses and infringed Yamashita's copyrights in the Photographs in various ways, including:

    a.    printing more copies of the Photographs than authorized;

    b.    distributing publications containing the Photographs outside the authorized distribution area;

    c.    publishing the Photographs in electronic, ancillary, or

---

discovery in another copyright infringement lawsuit. A350-52.

[28] A12 ¶ 9.

[29] A12 ¶ 11.

[30] A12 ¶ 12.

derivative publications without permission;

      d.      publishing the Photographs in international editions and foreign publications without permission; and/or

      e.      publishing the Photographs beyond the specified time limits."[31]

      Further, the original Complaint alleges that "after obtaining access to the Photographs, Scholastic used the Photographs without any license or permission in additional publications that have not yet been identified."[32]  Yamashita also alleges that "[b]ecause Scholastic alone knows of these wholly unauthorized uses, Yamashita cannot further identify them without discovery."[33]  In this regard, Scholastic treats its print run and other usage information as confidential, and designates it as such pursuant to protective orders when it is sued for copyright infringement and is forced to produce its usage information in discovery.[34]

---

[31] A12 ¶ 13.

[32] A13 ¶ 14.

[33] A13 ¶ 14.

[34] *See* A163-64 ¶¶ 6-7; A202-213 (Protective Order); A215 ¶¶ 3-4 (referring to Scholastic print run and sales information in

Yamashita also alleges that "Scholastic alone knows the full extent to which it has infringed Yamashita's copyrights by making unauthorized uses of the Photographs, but Scholastic has not shared this knowledge with Yamashita."[35]  In this regard, before Yamashita served the summons on the Complaint, its counsel asked Scholastic's counsel to disclose specific information regarding its uses, to narrow the issues, but Scholastic refused.[36]

The original Complaint states a single count of copyright infringement, with respect to 119 instances of infringement identified in Exhibit 1 to the Complaint.[37]

### 3. Facts alleged in the Proposed First Amended Complaint.

Yamashita's [Proposed] First Amended Complaint ("PFAC") included the proposed amendments described below.

---

"DOCUMENT FILED UNDER SEAL."); *see also Sohm v. Scholastic, Inc.*, S.D.N.Y. Case No. 16-CV-7098(JPO) Doc. 72 (letter motion to seal usage information), Doc. 89 (order granting Scholastic's request to seal documents showing "print run total for its books," and "information concerning where each sale was made").

[35] A13 ¶ 15.

[36] A163 ¶ 5, A199-201.

[37] A11 ¶ 7, A13-14 ¶¶18-20; A16-31.

• The PFAC includes a prefatory paragraph that outlines the wrongfulness of Scholastic's refusal to provide information about its uses of Yamashita's Photographs. Specifically, the PFAC alleges:

"Scholastic … seeks judicially-conferred immunity for its copyright infringements by this 'commit-the-perfect-crime' approach:

a. Scholastic obtains access to a professional photographer's high-resolution photographs in connection with licenses for Scholastic to use them in its books;

b. Scholastic secures licenses with unrealistically low limits because that costs Scholastic less;

c. Scholastic proceeds to use the photographs beyond the limits of the licenses;

d. Scholastic is able to conceal its infringements because the licensor does not know if and when Scholastic exceeds any particular license's limits;

e. Scholastic refuses to disclose information about its usages of the photographs – information that is uniquely within Scholastic's control, and which Scholastic treats as

13

'confidential' – and Scholastic characterizes any request for information as a demand for an impermissible 'audit'; and

f.      When sued for copyright infringement, Scholastic argues in court that infringement claims pleaded 'upon information and belief' – which are necessary because Scholastic, the sole source of information about its infringing uses, refuses to disclose them – must be dismissed because details known only to Scholastic are not included in the complaint."[38]

·      Yamashita proposed to amend Count I, for copyright infringement, to address Judge Forrest's finding that the original Complaint does "not name a single instance of infringement or allege facts to establish a timeframe for when such an infringement might have occurred."[39]  In paragraph 16 of the PFAC, Yamashita provided additional details concerning Scholastic's use of Yamashita's image of Astronaut Ellison Onizuka (Image ID No. YM009027) in Scholastic's publication *Hawaii (From Sea to Shining Sea)*.[40]  The license Corbis

───────────────

[38] A308 ¶ 2.

[39] SPA2-3.

[40] A310-11 ¶ 16.

issued to Scholastic for that publication (Invoice No. 8013524)[41] expired on February 23, 2013.  Yet, as of the date of filing Yamashita's motion for leave to amend, a webpage on Scholastic's website continued to promote the book, and it appeared that Scholastic was continuing to offer the book for sale.[42]

·    In addition, the PFAC attached as new exhibits copies of excerpts of three of Scholastic's books, specifically: (1) *Hawaii (From Sea to Shining Sea)*;[43] (2) *Earthquakes*;[44] and (3) *True or False, Storms*.[45]  Each of these exhibits includes the ISBN number and year of publication, and thus specifically identifies "by what act during what time" Scholastic infringed.[46]

·    The PFAC also proposed four new causes of action, for: (1) breach of contract; (2) breach of Scholastic's duties as bailee of Yamashita's photographs; (3) conversion; and (4) an accounting.[47]

———————————

[41] A350-52 (PFAC, Ex. 5).

[42] A353-60 (PFAC, Ex. 6).

[43] A337-341.

[44] A342-45.

[45] A346-49.

[46] A340, A345, A348.

[47] A312-18 ¶¶ 25-65.

15

In support of these common law claims, Yamashita alleges the following.  In 2001, 2004, 2008 and 2011, Scholastic and Corbis entered into "Pricing Agreements," or "PVAs," attached as Exhibits to the PFAC.[48]  The PVAs impose obligations on Scholastic that – if performed – would disclose information that would permit Yamashita to plead in more detail "by what acts during what time" Scholastic infringed Yamashita's copyrights.  All PVAs obligated Scholastic to provide copies of any product or publication in which the images were used, and the 2008 and 2011 PVAs included a "Payment/Reporting" provision that "may, as set forth in the applicable Invoice, include an obligation to pay Corbis a use based royalty and to submit to an accounting or other records verifying [Scholastic's] use of the Content."[49]

As discussed above, Scholastic obtained transfer to the SDNY by persuading Judge Chesler to find that Yamashita is bound by the forum-selection clauses in these very PVAs because Corbis made these agreements as Yamashita's "agent."[50]  Yamashita disputes the existence

---

[48] A313 ¶¶ 26-29; A361-406.

[49] A313-315 ¶¶ 33-37; A367 ¶4(e); A379 ("Copies"); A392 ¶¶ 12, 16; A404 ¶¶ 12, 16.

[50] A275.

of any such agency.  But since it the law of this case that Corbis entered the PVAs as Yamashita's agent, Yamashita is in fairness entitled to enforce and obtain specific performance of the PVAs.[51]

In addition, and even apart from the PVAs, a bailment relationship arose between Yamashita and Scholastic with respect to Yamashita's high-resolution images (the "Bailed Property").[52]  The PFAC alleges Yamashita is the owner of the Bailed Property.[53]  Corbis delivered the Bailed Property to Scholastic, which took lawful possession of it.[54]  Scholastic's rights to use the Bailed Property were limited as provided in the PVAs and Corbis Invoices.[55]  As bailee, Scholastic has and at all pertinent times had a duty to account for the Bailed Property, including a duty to account to Yamashita for all uses Scholastic made of it.[56]  Scholastic's refusal to account is a breach of Scholastic's duties as bailee, and constitutes conversion.[57]  Yamashita

---

[51] *See* Section II.D.1.c, below.

[52] A316 ¶ 46.

[53] A316 ¶ 48.

[54] *Id.* ¶¶ 47, 50.

[55] A316-17 ¶¶ 49, 51.

[56] A317 ¶ 52.

[57] A317-18 ¶¶ 54-62.

17

seeks a court-ordered accounting,[58] which would put Yamashita in a position to plead the (already adequate) copyright infringement claims in more detail.

### C. Pertinent procedural history.

Yamashita filed the Complaint in New Jersey on June 28, 2016.[59] Scholastic moved to dismiss or, in the alternative, transfer to the SDNY.[60]

Honorable Stanley R. Chesler granted Scholastic's motion to transfer, and did not "reach the motion to dismiss."[61] At Scholastic's urging,[62] Judge Chesler found "Plaintiffs are principals and Corbis is their agent," and Yamashita was therefore bound by forum selection clauses in agreements between Scholastic and Corbis.[63]

Judge Forrest granted Scholastic's motion to dismiss the original Complaint on January 5, 2017,[64] without permitting further briefing or

---

[58] A318 ¶¶ 63-65.

[59] A10.

[60] A34.

[61] A273, 278.

[62] A50 ("Plaintiffs had a principal-agent relationship with Corbis….").

[63] A275.

[64] SPA1-3.

oral argument.[65]  Yamashita filed a motion for reconsideration and

leave to filed the PFAC on January 23, 2017.  On February 28, 2017,

Yamashita's motion was granted in part and denied in part as discussed

in Section D.2, below.[66]

### D.    The District Court's Orders.

#### 1.    The January 5, 2017 Memorandum Opinion and Order.

Citing *Kelly v. L.L. Cool J.*,[67] Judge Forrest found it "beyond cavil

that Rule 8 requires a plaintiff complaining of copyright infringement to

plead facts sufficient to support at least one plausible claim of

infringement."[68]  Judge Forrest found Yamashita had "not met this

standard," describing the Complaint as follows:

> "The complaint speculates about 'various ways' defendants
> [sic] might have infringed, but admits that the allegedly infringing
> publications 'have not yet been identified,' that 'Scholastic alone
> knows of these wholly unauthorized uses,' and that 'Scholastic
> alone knows the full extent to which it has infringed [plaintiffs']
> copyrights[.] Plaintiffs do not name a single instance of
> infringement or allege facts to establish a timeframe for when
> such an infringement might have occurred.  Instead, they cast out

---

[65] A279 ("the Court … will not accept further briefing").

[66] SPA4.

[67] 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd without opinion*, 23 F.3d 398 (2d
  Cir. 1994).

[68] SPA2.

five possible ways defendants could have infringed some time 'after' defendants obtained the photographs. This is wholly insufficient to 'give the defendants fair notice of what the … claim is and the grounds upon which it rests.'" [¶] The complaint contains so few factual allegations it is nothing more than a fishing expedition. Rule 8 does not permit such aimless trawling."[69]

Judge Forrest granted Scholastic's motion (making no mention of Yamashita's request for leave to amend),[70] and directed the Clerk to terminate the action.[71]

## 2. The February 28, 2017 Order.

Judge Forrest granted Yamashita leave to amend solely "with regard to the single image at row 80 (of Ex.1), "with regard to the copyright claim only."[72] The District Court denied leave to amend with regard to "all other images (the remaining 118)," finding – at the pleading stage – that Yamashita "has ***shown*** not a single fact supportive of an infringement claim with regard to any of those images."[73]

---

[69] SPA2-3 (citations omitted).

[70] *See* A139 (requesting leave to amend).

[71] SPA3.

[72] SPA4.

[73] SPA4 (emphasis added).

Judge Forrest denied leave to amend to add the proposed common law claims as follows:

> "Leave to amend to add bailment, conversion, and accounting claims is DENIED as they all depend on a series of generic PVAs to which plaintiff [sic] is not a party. To bring such claims **might** well require joinder of Corbus [sic]. The Court notes principle [sic] / agent relations is [sic] not equivalent to standing in Corbus's [sic] shoes in the contract for all purposes. The Court further notes that Corbus [sic] had itself a more involved arrangement with Scholastic – as referenced in ¶ 5 of the 2001 PVA ("This Agreement is not considered a bailment"), and storage terms in other PVAs. It is also unclear and not plead [sic] that Scholastic has breached its obligations to <u>Corbus</u> [sic]."[74]

## SUMMARY OF ARGUMENT

The District Court erred when it:

   1.    Strictly applied a 38-year old pleading standard in *Kelly* that is inconsistent with more recent decisions of the Supreme Court and this Court;

   2.    Faulted Yamashita for not pleading, in more detail, "by what acts during what time" Scholastic infringed Yamashita's copyrights;

   3.    Held Yamashita's copyright infringement claims to a heightened pleading standard;

   4.    Disregarded this Court's holding in *Arista* that a plaintiff

---

[74] *Id.* (bold and italic emphasis added; underlining original).

may plead "upon information and belief" where, as here, factual details are peculiarly within the defendant's possession and control;

5.    Denied Yamashita leave to amend with respect to 118 of Yamashita's 119 copyright infringement claims, dismissing all but one of Yamashita's 119 copyright infringement claims with prejudice;

6.    Denied Yamashita leave to amend to assert common law claims on numerous grounds raised *sua sponte* and not briefed by the parties;

7.    Disregarded both Judge Chesler's finding that Corbis entered into the PVAs as Yamashita's agent for Yamashita's benefit, and settled law that a principal may to sue to enforce such a contract;

8.    Found, contrary to the principle that a bailment may arise by operation of law, Yamashita's bailment theory depends entirely upon the existence of written contracts that Yamashita has standing to enforce;

9.    Speculated – without undertaking the analysis required by Fed.R.Civ.P. 19 – that nonjoinder of Corbis "might" be a reason to deny Yamashita leave to amend;

10.    Cherry-picked and misinterpreted provisions of the PVAs,

22

erroneously concluding that Yamashita's bailment theories are futile; and

11.    Overlooked Yamashita's allegations that Scholastic refused to account for its uses of Yamashita's Photographs.

## ARGUMENT

### I.    The District Court erred when it granted Scholastic's motion to dismiss the copyright infringement claims in Yamashita's original Complaint.

#### A.    Standard of review.

This Court reviews *de novo* a judgment of dismissal under Fed.R.Civ.P. 12(b)(6), accepting all factual allegations in the complaint and its incorporated exhibits as true and drawing all reasonable inferences in plaintiffs' favor.[75]

#### B.    The District Court erred in applying *Kelly's* heightened pleading standard for copyright infringement.

The District Court evaluated the original Complaint under the pleading standard stated in *Kelly*, which in turn was adopted from *Gee*[76]

---

[75] *TCA Television Corp. v. McCollum*, 839 F.3d 168, 177 (2d Cir. 2016), *cert denied*, 137 S.Ct. 2175 (2017).

[76] *Gee v. CBS, Inc.*, 471 F.Supp. 600 (E.D. Pa.), *aff'd without opinion*, 612 F.2d 572 (3d Cir. 1979).

– an outdated case of dubious provenance decided in the Eastern District of Pennsylvania (*see* Section I.B.4, below). Specifically, the District Court found Yamashita did not adequately plead the fourth element in the *Kelly* pleading standard: "A properly plead [sic] copyright infringement claim must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) *by what acts during what time the defendant infringed the copyright*."[77] The District Court erred for all the following reasons.

### 1. There are only two elements of copyright infringement.

The Supreme Court identified the two elements of copyright infringement in *Feist*: "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[78] This Court likewise holds

---

[77] SPA2, *quoting Kelly*, 145 F.R.D. at 36 (emphasis added).

[78] *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). The Supreme Court subsequently held compliance with 17 U.S.C. § 411(a)'s "registration requirement is a precondition to filing a claim" for copyright infringement. *Reed Elsevier, Inc. v.*

that "[t]here are only two elements of an infringement claim: ownership of a valid copyright and the copying of constituent elements of the work that are original."[79]  While many district courts in the SDNY have cited *Kelly* for the pertinent pleading standard, other courts in this Circuit – notably including the District Court decision affirmed by this Court in *Arista*[80] – have recognized that a plaintiff adequately states a claim of copyright infringement by pleading the two elements in *Feist* – copyright ownership and "copying."[81]  "'The word "copying" is shorthand

---

*Muchnick*, 559 U.S. 154, 157 (2010).  Compliance with Section 411(a) need not be alleged with "precision," however.  *See Pelaez v. McGraw-Hill Global Education Holdings, LLC*, 2017 WL 3432303 *2 (S.D.N.Y. Aug. 9, 2017) (allegation that "all of the photographs 'have been registered with the United States Copyright Office'" sufficed).

[79] *Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir. 1997); *see also, Urbont v. Sony Music Entertainment,* 831 F.3d 80, 88 (2d Cir. 2016) (two elements of copyright infringement).

[80] *Arista Records, LLC v. Does 1-16*, 2009 WL 414060 *2 (N.D.N.Y. 2009), *aff'd*, 604 F.3d 110 (2d Cir. 2010).

[81] *See, e.g.*, *TCA Television Corp. v. McCollum*, 151 F.Supp.3d 419, 425 (S.D.N.Y. 2015) (plaintiff states a claim by "alleging" two elements in *Feist*), *aff'd*, 839 F.3d 168 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2175 (2017); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 2016 WL 5338550 *5 (S.D.N.Y. 2016) (deciding motion to dismiss by reference to two *Feist* elements); *Devocean Jewelry LLC v. Associated Newspapers Ltd.*, 2016 WL 6135662 *2 (S.D.N.Y. 2016) (same); *Perrin & Nissen Ltd. v. SAS Group Inc.*, 2009 WL 855693 *4 (S.D.N.Y. 2009) (same); *Ventures Educ. Sys. Corp. v. Professional*

for the infringing of any of the copyright owner's … exclusive rights" described in § 106."[82]  *Id.* (citation omitted).

Yamashita satisfied the *Feist* standard.  Scholastic did not challenge Yamashita's allegations of copyright ownership.[83]  And the Complaint alleges "copying," by setting out in detail the five specific ways Scholastic infringed upon Yamashita's exclusive rights, under Section 106, to do and to authorize reproduction, distribution and display of copies of the Photographs.[84]  Nothing more was required.  Accepting the facts Yamashita pleaded as true, and drawing reasonable inferences in Yamashita's favor, the Complaint plausibly alleges 119 instances of Scholastic infringing Yamashita's copyrights.

---

*Development Assocs., Inc.*, 2008 WL 3166667 *2 (S.D.N.Y. 2008) (same); *Dauman v. Andy Warhol Foundation for Visual Arts, Inc.*, 1997 WL 337488 *2 (S.D.N.Y. 1997); *Boyle v. Stephens, Inc.*, 1997 WL 760498 *1 (S.D.N.Y. 1997) (same).

[82] *Arista*, 604 F.3d at 117.

[83] A10 ¶ 1, A11 ¶ 7.  Copyright registrations are also identified in Exhibit 1 to the Complaint.  A16-31.

[84] A12 ¶ 13.

## 2. Copyright infringement is not subject to a heightened pleading standard, and a plaintiff need not prove a *prima facie* case or establish evidentiary details in the complaint.

Copyright infringement is not one of the special matters that must be pleaded with particularity under Fed.R.Civ.P. 9.[85]  Under the Rules, therefore, copyright infringement is *not* subject to a heightened pleading standard.

One district court judge observed, however, that "the courts in the Second Circuit are *generally in agreement* that a *heightened pleading standard* must be met [t]o sufficiently plead a copyright infringement claim."[86]  The SDNY has also stated that "[c]ourts in this district have construed [Rule 8] 'to require a plaintiff to plead *with specificity* the acts by which a defendant has committed copyright infringement.'"[87]

But in *Arista* this Court squarely rejected an argument that

---

[85] Fed. R. Civ. P. 9.

[86] *Zalewski v. T.P. Builders, Inc.*, 2011 WL 3328549 *3 (N.D.N.Y. 2011) (emphases added), *citing Kelly*; *see also Bob Daemmrich Photography, Inc. v. McGraw-Hill Global Education Holdings, LLC*, 2017 WL 2544046 *2 (W.D. Tex. June 12, 2017) (noting defendant's argument that "courts have applied a heightened pleading standard for copyright infringement claims," *citing Kelly*).

[87] *Elektra Entertainment Group, Inc. v. Barker*, 551 F.Supp.2d 234, 238 (S.D.N.Y. 2008) (emphasis added), *quoting Marvullo v. Gruner & Jahr*, 105 F.Supp.2d 225, 230 (S.D.N.Y. 2000), and *citing Kelly*.

copyright infringement claims are subject to "heightened pleading standards."[88] *Arista* reached this conclusion in reliance on three Supreme Court decisions – *Twombly*,[89] *Iqbal*[90] and *Swierkiewicz*.[91]

*Arista* found "the notion that *Twombly* imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the *Twombly* opinion itself."[92] As this Court observed, *Twombly* "noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure 'requires only "a short and plain statement of the claim showing that the pleader is entitled to

---

[88] *Arista*, 604 F.3d at 119-21; *see also Mid America Title Co. v. Kirk*, 991 F.2d 417, 421-22 (7th Cir. 1993) ("We cannot accept the argument that plaintiffs in [copyright infringement cases] must be held to a particularity requirement…."); *Lefkowitz v. McGraw-Hill Global Education Holdings, LLC*, 23 F.Supp.3d 344, 353 (S.D.N.Y. 2014) (when the fourth *Kelly* factor is interpreted to require factual details "it places a heightened pleading requirement upon Plaintiff that is not required by law"), *citing Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 616 (S.D.N.Y. 2013) ("it is not fatal" for a plaintiff's copyright claim if the complaint "fails to specify how each particular photograph has been infringed").

[89] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[90] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[91] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

[92] *Arista*, 604 F.3d at 119.

relief," in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"[93]  "The *Twombly* Court stated that 'a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,' but mere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '*[f]actual* allegations must be enough to raise a right to relief above the speculative level.'"[94]

*Arista* also quoted two passages in *Twombly* stating "*we do not apply any 'heightened' pleading standard,*" and "*we do not require heightened fact pleading of specifics,* but only enough facts to state a claim to relief that is plausible on its face."[95]  Under *Twombly,* Plaintiffs need only "nudg[e] their claims across the line from conceivable to plausible."[96]

---

[93] *Id.*, *quoting Twombly*, 550 U.S. at 555.

[94] *Arista*, 604 F.3d at 120, *quoting Twombly*, 550 U.S. at 555 (emphasis added by *Arista*).

[95] *Arista*, 604 F.3d at 120, *quoting Twombly*, 550 U.S. at 569 n. 14, and 570 (emphases added by *Arista*); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (under Rule 8(a)(2), which "requires 'only a short and plain statement of the claim showing that the pleader is entitled to relief,'" "*[s]pecific facts are not necessary*" (emphasis added)).

[96] *Twombly*, 500 U.S. at 569.

*Arista* found that *Iqbal* did not "heighten the pleading requirements" either.[97] "Rather, it reiterated much of the discussion *Twombly* and rejected as insufficient a pleading that the *Iqbal* Court regarded as entirely conclusory."[98] "Accordingly, although *Twombly* and *Iqbal* require factual amplification [where] needed to render a claim plausible," *Arista* rejected the "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."[99]

As *Arista* noted, *Twombly* "emphasized that its holding was consistent with its ruling in *Swierkiewicz*."[100] The *Swierkiewicz* Court held that, at the pleading stage, an employment discrimination plaintiff who alleges facts that provide fair notice of his claim need not also allege "specific facts establishing a prima facie case," for such a "heightened pleading standard … conflicts with [Rule] 8(a)(2)."[101]

*Arista* applied these principles with full force to copyright

---

[97] *Arista*, 604 F.3d at 120.

[98] *Id.*

[99] *Id.*, (internal quotation marks and citations omitted).

[100] *Arista*, 604 F.3d at 120, *citing Twombly*, 550 U.S. at 570.

[101] 534 U.S. at 508, 512.

infringement claims.[102]  Judge Forrest erred because she strictly

applied *Kelly's* heightened pleading standard despite this Court's

decision in *Arista*.[103]

> **3. A plaintiff is permitted to plead on information and belief when factual details are peculiarly within the defendant's possession and control.**

*Arista* also found that "[t]he *Twombly* plausibility standard, which

applies to all civil actions, does not prevent a plaintiff from 'pleading

facts alleged "upon information and belief" where the facts are

peculiarly within the possession and control of the defendant, or where

the belief is based on factual information that makes the inference of

culpability plausible."[104]  "The *Twombly* Court stated that '[a]sking for

plausible grounds to infer an agreement does not impose a probability

requirement at the pleading stage; it simply calls for enough fact to

raise a reasonable expectation that *discovery will reveal evidence* of

---

[102] *Arista*, 604 F.3d at 120.

[103] *See* A134, A476 (*citing Arista*).

[104] *Arista*, 604 F.3d at 120, *citing Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *see also Zuma Press, Inc. v. Getty Images (US), Inc.*, 2017 WL 2829517 *3 (June 29, 2017) ("Where relevant information is exclusively in the possession of the defendant … a plaintiff may allege facts on information and belief, and need not plead more specific facts that are unavailable to the plaintiff as a result of the defendant's own conduct.").

illegal[ity].'"[105]

The dispute in *Arista* was before this Court on review of an order quashing a subpoena to an Internet service provider to obtain information sufficient to disclose the identity of Defendant "Doe 3," whose identity was unknown. Doe 3 challenged the sufficiency of the complaint because allegations on information and belief were lacking "specific facts." The "principal assertion made only on information and belief [wa]s that defendants' copying and/or distribution of plaintiffs' music were without permission."[106] But *Arista* did not find this to be a pleading deficiency, because "no more definitive assertion as to lack of permission seems possible when the users remain anonymous."[107]

The same is true here. Scholastic keeps confidential and refuses to disclose many of the details it says are missing from the complaint, including its print runs (how many copies Scholastic reproduced and

---

[105] *Arista*, 604 F.3d at 120 (emphasis added), *quoting Twombly*, 550 U.S. at 556.

[106] *Id.* at 121.

[107] *Id.*; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (the Supreme Court has "called for more careful attention to be given to several key questions" including "how much detail realistically can be given").

distributed, and when), and its geographic distributions.[108]  Further,

although Corbis Invoices state the license limits and frequently identify

the publication for which the images were licensed, Corbis provided the

Invoices to Scholastic, not Yamashita; Scholastic knows the license

limits and which books are at issue, but Yamashita does not.[109]  As in

*Arista*, Yamashita cannot be expected to plead details about Scholastic's

infringing uses that are known only to it, and pleading on information

and belief is thus permissible.

Many courts have so held in copyright cases just like this one.  In

*Clifton v. Houghton Mifflin Harcourt Pub. Co.*, for example, the

defendant argued the plaintiff "did not allege facts – such as 'which

photographs were printed, when they were printed, how many copies

were printed, [or] where the photographs were distributed' – to support

his 'conclusory' allegation that [defendant "HMH"] exceeded the scope of

the licenses for the Photographs."[110]  Citing *Arista*, *Clifton* found the

plaintiff's allegations were sufficient:

---

[108] *See* footnote 34.

[109] A160-61 ¶¶ 5-6 (Yamashita did not receive copies of Corbis Invoices
that identify the Scholastic publication and state license limits).

[110] 152 F.Supp.3d 1221, 1224 (N.D. Cal. 2015).

"Mr. Clifton alleges that (1) he entered into license agreements with HMH allowing HMH to publish 30 of his Photographs, (2) those licenses all contained limitations regarding the number of times, how, and where HMH could publish them, and (3) HMH exceeded those licenses by exceeding those limitations. These allegations put HMH on notice about how it infringed its copyrights….

Mr. Clifton has alleged what he can, based on the information he has. The additional facts needed to substantiate his 'information and belief allegations' are 'peculiarly within the possession and control' of HMH. The court concludes that Mr. Clifton alleged a plausible claim for relief."[111]

Even in cases of fraud (which, unlike copyright claims, must be pleaded with particularity under Rule 9), "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs."[112] Hence, fraud allegations may be pleaded on information and belief "as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the

---

[111] *Id.* at 1224-25, *citing Lefkowitz*, 23 F.Supp.3d at 355-56 (pleading on information and belief is permissible given "that key evidence supporting [plaintiff's] claim is in Defendants' possession"), *Frerck v. Pearson Educ., Inc.*, 2012 WL 1280771 *2-3 (N.D. Ill. 2012) (because Pearson alone knew the extent of its unlicensed use of Frerck's photographs, plaintiff adequately pleaded claims upon information and belief).

[112] *In re Bausch & Lomb, Inc. Securities Litigation*, 941 F.Supp. 1352, 1361 (W.D.N.Y. 1996) (citation omitted).

facts upon which the belief is based."[113]  As the Sixth Circuit stated:

> "We will not demand clairvoyance from pleaders.  Corporate entities who jealously guard the names of their clients, or other information, as they should, would be forever victorious in their motions to dismiss under Rule 9(b) if courts demanded the level of specificity at issue in this stage of the case.  We are reluctant to punish plaintiffs for their ignorance of factual detail, as long as defendants have adequate notice of why they are being sued and are capable of preparing a responsive pleading."[114]

Here, Yamashita has pleaded the facts he can based upon the information available to him, and the Complaint discloses the facts upon which Yamashita's information and belief allegations are based. The District Court erred when it faulted Yamashita for not being clairvoyant enough to plead additional details about Scholastic's internal corporate affairs – like the details of Scholastic's print runs – that are known only to Scholastic.

Finally, the purpose Rule 8(a)(2) is to give the defendant "fair

---

[113] *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

[114] *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 681 (6th Cir. 1988); *see also Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 WL 426379 *7 (S.D.N.Y. 1996) (details of alleged price-fixing scheme need not have been pleaded with particularity where "it would take a most impressive feat of clairvoyance" for plaintiff to know those details, which were particularly within defendants' knowledge).

notice" of claims it must defend.[115]  It cannot be said Scholastic lacks

"fair notice" of factual details already known, and known only, by

Scholastic.

> **4.    The District Court erred in when it relied on
> *Kelly* as a basis for dismissing Yamashita's
> copyright infringement claim with prejudice.**

Reliance on the fourth *Kelly* element as a basis for a Rule 12(b)(6)

dismissal is inconsistent with the pleading standards discussed in

*Arista, Twombly, Iqbal*, and *Swierkiewicz*.  This is especially so when it

is rigidly applied, as in this case, because it imposes a heightened

pleading standard that goes well beyond what is required to state a

plausible claim of copyright infringement and give a defendant fair

notice of what the dispute is about.  It is no longer appropriate for

district courts to strictly apply the fourth *Kelly* standard as a basis for

pleading-stage dismissal (especially with prejudice, as here), for several

reasons.

**First**, *Kelly* did not concern a motion *to dismiss* a copyright

infringement claim under Rule 12(b)(6); instead, the defendant in *Kelly*

filed a "motion for a more definite statement of the copyright claim

---

[115] *Arista*, 604 F.3d at 119.

under Rule 12(e)."[116]  *Kelly* therefore is authority, at most, for when relief under Rule 12(e) is appropriate.  But Scholastic challenged Yamashita's Complaint *solely* under Rule 12(b)(6).[117]

**Second**, *Kelly* did not *dismiss* copyright claims at all, much less *with prejudice*, as Judge Forrest did.  Instead, *Kelly* granted the defendant's request for a more definite statement.[118]  When a Rule 12(e) motion is granted, the case *continues* for the simple reason that the plaintiff has *stated a claim* for purposes of Rule 12(b)(6), albeit with insufficient clarity for purposes of Rule 12(e).

**Third**, *Kelly* granted Rule 12(e) relief "because of plaintiff's failure to allege *present ownership and proper statutory registration* of one of the copyrights at issue."[119]  Here, Scholastic has never asserted that Yamashita failed to adequately plead copyright ownership and registration.

**Fourth**, *Kelly* stated a plaintiff "must" plead "by what acts during

---

[116] *Kelly*, 145 F.R.D. at 35.  The defendant in *Kelly* filed a motion to dismiss only with respect to "the other claims in the complaint."  *Id.*

[117] A35, A45.

[118] *Kelly*, 145 F.R.D. at 40.

[119] *Kelly*, 145 F.R.D. at 40 (emphasis added).

37

what time the defendant infringed the copyright," and also noted, "Rule 8 requires that the particular infringing acts be set out with some *specificity*."[120]   But *Kelly* went on to reject an argument just like Scholastic's that it was "not possible to determine from the complaint the nature of the claimed infringement."[121]   *Kelly* held "such a level of specificity is *not required* in a complaint," and concluded the complaint there "*sufficiently alleges the infringing acts* pursuant to Rule 8."[122] Judge Forrest erred when she relied on *Kelly* to reach the opposite conclusion here (*see* Section I.C, below).

**Fifth**, *Kelly* did not derive its four-part rule from any decision of this Court or the Supreme Court.  Instead, without critical analysis, *Kelly* adopted a test originating in *Gee v. CBS, Inc.*,[123] a 38-year old decision out of the Eastern District of Pennsylvania ("EDPA").[124]  But

---

[120] *Kelly*, 145 F.R.D. at n. 3.

[121] *Id.*

[122] *Id.* (emphases added), *citing Franklin Electronic Publishers v. Unisonic Products Corp.*, 763 F.Supp.1, 4 (S.D.N.Y. 1991) (complaint complied with Rule 8 even though defendants could not determine whether software elements or visual elements of computer were claimed to be infringed).

[123] 471 F.Supp. 600, 643 (E.D. Pa. 1979).

[124] The SDNY first cited *Gee* for its copyright infringement pleading

*Gee* is not a sound foundation for a pleading standard that "must" be applied in every copyright case, regardless of the circumstances. "[T]he *Gee* court was faced with a plaintiff who was unable to flush [sic] out his claims even after conducting extensive discovery and filing two amended complaints."[125] *Gee* "specifically held that, 'In view of the ample discovery allowed and the extensive opportunity to specify their claims, the interests of even minimal judicial decorum dictate that plaintiffs not be given a fourth [bite at the apple].'"[126] *Gee* is inapposite when a plaintiff shows "the surreptitious nature of [defendant's] allegedly infringing acts," and a consequent inability to plead with more particularity.[127]

Further, *Gee* derived its strict standards from a now-abrogated Form developed under the 1909 Copyright Act.[128] Not surprisingly,

---

standard in *Calloway v. Marvel Entertainment Group,* 1983 WL 1141 *3 (S.D.N.Y. 1983).

[125] *Leaf, Inc. v. Burdeen*, 1996 WL 89070 *3 (N.D. Ill. 1996).

[126] *Id., quoting Gee*, 471 F.Supp. at 644.

[127] *Leaf*, 1996 WL 89070 *3.

[128] *See Gee*, 471 F.Supp. at 644 ("Form 17, appended to the Federal Rules of Civil Procedure, illustrates a proper complaint for infringement of copyright and unfair competition."). The 2015 Amendments to the Rules abrogated Rule 84, which previously

39

Judge Rufe in the EDPA recently "decline[d] to adopt [Scholastic's] suggestion that a heightened pleading standard applies based on [*Gee*], which predates *Twombly* and *Iqbal* by decades."[129]  The 1992 *Kelly* decision is likewise outdated.

And while this Court affirmed *Kelly* without opinion, it has neither examined nor expressly adopted *Kelly's* pleading standards. *Arista* examined pleading requirements for copyright infringement claims at length, as discussed above, and did not even *mention Kelly*. Instead, *Arista* affirmed the lower court's finding claims were adequately pleaded by reference to the two elements of copyright infringement stated in *Feist*.[130]  This Court cited *Kelly* regarding pleading requirements in an unpublished opinion – *Kousnsky v. Amazon.com, Inc.*[131] – but that case is most notable for reversing an order of dismissal, and remanding with instructions to give the plaintiff

---

authorized the official forms.

[129] *Krist v. Scholastic, Inc.*, __ F.Supp.3d __, 2017 WL 2349004 *2, n. 12 (E.D.P.A. May 30, 2017); *see also John Wiley & Sons, Inc. v. Golden*, 2015 WL 716880 *9 (D.N.J. 2015) (declining to "engraft a *Gee* analysis").

[130] *Arista*, 604 F.3d at 117.

[131] 631 Fed.Appx. 22 (2d Cir. 2015) (summary order).

a chance to amend the copyright claims. Neither *Kousnsky* nor any other appellate court has ever considered whether the *Kelly/Gee* heightened pleading standard is consistent with *Feist*, *Twombly, Iqbal*, *Swierkiewicz*, or *Arista*.

**C.    Yamashita's Complaint is sufficient even under *Kelly*.**

This Court should reject the fourth element of *Kelly* as part of the standard for pleading copyright infringement, for reasons discussed above. But even if *Kelly* reflects the law in this Circuit, Yamashita's Complaint was sufficient, and the District Court erred in concluding otherwise.

**1.    Yamashita adequately alleged "by what acts" Scholastic infringed copyrights.**

Section 501(b) of the Copyright Act identifies the "act" that constitutes infringement – "infringement of that particular right" held by the "legal or beneficial owner of an exclusive right under a copyright."[132] Those "exclusive rights" are "to do and to authorize any of the" things in Section 106, including to "reproduce the copyrighted work in copies," to "distribute copies … of the copyright work to the public by

---

[132] 17 U.S.C. § 501(b).

41

sale, and "in the case of … pictorial, graphic or sculptural works, … to display the copyrighted work publicly."[133]

Paragraph 13 of Yamashita's Complaint alleges in detail "by what acts" Scholastic infringed. Scholastic infringed Yamashita's exclusive rights in the Photographs (which are identified in Exhibit 1 by thumbnail, Image ID number, and description) by obtaining licenses (identified in Exhibit 1 by Corbis Invoice number and date) that "were expressly limited by number of copies, distribution area, language, duration and/or media," and then "exceed[ing] the licenses" (in Scholastic imprints identified by name) by exceeding print run limits, distributing books outside the authorized distribution area and in international and foreign editions, publishing in unlicensed media, and publishing beyond time limits.[134] Yamashita's Complaint thus plausibly alleges – in more than sufficient detail to put Scholastic on fair notice – that Scholastic infringed copyright by violating Yamashita's Section 106 reproduction, distribution and display rights.

Many courts have found allegations just like these sufficient. In

---

[133] 17 U.S.C. § 106.

[134] A12 ¶¶ 11, 13; A16-31 (Exhibit 1).

*Young-Wolff v. McGraw-Hill Companies*, for example, the complaint had a list of eight "various ways" the defendant publisher infringed copyright in photographs. [135] The *Young-Wolff* complaint is very similar to Paragraph 13 of Yamashita's Complaint; among other things, the plaintiff in *Young-Wolff* alleged the defendant infringed by "exceeding the limitations of licenses by printing more copies of the publications than was authorized."[136] Judge Wood rejected the defendant's argument that the copyright infringement count failed "because Plaintiff 'alleges no specific acts of infringement'"; Judge Wood found: "[T]he Complaint alleges at least eight specific acts of infringement. To the extent that Defendant argues that Plaintiff must allege how each particular photograph has been infringed, the Court rejects that argument."[137]

---

[135] 2014 WL 349711 *4 (S.D.N.Y. 2014).

[136] *Id.*

[137] *Id.* at 5, *citing Warren*, 2013 WL 3328224, at 5; *Palmer Kane LLC v. Scholastic Corp.*, 2013 WL 709276 *3 (S.D.N.Y. 2013) ("[T]he complaint need not specify which copyright is infringed by which act."); *Frerck*, 2012 WL 1280771 *3 (rejecting defendant's argument that plaintiff "must plead specific details as to each infringing act," because it "would impose a higher burden on copyright claims than is required under the federal rules"); *Pacific Stock, Inc. v. Pearson Educ., Inc.*, 2012 WL 93182 *6 (disagreeing with defendant that plaintiff is

Judge Failla rejected a similar challenge to a photographer's complaint against a publisher in *Lefkowitz*.[138] The First Amended Complaint ("FAC") in *Lefkowitz* alleged "upon information and belief," as here, that (1) "the licenses granted … from Corbis were expressly limited by number of copies, distribution area, image size, language, duration and/or media (print or electronic);" (2) "Defendants exceeded the permitted uses under the terms of the limited licenses for the Lefkowitz Images … by (i) copying the Lefkowitz Images 'in numbers exceeding the limited print quantities in the licenses'; (ii) displaying the Lefkowitz Images 'online or in digital media without permission to do so'; (iii) distributing the Lefkowitz Images in 'geographic territories that were not authorized'; and (iv) copying the Lefkowitz Images 'in custom, state-specific, language, or international editions without permission to do so."[139] Judge Failla found the FAC "provide[d] the 'basic factual notice' to Defendants that is required under Rule 8,"  and identified "the

---

"required to allege the precise manner in which it exceeded each license").

[138] *Lefkowitz*, 23 F.Supp.3d at 353.

[139] *Id.*

bases for Plaintiff's assertion that [the images] were infringed."[140]  In

addition, Lefkowitz "identified six other lawsuits" against McGraw-Hill

that "brought the same claims."[141]  (Yamashita likewise alleges that

Scholastic has been repeatedly sued for its "under-licensing

practices."[142])  Judge Failla found "[t]hese allegations, taken as a whole,

establish the plausibility of Plaintiff's claim."[143]

## 2. Yamashita also adequately alleges "during what time" Scholastic infringed the copyrights.

Judge Forrest stated: "Plaintiffs do not name a single instance of

infringement or allege facts to establish a timeframe for when such an

infringement might have occurred."[144]  She also found it insufficient to

allege "defendants [sic] infringed 'after' obtaining the photographs,"

because "[a]ny infringement would necessarily happen 'after'

defendants [sic] accessed the copyrighted material" and this "adds no

factual support to the complaint."[145]

_____

[140] *Id.*

[141] *Id.* at 354.

[142] A13 ¶ 16 (listing eight lawsuits).

[143] *Lefkowitz*, 23 F.Supp.3d at 354.

[144] SPA2-3.

[145] SPA3 n. 1.

The District Court erred because it (1) disregarded Yamashita's argument and allegations that additional details are peculiarly within Scholastic's knowledge; and (2) disregarded Yamashita's other "timing" allegations.

First, the gravamen of Yamashita's Complaint is that Scholastic infringed copyright by exceeding license limits stated in Corbis invoices. The "when" of Scholastic's infringements thus depends on usage information uniquely within Scholastic's knowledge, which it treats as confidential.[146]  Yamashita cannot be expected to be precise about "when" Scholastic first exceeded print run limits with respect to a particular book, or "when" it first distributed a particular book outside the licensed distribution area, for example, without discovery of Scholastic's confidential records.   Under *Arista* this is not a pleading defect.

Second, the Complaint has numerous allegations, upon information and belief, that bear on "timeframe."  Notably, for each instance of infringement, Yamashita alleges the *specific date* when the

---

[146] *See* footnote 34, above.

46

pertinent license was issued.[147]

Yamashita also alleges:

• "the licenses granted Scholastic were expressly limited by …
duration";

• "at the time Scholastic represented to Corbis that it needed
specific, limited licenses to use the Photographs in particular
publications, Scholastic often knew its actual uses would exceed the
rights it was requesting and paying for";

• "after obtaining the licenses, Scholastic exceeded the licenses
and infringed Yamashita's copyright in various ways," including
"publishing the Photographs beyond the specified time limits"; and

• "after obtaining access to the Photographs, Scholastic used them
Photographs without any license or permission in additional
publications that have not yet been identified."[148]

These are "factual allegations" "a judge must accept as true"
"when ruling on a defendant's motion to dismiss."[149]  In *Erickson*, the

---

[147] A16-31.

[148] A12-13, ¶¶ 11-14.

[149] *Erickson*, 551 U.S. at 94.

47

Supreme Court found a "timing" allegation was sufficient where the petitioner alleged the medication at issue "was withheld 'shortly after' petitioner had commenced a treatment program that would take a year, he was still in need of treatment for his disease, and the prison officials "were in the meantime refusing to provide treatment."  The Court held that "[t]his alone was enough to satisfy Rule 8(a)(2)."[150]

Other courts have also rejected challenges to "timing" allegations in cases like this one.  In *Young-Wolff*, Judge Wood found the plaintiff's amended complaint sufficient:

> "By pleading that Defendants' infringement took place either shortly before or shortly after particular dates related to each photograph's license, the FAC provides fair notice of the approximate timing of Defendants' alleged wrongdoing….  The FAC's language, although somewhat imprecise, provides fair notice of the approximate time period of Defendants' alleged infringement.  That is all that Rule 8 requires."[151]

Judge Failla came to the same conclusion in *Lefkowitz*:

> "Plaintiff has also adequately alleged a time period by asserting that, upon information and belief, Defendants engaged in the infringing conduct after the invoice date listed on the Lefkowitz Chart.  This allegation provides the starting date on which Defendants are alleged to have infringed, and therefore

---

[150] *Erickson*, 551 U.S. at 94.

[151] *Young-Wolff v. McGraw-Hill School Educ. Holdings, LLC*, 2015 WL 1399702 *4 (S.D.N.Y. 2015).

sufficiently identifies the time period during which the infringement may have occurred."[152]

### D. Many courts have found that infringement complaints no more detailed than Yamashita's – including in other cases *against Scholastic* – adequately state a claim upon which relief can be granted.

As Judge Rufe recently found in *Krist* – a copyright infringement case *against Scholastic* just like this one – "courts *routinely* deny motions to dismiss similar copyright claims."[153]  *Keller v. Scholastic* likewise found sufficient a complaint no more detailed than Yamashita's.[154]  And in *Young-Wolff v. Scholastic* Judge Stanton also denied Scholastic's motion to dismiss, rejecting Scholastic's argument that the plaintiffs did not adequately plead how and when Scholastic

---

[152] 23 F.Supp.3d at 354.

[153] *Krist*, 2017 WL 2349004 *2 (emphasis added), *citing Clifton*, 152 F.Supp.3d at 1224; *Quadratec, Inc. v. Turn 5, Inc.*, 2015 WL 4876314 *4 (E.D. Pa. 2015) (denying motion to dismiss copyright claim and explaining that "[a]lthough Plaintiff did not provide the exact date of infringement for each of the" copyrighted images, "it is not fatal to [Plaintiff's] copyright claim that the Complaint fails to specify how each particular photograph has been infringed" (*quoting Warren*, 952 F.Supp.2d at 618)); *Young-Wolff*, 2015 WL 1399702 at *3-4; and *Briggs v. Gall*, 2014 WL 12616828 *5 (E.D. Pa. 2014) (rejecting argument that complaint failed to plead infringement where plaintiff alleged that defendant reproduced, distributed, and displayed copyrighted works without permission).

[154] E.D. Pa. Case No. 2:16-cv-01829-WB (*see* Doc. 1 (Complaint); Doc. 16 (Scholastic's motion to dismiss); and Doc. 26 (Order denying motion)).

infringed the photographs identified in the Complaint.[155]

The dismissal in this case was an aberration, underscoring the District Court's error.

### E. A copyright infringement case like Yamashita's is neither "aimless trawling" nor a "fishing expedition," as Judge Forrest found.

In *Sohm v. Scholastic*,[156] Scholastic *withdrew* a motion to dismiss a very similar copyright infringement case after transfer to the SDNY.[157] Then, following entry of a protective order and discovery, Sohm moved for summary judgment. A claims summary supporting the motion, based upon print run reports produced by Scholastic in discovery, shows that Scholastic exceeded license limits in *sixteen* separate instances.[158] In one instance, for example, Scholastic obtained a license to print 40,000 copies but actually printed 195,500; in another

---

[155] S.D.N.Y. Case No. 1:14-cv-05089-LGS-JCF (*see* Doc. 1 (Complaint); Doc. 8 (Scholastic's Memorandum re motion to dismiss); and Doc. 23 (Order denying motion to dismiss)).

[156] S.D.N.Y. Case No. 1:16-cv-07098-JPO.

[157] *See id.*, Doc. 1 and Doc. 1-1 (Complaint, and Ex. 1 thereto); Doc. 28 (Scholastic's withdrawal of its motion to dismiss).

[158] *See id.*, Doc. 66 (Plaintiff's motion for partial summary judgment); Docs. 69 and 69-1 (Declaration of Alex Rice Kerr, and Ex. 1 thereto) (Scholastic stipulated to the print run amounts, Doc. 69 ¶ 5).

instance Scholastic obtained a license to print 40,000 copies but actually printed 129,051.[159]

### F. Scholastic's "audit" argument has no merit.

Scholastic argued the Complaint should be dismissed because Yamashita's "actual goal is an audit of Scholastic's uses of their photographs."[160]  Judge Forrest did not grant Scholastic's motion on this basis, and rightly so.  Yamashita did not assert a contractual or statutory right to an "audit," and thus the case Scholastic principally relied upon – *Young-Wolff v. McGraw-Hill Companies*[161] – is inapposite. Count II of the Complaint in *Young-Wolff* requested a "declaratory judgment requiring Defendant to disclose to Plaintiff the full scope of Defendant's use of Plaintiff's photographs."[162]  There is no such Count in Yamashita's Complaint.

What Scholastic is really suggesting is Yamashita should not get *discovery* regarding Scholastic's uses of Yamashita's images.[163]  Judge

---

[159] *Id.* Doc. 69-1 (rows 9 and 10).

[160] A47.

[161] 2014 WL 349711 (S.D.N.Y. 2014).

[162] *Id.* at *6.

[163] *See* A137-39.

51

Beetlestone rejected this argument in *Keller v. Scholastic,* and ordered Scholastic to "produce comprehensive usage information for each of the images at issue, including print runs, geographical distribution, languages, and electronic uses."[164]

### G. The injustice of the District Court's error is underscored by its dismissal of Yamashita's claims *with prejudice.*

Scholastic has been sued for copyright infringement in many other cases, including other cases involving Corbis invoices.[165] As *Sohm* illustrates, some evidence of Scholastic exceeding license limits in invoices becomes public at the summary judgment stage. Hence, it is likely details about Scholastic exceeding the Corbis invoices at issue here will eventually become public in another case.

"Pleadings must be construed so as to do justice."[166] But Judge Forrest instead strictly construed Yamashita's Complaint, faulting Yamashita for not pleading details known only to Scholastic, and dismissed Yamashita's claims *with prejudice*. This underscores how rigid application of the *Kelly* standard is unjust, and allows an infringer

---

[164] A485 ¶¶ 5-6.

[165] *See* A13 ¶ 16.

[166] Fed.R.Civ.P. 8(e).

to escape accountability.

## II. The District Court erred when it denied Yamashita leave to amend with respect to 118 out of 119 of his copyright infringement claims, and denied Yamashita leave to plead his proposed common law claims.

### A. Standards of review.

Denial of leave to amend is generally reviewed for abuse of

discretion, but where, as here, the district court denies leave to amend

on grounds that the proposed amendment would be futile,[167] this

Court's review is *de novo*.[168] "In assessing whether the proposed

complaint states a claim, [this Court] consider[s] 'the proposed

amendment[s] … along with the remainder of the complaint,' accept[s]

as true all non-conclusory factual allegations therein, and draws all

reasonable inferences in plaintiff's favor to determine whether the

allegations plausibly give rise to an entitlement to relief."[169]

---

[167] Scholastic argued Yamashita's proposed amendments would be futile.  A459-60, 468.

[168] *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224 (2d Cir. 2017) ("We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." (*quoting Panther Partners Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

[169] *Panther Partners*, 681 F.3d at 119 (citation omitted).

To the extent the February 28, 2017 Order was a *sua sponte* dismissal for failure to join Corbis as a party (*see* Section II.C.1.b, below), review is for abuse of discretion.[170] "Questions of law that inform a district court's Rule 19 determination are review *de novo*," however, and "[a]n exercise of discretion that rests on an error of law is necessarily an abuse of discretion."[171]

### B.    Leave to amend is liberally granted.

When leave of court is sought to amend a pleading, Rule 15(a)(2) states "[t]he court should freely give leave when justice so requires."[172] "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[173] "In the absence of any apparent or declared reason … the leave sought should, as the rules require, be 'freely given.'"[174] The "liberal spirit of Rule 15" applies even when leave

---

[170] *American Trucking Ass'n, Inc. v. New York State Thruway Authority*, 795 F.3d 351, 356 (2d Cir. 2015).

[171] *Id.*

[172] Fed.R.Civ.P. 15(a)(2).

[173] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[174] *Id.*

to replead is sought after a judgment of dismissal.[175]

### C. The Proposed First Amended Complaint adequately pleaded 119 claims of copyright infringement, and the District Court erred when it denied Yamashita leave to pursue 118 of those claims.

The *original* Complaint adequately pleaded plausible infringement claims, as explained above. But additional facts pleaded in the PFAC further supported the plausibility of Yamashita's claims.

First, as the PFAC alleges, Scholastic's refusal to disclose usage information uniquely within its possession prevents Yamashita from pleading more details about Scholastic's infringements by exceeding license limits. This kind of plausible explanation for pleading unknown details upon "information and belief" is all *Arista* requires.

Second, Yamashita's proposed amendment alleges Scholastic actually used the entirety of three of Yamashita's Photographs in Scholastic's publications. Paragraph 15 states Scholastic copied Yamashita's photographs in at least the Scholastic publications shown in Exhibits 2 -4.[176] These claims correspond to rows 10, 80 and 85 of the

---

[175] *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011).

[176] A310 ¶ 15; A337-349.

55

PFAC.[177]  Yet Judge Forrest allowed Yamashita to amend only as to *one* of these specifically-identified uses (in row 80), even though PFAC Exhibits 3 and 4 show the ISBNs and dates of publication of other Scholastic's uses of Yamashita's photographs.[178]

Third, the additional details about uses of three images in three publications provides support for *all* the claims.  Plausibility of multiple claims does *not* depend upon the plaintiff attaching a copy of *every one* of the defendant's own infringing publications to a Complaint.  Hence, in *Muench v. McGraw-Hill Companies, Inc.*, Judge Preska denied a motion to dismiss where the plaintiff alleged use "beyond the licenses granted both in publications identified in the [Second Amended Complaint] *and in publications not yet identified.*"[179]  *Lefkowitz* likewise addressed a complaint that did not identify "the publication and information regarding license limits" "for all instances infringement," and concluded: "Plaintiff need not include these allegations in order to

---

[177] The image at A344, in *Earthquakes*, is pleaded at row 10 (A323); the image of Ellison Onizuka at A341, in *Hawaii (From Sea to Shining Sea)*, is pleaded at row 80 (A331), and the image at A349, in *Storms*, is pleaded at row 85 (A332).

[178] A345, A348.

[179] 2013 WL 5372785 *5 (S.D.N.Y. 2013) (emphasis added).

56

plead his claim for copyright infringement adequately."[180]

### D. The District Court erred when it denied Yamashita leave to plead common law claims.

#### 1. The District Court's reasons for denying Yamashita leave to amend to plead bailment-based claims were erroneous.

"A bailment is a delivery of personal property by one to another, where, explicitly or implicitly, the latter agrees to return the property once the purpose of the bailment is fulfilled or the former requests the property back, or to otherwise deal with the property as the former instructs."[181] "A bailment is created when a bailee takes lawful possession of personal property and *has a duty to account for it*."[182] In *Grace*, then-District Judge Chin found that a bailment was "clearly" created when the defendant in that case took lawful possession of the plaintiff's photographic images "and had a duty to account for them."[183]

"A bailment relationship does not create a specific cause of action but instead allows the bailor to choose the specific relief for a breach of

---

[180] *Lefkowitz*, 23 F.Supp.3d at 354.

[181] *Grace v. Corbis Sygma*, 403 F.Supp.2d 337, 347 (S.D.N.Y. 2005) (Chin, J.), *reversed on other grounds*, 487 F.3d 113 (2d Cir. 2007).

[182] *Id.* (emphasis added).

[183] *Id.* at 348.

the bailment contract."[184]  "When a bailee uses the property entrusted to him contrary to the bailor's instructions he is liable for conversion."[185] And when a bailee who has used the bailed property beyond the limits set by the bailor, the bailee must account for all its uses.  In *Ursitti,* the court found that bailment is "a species of trust or quasitrust agreement," and required the bailee to disclose what how it had used the bailed property so the plaintiff / bailor could use that information in the litigation of his conversion claim.[186]  Other courts have also recognized that a bailee has a duty to provide information about how the bailed property has been used.[187]

---

[184] 8A Am. Jur. 2d Bailments § 204 (2016).

[185] *Boyle v. Stephens,* 1997 WL 760498 *3 (S.D.N.Y. 1997) (denying motion to dismiss bailment and conversion claims), *citing Ursitti v. Swid*, 71 N.Y.S.2d 208 (N.Y. City Ct. 1942).

[186] *Ursitti,* 71 N.Y.S.2d at 209-10.

[187] *See Zorbas v. United States Trust Co. N.A.*, 48 F.Supp.3d 464, 482 n. 13 (E.D.N.Y. 2014) ("Under New York law, a bailee of property or pledgee of collateral is subject to a limited fiduciary duty as provided in the bailment or pledge agreement."), *citing Satterwhite v. Harriman Nat'l Bank & Trust Co. of City of New York*, 13 F.Supp. 489 (S.D.N.Y. 1935) ("[W]hen the property of one man is delivered to another and accepted by the latter, the property can only be used by [the latter] in the manner in which it was agreed and intended by its owner that it should be used, and if it is used otherwise the party who received it and so used it, being a fiduciary, must explain how it came to be so

a. **Yamashita's bailment theory does not depend upon the existence of a written contract.**

Judge Forrest denied Yamashita leave to assert "bailment, conversion and accounting claims" because they "all depend on a series of generic PVAs to which plaintiff is not a party."[188]  This was error.

It is hornbook law that "[a] bailment does not necessarily depend upon a contractual relation; it is the element of lawful possession, however created, and the duty to account for the thing as the property of another that creates the bailment, *regardless* of whether such possession is based on contract in the ordinary sense or not."[189]  In *Seaboard Sand & Gravel Corp. v. Moran Towing Corp.*,[190] the District Court dismissed a scow owner's libel in bailment against a defendant

---

used.");  *Chalasani v. State Bank of India, New York Branch*, 235 A.D.2d 449, 653 N.Y.S.2d 28, 29 (1997) (holding that plaintiff had a right to an accounting arising from "the existence of a trust or fiduciary relationship" that existed "by virtue of the parties' status as pledgor and pledgee").

[188] SPA4.

[189] 8A Am. Jur. 2d Bailments § 1 (emphasis added), *citing Pivar v. Graduate School of Figurative Art of the New York Academy of Art*, 290 A.D.2d 212, 212-13, 735 N.Y.S.2d 522, 524 (1st Dep't 2002).

[190] 154 F.2d 399 (2d Cir. 1946).

subcharterer "because there was no contract relation between" them.[191] This Court reversed, explaining that "[w]hile many of the adjudicated cases refer to a bailment as a contractual relation, the statement is not entirely accurate," because "[t]he relation may be created by operation of law."[192]

Yamashita is entitled to step into Corbis's shoes and enforce the pertinent provisions in the PVAs, as discussed more fully in Section II.D.1.c, below. But Yamashita has viable claims against Scholastic on a bailment theory *even if* Yamashita does not have standing to enforce the PVAs, because Scholastic's duties as bailee arise, alternatively, "by operation of law."

> **b.** **The District Court's speculation that "joinder of Corbus" [sic] "might" be required was improper and no basis for dismissal.**

Scholastic did not file any motion to dismiss under Fed.R.Civ.P.

---

[191] *Id.* at 401.

[192] *Id.*; *see also Martin v. Briggs*, 235 A.D.2d 192, 197, 663 N.Y.S.2d 184, 187 (1st Dep't 1997) (same); *Hartford Fire Ins. Co. v. Empresa Ecuatoriana de Aviacion*, 945 F.Supp. 51, 56 (S.D.N.Y. 1996) ("In the absence of a mutual contract of bailment, an implied bailment arises when a party comes into lawful possession of the personal property of another." "The possessor becomes a constructive bailee."), *aff'd*, 122 F.3d 1056 (2d Cir. 1997).

12(b)(7) or 19. And Judge Forrest did not explain any sound basis for her *sua sponte* – and erroneous – suggestion that joining Corbis as a party "might" be required.

First, "courts are reluctant to grant motions to dismiss of this type," and "a Rule 12(b)(7) motion will not be granted because of a vague *possibility* that persons who are not parties may have an interest in the action."[193] "In general, dismissal is warranted only when the defect is serious and cannot be cured."[194]

Second, Judge Forrest did not do the analysis required by Rule 19. "In determining whether an action should be dismissed for nonjoinder, the court … must initially determine whether the party should be joined as a 'necessary party' under Rule 19(a)."[195] "[A]n absent person may be 'necessary' under Rule 19(a) if 'that person claims an interest relating to the subject of the action and is so situated those disposing of the action in the person's absence may[,] … as a practical matter[,]

---

[193] Wright, Miller, *et al.*, 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.) (emphasis added); *see also* Baicker-McKee, Janssen, and Corr, *Federal Civil Rules Handbook* (2017), p. 468 (same).

[194] *Id.*

[195] *American Trucking*, 795 F.3d at 356.

61

impair or impede the person's ability to protect the interest.'"[196]

The District Court made no finding that Corbis is, in fact, a "necessary party." It is not. Yamashita owns the Bailed Property.[197] And Yamashita seeks a bailee's accounting from *Scholastic* – not Corbis – regarding *Scholastic's* uses of the Bailed Property. That Corbis *also* had possession of the images is thus immaterial, and does not make it a "necessary party."[198] And Corbis has not come forward to claim any interest that would be impaired or impeded if this action proceeds without it.[199] The District Court also made no finding that Corbis could not be joined if it were "necessary."

"*If* joinder of a 'necessary' party under Rule 19(a) is not feasible, the court consults Rule 19(b), which 'requires courts to consider whether, "in equity and good conscience," the party is one without

---

[196] *Id.*, *quoting* Fed.R.Civ.P. 19(a)(1)(B).

[197] A316 ¶ 48.

[198] *See Peco Pallet, Inc. v. Northwest Pallet Supply Co.*, 2016 WL 5405107 *10 (N.D. Ill. 2016) (plaintiff's manufacturer and retail customers, who at one time had possession of pallets at issue, were not necessary parties in action against defendant recycling company, which was a constructive bailee of the pallets).

[199] *Tross v. Ritz Carlton Hotel Company, LLC*, 928 F.Supp.2d 498, 508 (D. Conn. 2013) (it is the absent party that must claim an interest).

whom the action between the remaining parties cannot proceed – or, in the traditional terminology, whether the absent party is "indispensable.""[200] But where, as here, no finding is made that a "necessary party" cannot be joined, there is no occasion to consider whether dismissal is warranted.[201]

As this Court stated, "[f]ederal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."[202] No evidence supports any such exceptional finding here.

> ### c. Judge Forrest erred in holding Yamashita lacks standing to enforce PVAs that Scholastic contends, and Judge Chesler found, bind Yamashita on an agency theory.

In support of its motion for transfer of this action from New Jersey under 28 U.S.C. § 1404(a), Scholastic argued "Plaintiffs had a principal-

---

[200] *American Trucking*, 795 F.3d at 356.

[201] *See Tross*, 928 F.Supp.2d at 508 ("Because this Court finds that Cliff Creek is not a 'necessary party' under Rule 19(a), it need not proceed to analyze Rule 19(b), and will not dismiss this action for failure to join an indispensable party.").

[202] *American Trucking*, 795 F.3d at 357, *quoting* Wright & Miller, Fed. Prac. & Proc. § 1609 (3d ed. 2015).

agent relationship with Corbis, and are bound by the PVAs Corbis

signed to litigate disputes in New York."[203]  Judge Chesler found

Yamashita had notice of the forum-selection clauses in the PVAs "since

Plaintiffs are principals and Corbis is their agent."[204]

As Yamashita explained to the District Court, "since Judge

Chesler found, at Scholastic's urging, that Yamashita is Corbis's

principal, Yamashita has standing, and is entitled, to enforce the

PVAs."[205]  It has long been settled that an agent's agreement on behalf

of its principal is enforceable by the principal.[206]  Thus, under New York

law, "a principal can sue on a contract entered into by his agent on his

behalf."[207]  Scholastic is estopped to assert otherwise, because it

--------

[203] A50; *see also* A246 (referring to Yamashita's alleged "agent's
agreement with Scholastic").

[204] A275.

[205] A296, *citing IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759
F.Supp.2d 363, 375 (S.D.N.Y. 2010).

[206] *See, e.g., Ford v. Williams*, 62 U.S. (21 How.) 287, 289, 16 L.Ed. 36
(1858) ("the contract of the agent is the contract of the principal, and
he may sue … thereon, though not named therein"); *Interbras Cayman
Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 6 (2d Cir. 1981)
(referring to "well settled rule that an undisclosed principal may
enforce a contract made for its benefit").

[207] *Id.*, *citing Kelly Asphalt Block Co. v. Barber Asphalt Paving Co.*, 211
N.Y. 68, 70-71, 105 N.E. 88, 89 (1914) (Cardozo, J.) ("[a] contact …

obtained transfer by arguing that the PVAs were entered into by Corbis as Yamashita's agent, for Yamashita's benefit, and Scholastic would derive an unfair advantage it were allowed to do an about-face now.[208]

Judge Forrest's cryptic "note" that "principle [sic] / agent relations is [sic] not equivalent to standing in Corbis's shoes in the contracts for all purposes"[209] misses the point. The question is whether Yamashita has standing to sue to obtain the *benefit* of agreements which Judge Chesler held *bind and burden* Yamashita in this case. To answer "no" would be unjust. Moreover, Scholastic did not oppose Yamashita's requested amendment on the basis "noted" *sua sponte* by the Court. Scholastic instead doubled down, asserting the PVAs were "agreements between Scholastic and Plaintiffs' agent, Corbis."[210]

---

made in the name of an agent as ostensible principal, may be sued on by the real principal at the latter's election.").

[208] *See In re Adelphia Recovery Trust*, 634 F.3d 678, 695 (2d Cir. 2011) ("Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.").

[209] SPA4.

[210] A453.

### d. Judge Forrest erroneously cherry-picked and misinterpreted provisions of the PVAs, and overlooked Yamashita's allegation that Scholastic refused to account for its uses.

Judge Forrest "noted" – *sua sponte* – that paragraph 5 of the 2001 PVA states "[t]his Agreement is not considered a bailment," and apparently concluded (without considering applicable case law) this forecloses Yamashita's bailment theory. It does not.

First, "paragraph 5 of the 2001 PVA" does not appear in the 2004, 2008 or 2011 PVAs, and has no bearing on Scholastic's duties (1) as bailee during the period when three of the four PVAs were in effect, or (2) by operation of law (if Yamashita were found to lack standing to enforce the PVAs).

Second, "[w]hile the common law rule is that the bailee is not an insurer of the goods and is only liable for damage resulting from bailee's negligence, the parties can contract in such a manner as to enlarge or reduce the bailee's responsibility to the bailor."[211] "In such a case, the bailee can become the insurer of the bailed goods, the extent of its liability being measured by an express contract delineating the

---

[211] *Marvin E. Herman, Inc. v. White*, 1994 WL 363980 *2 (S.D.N.Y. 1994).

prospective rights of the parties."[212]

That was the effect of paragraph 5, as the PFAC alleges.[213]  The 2001 PVA's *enlargement* of Scholastic's responsibility beyond its usual bailee duties does not mean Scholastic was not a bailee under the 2004, 2008 and 2011 PVAs.

Judge Forrest also "noted" "storage terms" in the 2004, 2008 and 2011 PVAs,[214] without explaining why they matter.  They are entirely consistent with the existence of a bailment, and not reason to deny leave to amend.

Finally, Judge Forrest found it "unclear and not plead [sic] that Scholastic has breached its obligations to <u>Corbus [sic]</u>."[215]  But, as discussed above, the law authorizes Yamashita to enforce the PVAs, and the PFAC repeatedly alleges Scholastic has refused to disclose

---

[212] *Id.*

[213] A316 ¶ 46 (paragraph 5 "imposed upon Scholastic duties greater than those that arise from a bailment relationship").  Among other things, paragraph 5 obligated Scholastic to indemnify Corbis for any and all … misuse of any Image."  A367 ¶ 5.

[214] *See* A378 ("Storage of Images").

[215] SPA4.

information about its unauthorized uses of the Photographs.[216]

> **2. There also is no merit in Scholastic's additional reasons for opposing Yamashita's motion for leave to amend, which were not adopted by the District Court.**

> **a. Scholastic does not show futility with unreasonable interpretations of the PVAs.**

The PVAs obligated Scholastic to provide copies of all publications in which Scholastic used images it obtained from Corbis.[217]  Scholastic's compliance with this obligation would identify every publication in which Scholastic used Yamashita's images, which would enable Yamashita to plead more details regarding the copyright claims. Scholastic cannot avoid this conclusion by arguing that Yamashita waited too long – until after the PVAs expired – to ask for copies of the publications.  Scholastic believes and claims the PVAs never ended; after expiring by its terms "Scholastic and Corbis continued to operate under" it until a new agreement is, or was, signed.[218]

_____

[216] A311 ¶ 19; A312 ¶ 21; A315 ¶¶ 40-41; A317 ¶¶ 53-54.

[217] A314 ¶¶ 33-36.

[218] A493 ¶ 3.

According to Scholastic, the "Payment/Reporting" provision in PVAs quoted in Paragraph 35 of the PFAC[219] itself imposed no accounting obligation unless a duty to account was also stated in a particular invoice. The argument fails for several reasons. The PVAs must be read as a whole, and all provisions – including the "accounting" provision – must be given effect and harmonized.[220] When terms "set forth in the applicable Invoice" granted a limited license – as in Exhibit 5 to the PFAC[221] – it is unreasonable to suggest Scholastic had no duty to account for its uses. After all, "all licenses granted by Corbis [we]re conditioned upon" Scholastic's "compliance with all provisions of th[e] Agreement."[222] For rights-managed content Corbis granted only a "limited" license "as specified in the Invoice."[223] And unauthorized use was not just copyright infringement; it also entitled Corbis to bill Scholastic "ten (10) times the license fee for any unauthorized use."[224]

---

[219] A314 ¶ 35.

[220] *See Maven Technologies, LLC v. Vasile*, 147 A.D.3d 1377, 46 N.Y.S.3d 720, 722 (4th Dep't 2017).

[221] A351.

[222] A391 ¶ 3(a).

[223] *Id.* ¶ 3(b).

[224] A392 ¶ 11.

There is only one reasonable interpretation of the "Payment/Reporting" provision – it was intended to facilitate Corbis' billing Scholastic for unauthorized uses whenever Scholastic exceeded the license limits "set forth in the applicable Invoice." Scholastic's failure to account would frustrate Corbis' ability to bill for Scholastic's unauthorized uses, and the "Unauthorized Uses" provision would be rendered a nullity, a result the law does not allow.[225] Further, how Corbis and Scholastic interpreted these provisions in practice cannot be resolved on the pleadings. And to the extent Scholastic contends the "Payment/Reporting" provision is ambiguous, summary judgment would be inappropriate if a "determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."[226]

_____

[225] "Where possible, a contract should be interpreted to avoid inconsistencies and to give meaning to all of its provisions, giving a practical and reasonable interpretation to the language employed and the parties' reasonable expectations." *Malleolo v. Malleolo*, 287 A.D.2d 603, 603-04, 731 N.Y.S.2d 752 (2d Dep't 2001). "[A] court should not adopt an interpretation which would leave any provision without force and effect." *Gonzalez v. Norrito*, 256 A.D. 2d 440, 440, 682 N.Y.S.2d 100 (2d Dep't 1998).

[226] *Maven*, 46 N.Y.S.3d at 722.

**b.** **Scholastic did not show Yamashita's proposed bailment and conversion claims are futile for lack of Scholastic's "exclusive control" over a "unique" original.**

In opposition to Yamashita's motion to amend, Scholastic argued the PFAC does not allege Yamashita "relinquished exclusive control" over "a unique physical object that bailment law contemplates."[227] The argument fails, as Yamashita explained to the District Court.[228]

First, by definition, *every* material object in which a copyrighted work is fixed – including "the material object … in which the work is first fixed" – is a "copy."[229] It cannot be the law that *no* material object embodying a copyrighted work could ever be within the law of bailment just because *all* such objects are "copies."

Second, the legislative history of the 1976 Copyright Act explicitly recognized that possession of *particular* "copy" of a work may be

---

[227] A467-69.

[228] A478-480.

[229] 17 U.S.C. § 101 ("'Copies' are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term 'copies' includes the material object, other than a phonorecord, in which the work is first fixed.")

71

governed by the law of *bailment*,[230] and courts have found copies, rather than an "originals," to be the subject of a bailment.[231]

Third, Scholastic's wrongheaded rule would put many valuable art objects outside bailment law solely because they are "copies" and not "unique originals." For example, the *Sleeping Hermaphrodite*, which recently was exhibited at the Metropolitan Museum of Art, would not be protected by the law of bailment because it is a copy.[232] The multiple castings of Rodin's *The Burghers of Calais* displayed in many museums, and fine art prints released in limited editions, would be in the same category. Copies can have great value, and the law of bailment protects them too.

Here, when the original of an image is a high-resolution digital

---

[230] H.R. Rep. 94-1476, p. 80 ("Acquisition of an object embodying a copyrighted work by rental, lease, loan, ***or bailment***, carries with it no privilege to dispose of the ***copy*** under section 109(a) or to display it publicly under section 109(b)." (emphases added)).

[231] *See Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp.2d 191, 202-03 (S.D.N.Y. 2006) ("sub-master" tapes of films – *i.e.*, copies of the master tapes – were the subject of bailment); *Boyle,* 1997 WL 760498 *3 (denying motion to dismiss bailment claims regarding "copy" of Executive Summary); *Natkin v. Winfrey*, 111 F.Supp.2d 1003, 1014 (N.D. Ill. 2000) (bailment and conversion claims as to "negatives and hard copies of photographs").

[232] A499 ("[T]he original is lost…. The Sleeping Hermaphrodite of Palazzo Massimo is generally considered the most faithful copy.").

file, every high-resolution copy of it is, for all practical purposes exactly the same – a *duplicate original*. Publishers do not want low-resolution, pixelated images; they want high-resolution digital files to facilitate high-quality reproductions. When Scholastic obtained the high-resolution images at issue here, it was able to exploit them as fully as the owner of the "original" digital file or transparency created in the camera.

Fourth, the PFAC alleges Scholastic's exclusive control of the particular high-resolution copies at issue,[233] and any dispute about its control – for purposes of an accounting – cannot be resolved on the pleadings. And Scholastic surely does not contend that Yamashita had joint control over Scholastic's own computer systems where the high-resolution digital files reside.

### c. Yamashita's conversion and accounting claims are not preempted.

Contrary to Scholastic's arguments,[234] Yamashita's conversion and

---

[233] A315 ¶ 44(a) ("Information about Scholastic's usage of Yamashita's images is uniquely within Scholastic's own possession, custody and exclusive control."); A316 ¶ 50 ("Scholastic took lawful possession of the Bailed Property.").

[234] A469-70.

accounting claims go well beyond the rights protected by copyright and are not preempted under 17 U.S.C. § 301(b). The PFAC charges Scholastic with wrongfully exercising control and dominion over particular high-resolution digital files (Yamashita's personal property) by refusing to account for Scholastic's uses of them under the law of bailment.[235] That is very different from a claim for damages for unauthorized copying of the images.[236] It has always been Scholastic's position that an accounting (or what Scholastic calls an "audit") is *not* available under the Copyright Act.[237] It necessarily follows that the accounting Yamashita seeks is not preempted.

---

[235] A318 ¶ 60.

[236] *Natkin*, 111 F.Supp.2d at 1014 (bailee's alleged refusal to return photographic negatives as agreed stated conversion claim that was not preempted; "these allegations go far beyond those pertaining to copyright law").

[237] *See* A47 ("nothing in Section 106 or elsewhere [in the Copyright Act] grants copyright owners a statutory right to audit Scholastic's supposed uses of their works").

## CONCLUSION AND SUMMARY OF REQUESTED RELIEF

For the foregoing reasons, this Court should (1) vacate the District Court's order dismissing the original Complaint and/or, vacate the District Court's order denying Yamashita leave to amend Count I for copyright infringement as pleaded in the PFAC; (2) vacate the District Court's Order denying Yamashita leave to assert the proposed common law claims in the PFAC; (3) reverse the judgment in Scholastic's favor; and (4) remand this case for further proceedings.

DATE: August 28, 2017          HARMON SEIDMAN BRUSS & KERR, LLC

*/s/ Maurice Harmon*

Maurice Harmon
Christopher Seidman
Gregory N. Albright
*Attorneys for Plaintiffs / Appellants*
*Michael Yamashita and*
*Michael Yamashita, Inc.*

## **Certificate of Compliance with Word Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed.R.App.P. 32(e) and Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed.R.App.P. 32(f), this document contains 13,933 words.

2. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type style.


DATE: August 28, 2017  HARMON SEIDMAN BRUSS & KERR, LLC

       */s/ Maurice Harmon*

       Maurice Harmon
       Christopher Seidman
       Gregory N. Albright
       *Attorneys for Plaintiffs / Appellants*
       *Michael Yamashita*
       *and Michael Yamashita, Inc.*

**SPECIAL APPENDIX**

i

# TABLE OF CONTENTS

**Page**

Memorandum Opinion and Order of the Honorable Katherine B. Forrest, dated January 5, 2017, Appealed From ...................................................... SPA-1

Order of the Honorable Katherine B. Forrest, dated February 28, 2017, Appealed From ...................... SPA-4

Judgment, dated June 7, 2017, Appealed From ......... SPA-5

§101 Definitions of 17 USCA § 101 ......................... SPA-7

§106 Exclusive Rights in Copyrighted Works of 17 USCA § 101 ........................................... SPA-14

§301 Preemption with Respect to Other Laws of 17 USCA § 101 ........................................... SPA-15

§411 Registration and Civil Infringement Actions of 17 USCA § 101 ........................................... SPA-17

§501 Infringement of Copyright of 17 USCA § 101 . SPA-19

FCRP Rule 8 General Rules of Pleading ................... SPA-21

FCRP Rule 9 Pleading Special Matters ..................... SPA-24

FCRP Rule 12 Defenses and Objections When and How Presented Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing ..................................... SPA-26

FCRP Rule 15 Amended and Supplemental Pleadings ................................................... SPA-30

FCRP Rule 19 Required Joinder of Parties ................ SPA-32

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MICHAEL YAMASHITA and MICHAEL                                :
YAMASHITA, INC.,                                             :
                                                             :
                              Plaintiffs,                    :
                                                             :          16-cv-9201 (KBF)
                                                             :
              -v-                                            :
                                                             :          MEMORANDUM
SCHOLASTIC, INC.,                                            :          OPINION & ORDER
                                                             :
                              Defendant.                     :
                                                             :
------------------------------------------------------------ X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>January 5, 2017</u> |

KATHERINE B. FORREST, District Judge:

Plaintiffs Michael Yamashita and Michael Yamashita, Inc., commenced this

action on June 28, 2016, in the U.S. District Court for the District of New Jersey.

(Compl., ECF No. 1.)  On September 14, 2016, defendant filed a motion to dismiss

for failure to state a claim or, in the alternative, to transfer venue to the Southern

District of New York.  (ECF No. 12.)  On November 21, 2016, the Honorable Stanley

R. Chesler granted defendant's motion to as to venue and transferred this action to

the Southern District of New York, where it was assigned to the undersigned on

November 29, 2016.  (ECF No. 24.)

Defendant has renewed its motion to dismiss for failure to state a claim.

(ECF No. 29.)  Because the complaint does not plead sufficient facts to support its

claims beyond mere speculation, defendant's motion is GRANTED.

Federal Rule of Civil Procedure 8 requires that a complaint contain "'a short

and plain statement of the claim showing that the pleader is entitled to relief' in

order to 'give the defendant fair notice of what the . . . claim is and the grounds

SPA-2

upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting

<u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>see also</u> Fed. R. Civ. P. 8(a)(2).  These

"[f]actual allegations must be enough to raise a right to relief above the speculative

level[.]"  <u>Twombly</u>, 550 U.S. at 555.  Rule 8 "asks for more than a sheer possibility

that defendant acted unlawfully.  Where a complaint pleads facts that are merely

consistent with a defendant's liability," it cannot survive a motion to dismiss.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotations marks and citations

omitted).

It is beyond cavil that Rule 8 requires a plaintiff complaining of copyright

infringement to plead facts sufficient to support at least one plausible claim of

infringement.  <u>See</u> <u>Kelly v. L.L. Cool J</u>, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), <u>aff'd</u>, 23

F.3d 398 (2d Cir. 1994) ("A properly plead copyright infringement claim must allege

1) which specific original works are the subject of the copyright claim, 2) that

plaintiff owns the copyrights in those works, 3) that the copyrights have been

registered in accordance with the statute, and 4) by what acts during what time the

defendant infringed the copyright.").  Plaintiffs have not met this standard.

The complaint speculates about "various ways" defendants might have

infringed, but admits that the allegedly infringing publications "have not yet been

identified," that "Scholastic alone knows of these wholly unauthorized uses," and

that "Scholastic alone knows the full extent to which it has infringed [plaintiffs']

copyrights[.]"  (Compl. ¶¶ 13-15.)  Plaintiffs do not name a single instance of

infringement or allege facts to establish a timeframe for when such an infringement

2

SPA-3

might have occurred.  Instead, they cast out five possible ways defendants could have infringed some time "after" defendants obtained the photographs.[1]  (Id. ¶ 13, 14.)  This is wholly insufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555.

The complaint contains so few factual allegations it is nothing more than a fishing expedition.  Rule 8 does not permit such aimless trawling.  The motion to dismiss is therefore GRANTED.

The Clerk of Court is directed to terminate this action.


SO ORDERED.

Dated:       New York, New York
             January 5, 2017


_____
       KATHERINE B. FORREST
       United States District Judge


---

[1] Plaintiffs argue specifying that defendants infringed "after" obtaining the photographs provides a sufficient factual basis to establish a timeframe for when the alleged infringement occurred.  (Brief in Opp. at 14, ECF No. 14.)  Not so.  Any infringement would necessarily happen "after" defendants accessed the copyrighted material.  This allegation adds no factual support to the complaint.

3

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 28, 2017

Maurice Harmon
Harmon & Seidman LLC
11 Chestnut Street
New Hope, PA 18938
(917) 561-4434
maurice@harmonseidman.com
*Of counsel*

Attorneys for Plaintiffs
MICHAEL YAMASHITA and
MICHAEL YAMASHITA, INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MICHAEL YAMASHITA and MICHAEL : No. 1:16-CV-09201-KBF
YAMASHITA, INC., : Hon. Katherine B. Forrest
:
Plaintiffs, : ECF Case
:
-against- : **MEMORANDUM OF LAW IN**
: **SUPPORT OF PLAINTIFFS' MOTION**
: **FOR:**
SCHOLASTIC, INC., :
:
Defendant. : **(1) RECONSIDERATION OF ORDER**
: **DISMISSING THE COMPLAINT;**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x **AND**

**(2) LEAVE TO FILE FIRST**
**AMENDED COMPLAINT**

**Oral Argument Requested**

*[Handwritten annotations:]*

Order

The Court hereby orders as follows:

1. Leave to amend with regard to the single image at row 80 (p Ex. 1) is granted, with regard to the copyright claim only.

2. Leave to amend with regard to all other images (the remaining 118) is DENIED as futile as plaintiff has shown not a single fact supportive of any infringement claim with regard to any of those images.

3. Leave to amend to add bailment, conversion and accounting claims is DENIED as they all depend on a series of generic PVAs to which plaintiff is not a party. To bring such claims might well require joinder of Corbis. The Court notes principle/agent relations is not equivalent to standing is Corbis's shoes vis the contracts for all purposes. The Court further notes that Corbis had itself a more

involved arrangement with Scholastic -- as referenced is ¶ 5 of the 2001 PVA ("This Agreement is not considered a bailment"), and storage terms is other PVAs. It is also unclear and not plead that Scholastic has breached its obligations to Corbis.

For all of these reasons, the motion to amend is granted solely with regard to the single image and the single copyright claim. A revised amended complaint shall be filed within one week. The motion at ECF No. 33 is closed.

KBF
USDJ
2/28/17

SPA-5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
MICHAEL YAMASHITA and MICHAEL          :
YAMASHITA, INC.,                                      :
                                                             :
                              Plaintiffs,              :
                                                             :
              -v-                                          :              16-cv-9201 (KBF)
                                                             :
SCHOLASTIC, INC.,                                  :              ORDER
                                                             :
                              Defendant.            :
                                                             :
------------------------------------------------------------ X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>June 7, 2017</u> |

KATHERINE B. FORREST, District Judge:

The Court having received and considered the parties' Stipulation for Partial Dismissal

with Prejudice, and Motion for Entry of Final Judgment, (ECF No. 58), and finding good cause,

It is ORDERED that the Stipulation for Partial Dismissal with Prejudice, and Motion for

Entry of Final Judgment, (ECF No. 58), is ACCEPTED.

It is FURTHER ORDERED, ADJUDGED, and DECREED: that for the reasons stated in

the Court's Orders at ECF Nos. 31 & 41 that judgment is GRANTED in favor of defendant

Scholastic, Inc. with respect to the copyright infringement claims in rows 1-79 and 81-119 of

Exhibit 1 of the original Complaint (ECF No. 1).

It is FURTHER ORDERED that the copyright infringement claim in the First Amended

Complaint, (ECF No. 43), which was originally pleaded at row 80 of Exhibit 1 to the original

Complaint (ECF No. 1), is dismissed with prejudice, with the parties to bear their own costs and

SPA-6

attorneys' fees.  The Clerk of Court is directed to close the motion at ECF No. 58 and to

terminate this action.

      SO ORDERED.

Dated:      New York, New York
              June 7, 2017

                        KATHERINE B. FORREST
                        United States District Judge

2

SPA-7

 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
 Title 17. Copyrights (Refs & Annos)
  Chapter 1. Subject Matter and Scope of Copyright (Refs & Annos)

17 U.S.C.A. § 101

§ 101. Definitions

Effective: December 9, 2010
Currentness

Except as otherwise provided in this title, as used in this title, the following terms and their variant forms mean the following:

An "anonymous work" is a work on the copies or phonorecords of which no natural person is identified as author.

An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

"Audiovisual works" are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines, or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

The "Berne Convention" is the Convention for the Protection of Literary and Artistic Works, signed at Berne, Switzerland, on September 9, 1886, and all acts, protocols, and revisions thereto.

The "best edition" of a work is the edition, published in the United States at any time before the date of deposit, that the Library of Congress determines to be most suitable for its purposes.

A person's "children" are that person's immediate offspring, whether legitimate or not, and any children legally adopted by that person.

A "collective work" is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole.

A "compilation" is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term "compilation" includes collective works.

A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.

"Copies" are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with

SPA-8

the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.

"Copyright owner", with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right.

A "Copyright Royalty Judge" is a Copyright Royalty Judge appointed under section 802 of this title, and includes any individual serving as an interim Copyright Royalty Judge under such section.

A work is "created" when it is fixed in a copy or phonorecord for the first time; where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.

A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

A "device", "machine", or "process" is one now known or later developed.

A "digital transmission" is a transmission in whole or in part in a digital or other non-analog format.

To "display" a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially.

An "establishment" is a store, shop, or any similar place of business open to the general public for the primary purpose of selling goods or services in which the majority of the gross square feet of space that is nonresidential is used for that purpose, and in which nondramatic musical works are performed publicly.

The term "financial gain" includes receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works.

A work is "fixed" in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of sounds, images, or both, that are being transmitted, is "fixed" for purposes of this title if a fixation of the work is being made simultaneously with its transmission.

A "food service or drinking establishment" is a restaurant, inn, bar, tavern, or any other similar place of business in which the public or patrons assemble for the primary purpose of being served food or drink, in which the majority of the gross square feet of space that is nonresidential is used for that purpose, and in which nondramatic musical works are performed publicly.

The "Geneva Phonograms Convention" is the Convention for the Protection of Producers of Phonograms Against Unauthorized Duplication of Their Phonograms, concluded at Geneva, Switzerland, on October 29, 1971.

The "gross square feet of space" of an establishment means the entire interior space of that establishment, and any adjoining outdoor space used to serve patrons, whether on a seasonal basis or otherwise.

The terms "including" and "such as" are illustrative and not limitative.

An "international agreement" is--

    **(1)** the Universal Copyright Convention;

    **(2)** the Geneva Phonograms Convention;

    **(3)** the Berne Convention;

    **(4)** the WTO Agreement;

    **(5)** the WIPO Copyright Treaty;

    **(6)** the WIPO Performances and Phonograms Treaty; and

    **(7)** any other copyright treaty to which the United States is a party.

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

"Literary works" are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

The term "motion picture exhibition facility" means a movie theater, screening room, or other venue that is being used primarily for the exhibition of a copyrighted motion picture, if such exhibition is open to the public or is made to an assembled group of viewers outside of a normal circle of a family and its social acquaintances.

"Motion pictures" are audiovisual works consisting of a series of related images which, when shown in succession, impart an impression of motion, together with accompanying sounds, if any.

To "perform" a work means to recite, render, play, dance, or act it, either directly or by means of any device or process or, in the case of a motion picture or other audiovisual work, to show its images in any sequence or to make the sounds accompanying it audible.

A "performing rights society" is an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), and SESAC, Inc.

"Phonorecords" are material objects in which sounds, other than those accompanying a motion picture or other audiovisual work, are fixed by any method now known or later developed, and from which the sounds can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "phonorecords" includes the material object in which the sounds are first fixed.

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

For purposes of section 513, a "proprietor" is an individual, corporation, partnership, or other entity, as the case may be, that owns an establishment or a food service or drinking establishment, except that no owner or operator of a radio or television station licensed by the Federal Communications Commission, cable system or satellite carrier, cable or satellite carrier service or programmer, provider of online services or network access or the operator of facilities therefor, telecommunications company, or any other such audio or audiovisual service or programmer now known or as may be developed in the future, commercial subscription music service, or owner or operator of any other transmission service, shall under any circumstances be deemed to be a proprietor.

A "pseudonymous work" is a work on the copies or phonorecords of which the author is identified under a fictitious name.

"Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

To perform or display a work "publicly" means--

    **(1)** to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or

    **(2)** to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

"Registration", for purposes of sections 205(c)(2), 405, 406, 410(d), 411, 412, and 506(e), means a registration of a claim in the original or the renewed and extended term of copyright.

"Sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied.

"State" includes the District of Columbia and the Commonwealth of Puerto Rico, and any territories to which this title is made applicable by an Act of Congress.

A "transfer of copyright ownership" is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license.

A "transmission program" is a body of material that, as an aggregate, has been produced for the sole purpose of transmission to the public in sequence and as a unit.

To "transmit" a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent.

A "treaty party" is a country or intergovernmental organization other than the United States that is a party to an international agreement.

The "United States", when used in a geographical sense, comprises the several States, the District of Columbia and the Commonwealth of Puerto Rico, and the organized territories under the jurisdiction of the United States Government.

For purposes of section 411, a work is a "United States work" only if--

 (1) in the case of a published work, the work is first published--

 (A) in the United States;

 (B) simultaneously in the United States and another treaty party or parties, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States;

 (C) simultaneously in the United States and a foreign nation that is not a treaty party; or

 (D) in a foreign nation that is not a treaty party, and all of the authors of the work are nationals, domiciliaries, or habitual residents of, or in the case of an audiovisual work legal entities with headquarters in, the United States;

 (2) in the case of an unpublished work, all the authors of the work are nationals, domiciliaries, or habitual residents of the United States, or, in the case of an unpublished audiovisual work, all the authors are legal entities with headquarters in the United States; or

 (3) in the case of a pictorial, graphic, or sculptural work incorporated in a building or structure, the building or structure is located in the United States.

A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article".

The author's "widow" or "widower" is the author's surviving spouse under the law of the author's domicile at the time of his or her death, whether or not the spouse has later remarried.

The "WIPO Copyright Treaty" is the WIPO Copyright Treaty concluded at Geneva, Switzerland, on December 20, 1996.

The "WIPO Performances and Phonograms Treaty" is the WIPO Performances and Phonograms Treaty concluded at Geneva, Switzerland, on December 20, 1996.

A "work of visual art" is--

 (1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or

SPA-12

**(2)** a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author.

A work of visual art does not include--

**(A)(i)** any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication;

**(ii)** any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container;

**(iii)** any portion or part of any item described in clause (i) or (ii);

**(B)** any work made for hire; or

**(C)** any work not subject to copyright protection under this title.

A "work of the United States Government" is a work prepared by an officer or employee of the United States Government as part of that person's official duties.

A "work made for hire" is--

**(1)** a work prepared by an employee within the scope of his or her employment; or

**(2)** a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

In determining whether any work is eligible to be considered a work made for hire under paragraph (2), neither the amendment contained in section 1011(d) of the Intellectual Property and Communications Omnibus Reform Act of 1999, as enacted by section 1000(a)(9) of Public Law 106-113, nor the deletion of the words added by that amendment--

**(A)** shall be considered or otherwise given any legal significance, or

**(B)** shall be interpreted to indicate congressional approval or disapproval of, or acquiescence in, any judicial determination,

by the courts or the Copyright Office. Paragraph (2) shall be interpreted as if both section 2(a)(1) of the Work Made For Hire and Copyright Corrections Act of 2000 and section 1011(d) of the Intellectual Property and Communications Omnibus Reform Act of 1999, as enacted by section 1000(a)(9) of Public Law 106-113, were never enacted, and without regard to any inaction or awareness by the Congress at any time of any judicial determinations.

The terms "WTO Agreement" and "WTO member country" have the meanings given those terms in paragraphs (9) and (10), respectively, of section 2 of the Uruguay Round Agreements Act.

**CREDIT(S)**

(Pub.L. 94-553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2541; Pub.L. 96-517, § 10(a), Dec. 12, 1980, 94 Stat. 3028; Pub.L. 100-568, § 4(a)(1), Oct. 31, 1988, 102 Stat. 2854; Pub.L. 101-650, Title VI, § 602, Title VII, § 702, Dec. 1, 1990, 104 Stat. 5128, 5133; Pub.L. 102-307, Title I, § 102(b)(2), June 26, 1992, 106 Stat. 266; Pub.L. 102-563, § 3(b), Oct. 28, 1992, 106 Stat. 4248; Pub.L. 104-39, § 5(a), Nov. 1, 1995, 109 Stat. 348; Pub.L. 105-80, § 12(a)(3), Nov. 13, 1997, 111 Stat. 1534; Pub.L. 105-147, § 2(a), Dec. 16, 1997, 111 Stat. 2678; Pub.L. 105-298, Title II, § 205, Oct. 27, 1998, 112 Stat. 2833; Pub.L. 105-304, Title I, § 102(a), Oct. 28, 1998, 112 Stat. 2861; Pub.L. 106-44, § 1(g)(1), Aug. 5, 1999, 113 Stat. 222; Pub.L. 106-113, Div. B, § 1000(a)(9) [Title I, § 1011(d)], Nov. 29, 1999, 113 Stat. 1536, 1501A-544; Pub.L. 106-379, § 2(a), Oct. 27, 2000, 114 Stat. 1444; Pub.L. 107-273, Div. C, Title III, § 13210(5), Nov. 2, 2002, 116 Stat. 1909; Pub.L. 108-419, § 4, Nov. 30, 2004, 118 Stat. 2361; Pub.L. 109-9, Title I, § 102(c), Apr. 27, 2005, 119 Stat. 220; Pub.L. 111-295, § 6(a), Dec. 9, 2010, 124 Stat. 3181.)

Notes of Decisions (406)

17 U.S.C.A. § 101, 17 USCA § 101
Current through P.L. 115-45. Title 26 current through 115-46.

End of Document                     © 2017 Thomson Reuters. No claim to original U.S. Government Works.

SPA-14

 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
  Title 17. Copyrights (Refs & Annos)
    Chapter 1. Subject Matter and Scope of Copyright (Refs & Annos)

17 U.S.C.A. § 106

§ 106. Exclusive rights in copyrighted works

Effective: November 2, 2002

Currentness

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

**CREDIT(S)**

(Pub.L. 94-553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2546; Pub.L. 101-318, § 3(d), July 3, 1990, 104 Stat. 288; Pub.L. 101-650, Title VII, § 704(b)(2), Dec. 1, 1990, 104 Stat. 5134; Pub.L. 104-39, § 2, Nov. 1, 1995, 109 Stat. 336; Pub.L. 106-44, § 1(g)(2), Aug. 5, 1999, 113 Stat. 222; Pub.L. 107-273, Div. C, Title III, § 13210(4)(A), Nov. 2, 2002, 116 Stat. 1909.)

Notes of Decisions (191)

17 U.S.C.A. § 106, 17 USCA § 106
Current through P.L. 115-45. Title 26 current through 115-46.

SPA-15

United States Code Annotated
  Title 17. Copyrights (Refs & Annos)
    Chapter 3. Duration of Copyright (Refs & Annos)

17 U.S.C.A. § 301

§ 301. Preemption with respect to other laws

Effective: October 27, 1998

Currentness

**(a)** On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

**(b)** Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to--

**(1)** subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or

**(2)** any cause of action arising from undertakings commenced before January 1, 1978;

**(3)** activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106; or

**(4)** State and local landmarks, historic preservation, zoning, or building codes, relating to architectural works protected under section 102(a)(8).

**(c)** With respect to sound recordings fixed before February 15, 1972, any rights or remedies under the common law or statutes of any State shall not be annulled or limited by this title until February 15, 2067. The preemptive provisions of subsection (a) shall apply to any such rights and remedies pertaining to any cause of action arising from undertakings commenced on and after February 15, 2067. Notwithstanding the provisions of section 303, no sound recording fixed before February 15, 1972, shall be subject to copyright under this title before, on, or after February 15, 2067.

**(d)** Nothing in this title annuls or limits any rights or remedies under any other Federal statute.

**(e)** The scope of Federal preemption under this section is not affected by the adherence of the United States to the Berne Convention or the satisfaction of obligations of the United States thereunder.

§ 301. Preemption with respect to other laws, 17 USCA § 301

**(f)(1)** On or after the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, all legal or equitable rights that are equivalent to any of the rights conferred by section 106A with respect to works of visual art to which the rights conferred by section 106A apply are governed exclusively by section 106A and section 113(d) and the provisions of this title relating to such sections. Thereafter, no person is entitled to any such right or equivalent right in any work of visual art under the common law or statutes of any State.

**(2)** Nothing in paragraph (1) annuls or limits any rights or remedies under the common law or statutes of any State with respect to--

**(A)** any cause of action from undertakings commenced before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990;

**(B)** activities violating legal or equitable rights that are not equivalent to any of the rights conferred by section 106A with respect to works of visual art; or

**(C)** activities violating legal or equitable rights which extend beyond the life of the author.

**CREDIT(S)**

(Pub.L. 94-553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2572; Pub.L. 100-568, § 6, Oct. 31, 1988, 102 Stat. 2857; Pub.L. 101-650, Title VI, § 605, Title VII, § 705, Dec. 1, 1990, 104 Stat. 5131, 5134; Pub.L. 105-298, Title I, § 102(a), Oct. 27, 1998, 112 Stat. 2827.)

Notes of Decisions (526)

17 U.S.C.A. § 301, 17 USCA § 301
Current through P.L. 115-45. Title 26 current through 115-46.

SPA-17

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
   Title 17. Copyrights (Refs & Annos)
      Chapter 4. Copyright Notice, Deposit, and Registration (Refs & Annos)

17 U.S.C.A. § 411

§ 411. Registration and civil infringement actions

Effective: October 13, 2008

Currentness

**(a)** Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

**(b)(1)** A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless--

   **(A)** the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

   **(B)** the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

**(2)** In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

**(3)** Nothing in this subsection shall affect any rights, obligations, or requirements of a person related to information contained in a registration certificate, except for the institution of and remedies in infringement actions under this section and section 412.

**(c)** In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute an action for infringement under section 501, fully subject to the remedies provided by sections 502 through 505 and section 510, if, in accordance with requirements that the Register of Copyrights shall prescribe by regulation, the copyright owner--

**(1)** serves notice upon the infringer, not less than 48 hours before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work; and

**(2)** makes registration for the work, if required by subsection (a), within three months after its first transmission.

**CREDIT(S)**

(Pub.L. 94-553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2583; Pub.L. 100-568, § 9(b)(1), Oct. 31, 1988, 102 Stat. 2859; Pub.L. 101-650, Title VI, § 606(c)(1), Dec. 1, 1990, 104 Stat. 5131; Pub.L. 105-80, § 6, Nov. 13, 1997, 111 Stat. 1532; Pub.L. 105-304, Title I, § 102(d), Oct. 28, 1998, 112 Stat. 2863; Pub.L. 109-9, Title I, § 104(b), Apr. 27, 2005, 119 Stat. 222; Pub.L. 110-403, Title I, § 101(a), Title II, § 209(a)(6), Oct. 13, 2008, 122 Stat. 4257, 4264.)

Notes of Decisions (173)

17 U.S.C.A. § 411, 17 USCA § 411
Current through P.L. 115-45. Title 26 current through 115-46.

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

SPA-19

 KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or PreemptedHeld Invalid National Ass'n of Boards of Pharmacy v. Board of Regents of the University System of Georgia, 11th Cir.(Ga.), Feb. 24, 2011

United States Code Annotated
    Title 17. Copyrights (Refs & Annos)
        Chapter 5. Copyright Infringement and Remedies (Refs & Annos)

17 U.S.C.A. § 501

§ 501. Infringement of copyright

Effective: November 2, 2002
Currentness

**(a)** Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

**(b)** The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

**(c)** For any secondary transmission by a cable system that embodies a performance or a display of a work which is actionable as an act of infringement under subsection (c) of section 111, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that television station.

**(d)** For any secondary transmission by a cable system that is actionable as an act of infringement pursuant to section 111(c)(3), the following shall also have standing to sue: (i) the primary transmitter whose transmission has been altered by the cable system; and (ii) any broadcast station within whose local service area the secondary transmission occurs.

**(e)** With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 119(a)(5), a network station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local service area of that station.

§ 501. Infringement of copyright, 17 USCA § 501

**(f)(1)** With respect to any secondary transmission that is made by a satellite carrier of a performance or display of a work embodied in a primary transmission and is actionable as an act of infringement under section 122, a television broadcast station holding a copyright or other license to transmit or perform the same version of that work shall, for purposes of subsection (b) of this section, be treated as a legal or beneficial owner if such secondary transmission occurs within the local market of that station.

**(2)** A television broadcast station may file a civil action against any satellite carrier that has refused to carry television broadcast signals, as required under section 122(a)(2), to enforce that television broadcast station's rights under section 338(a) of the Communications Act of 1934.

**CREDIT(S)**

(Pub.L. 94-553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2584; Pub.L. 100-568, § 10(a), Oct. 31, 1988, 102 Stat. 2860; Pub.L. 100-667, Title II, § 202(3), Nov. 16, 1988, 102 Stat. 3957; Pub.L. 101-553, § 2(a)(1), Nov. 15, 1990, 104 Stat. 2749; Pub.L. 101-650, Title VI, § 606(a), Dec. 1, 1990, 104 Stat. 5131; Pub.L. 106-44, § 1(g)(5), Aug. 5, 1999, 113 Stat. 222; Pub.L. 106-113, Div. B, § 1000(a)(9) [Title I, §§ 1002(b), 1011(b)(3)], Nov. 29, 1999, 113 Stat. 1536, 1501A-527, 1501A-544; Pub.L. 107-273, Div. C, Title III, § 13210(4)(B), Nov. 2, 2002, 116 Stat. 1909.)

Notes of Decisions (1543)

17 U.S.C.A. § 501, 17 USCA § 501
Current through P.L. 115-45. Title 26 current through 115-46.

End of Document © 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

SPA-21

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 8

Rule 8. General Rules of Pleading

Currentness

**(a) Claim for Relief.** A pleading that states a claim for relief must contain:

**(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

**(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and

**(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

**(b) Defenses; Admissions and Denials.**

**(1) *In General.*** In responding to a pleading, a party must:

**(A)** state in short and plain terms its defenses to each claim asserted against it; and

**(B)** admit or deny the allegations asserted against it by an opposing party.

**(2) *Denials--Responding to the Substance.*** A denial must fairly respond to the substance of the allegation.

**(3) *General and Specific Denials.*** A party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds--may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

**(4) *Denying Part of an Allegation.*** A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

**(5) *Lacking Knowledge or Information.*** A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

SPA-22

(6) *Effect of Failing to Deny.* An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

**(c) Affirmative Defenses.**

(1) *In General.* In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

• accord and satisfaction;

• arbitration and award;

• assumption of risk;

• contributory negligence;

• duress;

• estoppel;

• failure of consideration;

• fraud;

• illegality;

• injury by fellow servant;

• laches;

• license;

• payment;

• release;

• res judicata;

• statute of frauds;

• statute of limitations; and

• waiver.

**(2)** *Mistaken Designation.* If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

**(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**

**(1)** *In General.* Each allegation must be simple, concise, and direct. No technical form is required.

**(2)** *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

**(3)** *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

**(e) Construing Pleadings.** Pleadings must be construed so as to do justice.

**CREDIT(S)**
   (Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007; April 28, 2010, effective December 1, 2010.)

Fed. Rules Civ. Proc. Rule 8, 28 U.S.C.A., FRCP Rule 8
Including Amendments Received Through 8-1-17

*End of Document*                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

SPA-24

United States Code Annotated
Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 9

Rule 9. Pleading Special Matters

Currentness

**(a) Capacity or Authority to Sue; Legal Existence.**

**(1)** *In General.* Except when required to show that the court has jurisdiction, a pleading need not allege:

**(A)** a party's capacity to sue or be sued;

**(B)** a party's authority to sue or be sued in a representative capacity; or

**(C)** the legal existence of an organized association of persons that is made a party.

**(2)** *Raising Those Issues.* To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

**(b) Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

**(c) Conditions Precedent.** In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

**(d) Official Document or Act.** In pleading an official document or official act, it suffices to allege that the document was legally issued or the act legally done.

**(e) Judgment.** In pleading a judgment or decision of a domestic or foreign court, a judicial or quasi-judicial tribunal, or a board or officer, it suffices to plead the judgment or decision without showing jurisdiction to render it.

**(f) Time and Place.** An allegation of time or place is material when testing the sufficiency of a pleading.

**(g) Special Damages.** If an item of special damage is claimed, it must be specifically stated.

SPA-25

**(h) Admiralty or Maritime Claim.**

**(1)** *How Designated.* If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

**(2)** *Designation for Appeal.* A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. § 1292(a)(3).

**CREDIT(S)**

(Amended February 28, 1966, effective July 1, 1966; December 4, 1967, effective July 1, 1968; March 30, 1970, effective July 1, 1970; March 2, 1987, effective August 1, 1987; April 11, 1997, effective December 1, 1997; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007.)

Fed. Rules Civ. Proc. Rule 9, 28 U.S.C.A., FRCP Rule 9
Including Amendments Received Through 8-1-17

---

End of Document      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

SPA-26

> United States Code Annotated
>     Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
>         Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 12

Rule 12. Defenses and Objections: When and How Presented; Motion for Judgment
on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 12 are displayed in two separate documents. Notes of Decisions for subdivisions I to VII are contained in this document. For Notes of Decisions for subdivisions VIII to end, see second document for 28 USCA Federal Rules of Civil Procedure Rule 12.>

**(a) Time to Serve a Responsive Pleading.**

**(1)** *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

**(A)** A defendant must serve an answer:

**(i)** within 21 days after being served with the summons and complaint; or

**(ii)** if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

**(B)** A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

**(C)** A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

**(2)** *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

**(3)** *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

SPA-27

**(4)** *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

**(A)** if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

**(B)** if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

**(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

**(1)** lack of subject-matter jurisdiction;

**(2)** lack of personal jurisdiction;

**(3)** improper venue;

**(4)** insufficient process;

**(5)** insufficient service of process;

**(6)** failure to state a claim upon which relief can be granted; and

**(7)** failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

**(c) Motion for Judgment on the Pleadings.** After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings.

**(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

**(e) Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

**(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

**(1)** on its own; or

**(2)** on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

**(g) Joining Motions.**

**(1)** *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

**(2)** *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

**(h) Waiving and Preserving Certain Defenses.**

**(1)** *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)-(5) by:

**(A)** omitting it from a motion in the circumstances described in Rule 12(g)(2); or

**(B)** failing to either:

**(i)** make it by motion under this rule; or

**(ii)** include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

**(2)** *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

**(A)** in any pleading allowed or ordered under Rule 7(a);

SPA-29

**(B)** by a motion under Rule 12(c); or

**(C)** at trial.

**(3)** *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

**(i) Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7)--whether made in a pleading or by motion--and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

**CREDIT(S)**

  (Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

Fed. Rules Civ. Proc. Rule 12, 28 U.S.C.A., FRCP Rule 12

Including Amendments Received Through 8-1-17

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

SPA-30

United States Code Annotated
    Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
        Title III. Pleadings and Motions

Federal Rules of Civil Procedure Rule 15

Rule 15. Amended and Supplemental Pleadings

Currentness

**(a) Amendments Before Trial.**

**(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

**(A)** 21 days after serving it, or

**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

**(3)** *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

**(b) Amendments During and After Trial.**

**(1)** *Based on an Objection at Trial.* If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

**(2)** *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

**(c) Relation Back of Amendments.**

SPA-31

**(1) *When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

**(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1) (B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

**(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

**(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

**(2) *Notice to the United States.*** When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

**(d) Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

**CREDIT(S)**

(Amended January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 1991, effective December 1, 1991; amended by Pub.L. 102-198, § 11, December 9, 1991, 105 Stat. 1626; amended April 22, 1993, effective December 1, 1993; April 30, 2007, effective December 1, 2007; March 26, 2009, effective December 1, 2009.)

Footnotes

1    If the proposed amendment to Rule 15(a)(3) ... changing the time period is approved by the Judicial Conference, the following additional sentence will be added to the Committee Note: "Amended Rule 15(a)(3) extends from 10 to 14 days the period to respond to an amended pleading."

Fed. Rules Civ. Proc. Rule 15, 28 U.S.C.A., FRCP Rule 15

Including Amendments Received Through 8-1-17

SPA-32

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title IV. Parties

Federal Rules of Civil Procedure Rule 19

Rule 19. Required Joinder of Parties

Currentness

**(a) Persons Required to Be Joined if Feasible.**

**(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

**(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

**(3)** *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

SPA-33

**(A)** protective provisions in the judgment;

**(B)** shaping the relief; or

**(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

**(c) Pleading the Reasons for Nonjoinder.** When asserting a claim for relief, a party must state:

**(1)** the name, if known, of any person who is required to be joined if feasible but is not joined; and

**(2)** the reasons for not joining that person.

**(d) Exception for Class Actions.** This rule is subject to Rule 23.

**CREDIT(S)**

(Amended February 28, 1966, effective July 1, 1966; March 2, 1987, effective August 1, 1987; April 30, 2007, effective December 1, 2007.)

Fed. Rules Civ. Proc. Rule 19, 28 U.S.C.A., FRCP Rule 19

Including Amendments Received Through 8-1-17

*End of Document*     © 2017 Thomson Reuters. No claim to original U.S. Government Works.