# 17-1957-cv

# United States Court of Appeals
### *for the*
## Second Circuit

MICHAEL YAMASHITA, MICHAEL YAMASHITA, INC.,

*Plaintiffs-Appellants,*

– v. –

SCHOLASTIC INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

EDWARD H. ROSENTHAL
CRAIG B. WHITNEY
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue, 10th Floor
New York, New York 10022
(212) 980-0120

*Attorneys for Defendant-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Scholastic Inc. states that Scholastic Corporation is a publicly held corporation owning 10% or more of Scholastic Inc.'s stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT .................................................................1

ISSUES PRESENTED.............................................................................2

STATEMENT OF THE CASE...................................................................2

    A.    YAMASHITA'S COMPLAINT CONTAINS NO SPECIFIC
          ALLEGATIONS OF INFRINGEMENT .............................................3

    B.    THE CASE IS TRANSFERRED TO THE SOUTHERN
          DISTRICT OF NEW YORK ...............................................................5

    C.    THE LOWER COURT DISMISSES THE CASE AS A
          "FISHING EXPEDITION" AND "AIMLESS TRAWLING"
          NOT PERMITTED BY RULE 8 ..........................................................7

    D.    YAMASHITA'S AMENDED COMPLAINT LARGELY
          REPEATS THE CONCLUSORY ALLEGATIONS...........................8

SUMMARY OF THE ARGUMENT ....................................................10

ARGUMENT .........................................................................................11

    I.    THE DISTRICT COURT APPLIED THE PROPER PLEADING
        STANDARD UNDER RULE 8 .........................................................11

    II.    YAMASHITA'S COPYRIGHT INFRINGEMENT CLAIM IS
        BASED ON PURE SPECULATION .................................................14

    III.    YAMASHITA'S ALLEGATIONS MADE "ON INFORMATION
        AND BELIEF" DO NOT CURE THE PLEADING DEFECTS........18

    IV.    THE DISTRICT COURT PROPERLY DENIED LEAVE TO
        AMEND YAMASHITA'S COPYRIGHT INFRINGEMENT
        CLAIM AFTER ANALYZING THE PROPOSED
        AMENDMENTS.................................................................................24

V.    THE DISTRICT COURT PROPERLY DENIED LEAVE TO
PLEAD COMMON LAW CLAIMS ....................................................27

    A.    The District Court Properly Denied Leave To Plead
Bailment.........................................................................27

    B.    The District Court Properly Denied Leave To Plead
Breach Of Contract .........................................................31

    C.    The District Court Properly Denied Leave To Plead
Conversion ......................................................................36

    D.    The District Court Properly Denied Leave To Plead
Accounting......................................................................38

CONCLUSION AND SUMMARY OF REQUESTED RELIEF ..........................39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ................................................................25

*AGCS Marine Ins. Co. v. Hymel & Assocs., LLC*,
No. 16 Civ. 6899, 2017 WL 2729093 (S.D.N.Y. June 22, 2017) .........................33

*Arista Records LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......................................................... *passim*

*Aronette Mfg. Co. v. Capitol Piece Dye Works, Inc.*,
6 N.Y.2d 465 (1959) ...............................................................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................ 12, 14, 23

*Baiul v. NBC Sports*,
No. 15 Civ. 9920, 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) ....................37, 38

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................... *passim*

*Command Cinema Corp. v. VCA Labs, Inc.*,
464 F. Supp. 2d 191 (S.D.N.Y. 2006) ...................................................31

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F. 2d 1242 (2d Cir. 1987) ............................................................17

*Doyle v. Mastercard Int'l Inc.*,
No. 16 Civ. 4270, 2017 WL 2874528 (2d Cir. July 6, 2017)................................35

*Dubay v. Trans-Am. Ins. Co.*,
75 A.D.2d 312 (2d Dep't 1980)............................................................31

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
499 U.S. 340 (1991)............................................................... 12, 13, 14

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
713 F. Supp. 2d 215 (S.D.N.Y. 2010) ...................................................38

*Grace v. Corbis-Sygma*,
    487 F.3d 113 (2d Cir. 2007) ...................................................................31

*ITT Corp. v. Lee*,
    663 F. App'x 80 (2d Cir. 2016) ...........................................................35

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd* 23 F.3d 398 (2d Cir. 1994) ..... 12, 13, 14, 15

*Kousnsky v. Amazon.com, Inc.*,
    631 F. App'x 22 (2d Cir. 2015) ...........................................................13

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
    23 F. Supp. 3d 344 (S.D.N.Y. 2014) ...................................................26

*Marvin E. Herman, Inc. v. White*,
    Nos. 91 Civ. 5025, 73412, 1994 WL 363980 (S.D.N.Y. July 13,
    1994) ...............................................................................................29, 30

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000) .................................................18

*Miller v. Holtzbrinck Publishers, L.L.C.*,
    377 F. App'x 72 (2d Cir. 2010) ...........................................................37

*Muench Photography, Inc. v. The McGraw-Hill Cos., Inc.*,
    No. 12 Civ. 6595, 2013 WL 5372785 (S.D.N.Y. Aug. 15, 2013).........26

*Muller Boat Works, Inc. v. Unnamed 52%2C House Barge*,
    464 F. Supp. 2d 127 (E.D.N.Y. 2006) .................................................29

*Mulvaney v. King Paint Mfg. Co.*,
    256 F. 612 (2d Cir. 1919) ...................................................................30

*Netzer v. Continuity Graphic Assocs., Inc.*,
    963 F. Supp. 1308 (S.D.N.Y. 1997) ....................................................38

*Palmer Kane LLC v. Scholastic Corp.*,
    No. 12 Civ. 3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013)......................17, 18

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014).......................................................................22, 23

iv

*Psihoyos v. John Wiley & Sons, Inc.*,
　748 F.3d 120 (2d Cir. 2014) ..................................................................22

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
　813 F. Supp. 2d 489 (S.D.N.Y. 2011) ...................................................36

*S.E.C. v. Credit Bancorp, Ltd.*,
　No. 99 Civ. 11395, 2000 WL 1752979 (S.D.N.Y. Nov. 29, 2000),
　*aff'd*, 290 F.3d 80 (2d Cir. 2002) ...........................................................30

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
　137 S. Ct. 954 (2017) .......................................................... 22, 25, 29, 34

*Sohm v. Scholastic*,
　Case No. 16 Civ. 07098 (S.D.N.Y.) ......................................................24

*Thyroff v. Nationwide Mut. Ins. Co.*,
　8 N.Y.3d 283 (2007) ..............................................................................36

*U.S. v. $79,000 in Account No. 2168050/6749900 at Bank of N.Y.*,
　No. 96 Civ. 3493, 1996 WL 648934 (S.D.N.Y. Nov. 7, 1996).............29

*Williams v. Citigroup Inc.*,
　659 F.3d 208 (2d Cir. 2011) ..................................................................25

*Young-Wolff v. McGraw-Hill Cos.*,
　No. 13 Civ. 4372, 2014 WL 349711 (S.D.N.Y. Jan. 31, 2014) ............21

**Statutes**

17 U.S.C. § 106 ............................................................................ 21, 35, 38

17 U.S.C. § 507(b) ...................................................................................22

**Other Authorities**

3-18 Milgrim on Licensing § 18.64 (2017) .............................................20

C.P.L.R § 213(2) ......................................................................................32

Federal Rule of Civil Procedure 8 ...................................................... *passim*

22A N.Y. Jur. 2d Contracts § 437...........................................................32

## PRELIMINARY STATEMENT

This appeal may appear to present a narrow question concerning the standard for pleading copyright infringement, including whether speculative and conclusory allegations of infringement are sufficient to state a claim. But the case has far greater significance, particularly given the recent epidemic of copyright claims based upon uses that date back fifteen or twenty years. At issue is whether copyright owners may choose to remain ignorant of the licensed uses of their works, fail to secure an audit right or even to ask their licensing agent for basic information about the licenses issued on their behalf, and then (taking advantage of the so-called "Discovery Rule" to attempt to avoid the statute of limitations) bring infringement suits without any factual basis for claiming that the terms of the licenses had been exceeded.

For the reasons set forth below, the District Court was right to dismiss what it characterized as Plaintiffs-Appellants Michael Yamashita and Michael Yamashita, Inc.'s (together "Yamashita") "aimless trawling." Yamashita did not allege a single specific fact to support his claim that Scholastic exceeded the terms of its licenses for Yamashita's photographs. He did not even identify the terms of the license agreements that he alleged Scholastic exceeded—claiming that he did not know them. Yamashita instead argued that Scholastic was required to defend itself against his unsupported claims and provide evidence proving that it did *not* exceed the license terms in over 100 licenses that he identified—some of which were nearly

twenty years old.  The Orders of the District Court dismissing Yamashita's claims and then denying leave to amend should be affirmed.

## ISSUES PRESENTED

1)      Whether Yamashita's Complaint, which lists, in conclusory fashion and without pleading specific facts, five ways in which Scholastic *might* have infringed Yamashita's photographs, is sufficient to state claims for copyright infringement?

2)      Whether the District Court, reviewing a proposed pleading that contained the same deficiencies as the initial Complaint, properly denied Yamashita leave to amend to reassert the same copyright claims?

3)      Whether the District Court properly denied Yamashita leave to amend his complaint to add common law causes of action that are unsupported by law and the facts alleged?

## STATEMENT OF THE CASE

Yamashita originally brought this action on June 28, 2016, accusing Scholastic of copyright infringement related to 119 licensed uses (the "Uses") of 83 photographs identified in the exhibit to the Complaint (the "Photographs").  A10-33 (the "Complaint" or "Compl.").  The earliest invoices for these licensed Uses date back to June 16, 1999—nearly eighteen years before Yamashita filed the Complaint.  A17, rows 1-4.  As of the date of filing, 77 of the invoices for the Uses (approximately 65%) were at least ten years old.  A31, rows 1-79, 105-118.

The case was originally filed in the District Court for the District of New Jersey. A10. As described below, that court transferred the case to the Southern District of New York pursuant to a mandatory venue provision. The District Court (Forrest, J.) then dismissed all but one of Yamashita's claims for failure to state any cause of action for copyright infringement. The parties settled the one remaining claim, and this appeal followed.

## A.  YAMASHITA'S COMPLAINT CONTAINS NO SPECIFIC ALLEGATIONS OF INFRINGEMENT

Appellant Michael Yamashita alleges that he is a professional photographer who resides in New Jersey. A11 (Compl. ¶ 2). Appellant Michael Yamashita, Inc. is a New Jersey corporation owned by Mr. Yamashita. A11 (Compl. ¶ 3). Appellee Scholastic is a New York corporation that is the world's largest publisher and distributor of children's books. A11 (Compl. ¶ 4).

In the Complaint, Yamashita claimed that Scholastic exceeded the scope of 119 licenses granted to Scholastic and, as a result, infringed the copyrights in the Photographs at some unspecified time in one or more of five possible ways. Yamashita provided no factual basis for his purported belief that this infringement occurred. He did not identify the way in which any of the licenses had allegedly been exceeded or when such alleged infringement had taken place. Yamashita merely pled, upon information and belief, a list of ways all of these licenses could have been exceeded, apparently at some point after they were licensed. A12 (Compl. ¶ 13

(listing five possible bases for infringement using an "and/or" connector)). Yamashita confirmed that he had no specific information on how or when—or, indeed, *if*—his Photographs had been infringed, alleging instead that "Scholastic alone knows the full extent to which it has infringed Yamashita's copyrights by making unauthorized uses of the Photographs, but it has not shared this knowledge with Yamashita." A13 (Compl. ¶ 15).

Yamashita accompanied notice of the filing of the Complaint to Scholastic with a demand that Scholastic provide information concerning his alleged photographs, "including but not limited to those images identified in the complaint" and offered to remove from the Complaint any claims based upon licenses that Scholastic confirmed it did not exceed. A200. Thus, Yamashita sought to use this litigation as a means of auditing Scholastic's use of photographs, some of which were licensed nearly twenty years ago.

The only material allegations in the Complaint based on facts rather than speculation pled on unsupported information and belief were that: (1) Yamashita owns the copyrights in the Photographs (A11 (Compl. ¶ 7)); (2) acting through the stock photo agency Corbis Corporation ("Corbis"), Yamashita sold Scholastic limited licenses to use those Photographs (A12 (Compl. ¶¶ 9-10)); and (3) that Scholastic has been sued for copyright infringement in other cases involving other photographers and other publications. A13 (Compl. ¶ 16). Yamashita did not identify the purported

limits to any license or describe how or when Scholastic may have exceeded such limits.

The specific information in the Complaint about the alleged licenses to Scholastic was included in the exhibit appended to the Complaint, which identified the invoice date and Corbis's invoice number for each of these licenses. A16-31. The Exhibit listed 119 licensed Uses, but identified only three of the Scholastic book titles that purportedly included licensed Photographs—two of which were apparently the hardcover and paperback versions of the same publication. A10-33 (Compl. ¶¶ 16, 72, 80).

## B. THE CASE IS TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK

On September 14, 2016, Scholastic moved to dismiss the Complaint for failure to meet the standards of Federal Rule of Civil Procedure 8 ("Rule 8") and/or to transfer the matter from the District of New Jersey to the Southern District of New York. A34-35. Scholastic based its motion to transfer on a series of mandatory forum selection clauses in the preferred vendor agreements (the "PVAs") between Scholastic and Yamashita's licensing agent, Corbis. A10-13, 59-100. Scholastic also argued that the Complaint failed to satisfy the requirements of Rule 8 and, in particular, failed to allege by what acts and at what time Yamashita's Photographs were allegedly infringed. A44-47. Finally, Scholastic argued that Yamashita improperly was seeking to audit Scholastic for all uses of his Photographs, despite

lacking any right to do so under the Copyright Act or any bargained-for agreement he identified. A47-48 (citing 17 U.S.C. § 106).

In opposition, Yamashita once again confirmed that he had no factual basis on which to bring any of his alleged claims, admitting that he had asked Scholastic for "accurate information about Scholastic's uses . . . of Yamashita's images, including but not limited to those images identified in the complaint . . . ." A121. Yamashita gave no indication as to whether he had queried his agent for copies of the relevant invoices (A121-122)—despite having consistently received royalty statements from Corbis showing these transactions. A160-161 ¶ 6. Yamashita did make clear his intention to audit Scholastic in discovery (A137-38), while simultaneously arguing that Scholastic was "making [things] up" by claiming that Yamashita sought an audit through this action. A135-139 ("But Yamashita's right to discovery in this infringement action does *not* depend upon a right to sue for an 'audit' under the Copyright Act.") (emphasis in original). Although Yamashita argued that, should the District Court be inclined to dismiss, he should be granted leave to amend his pleading, at no point did he attempt to replead or otherwise supplement his vague allegations. A139.

On November 29, 2016, the District of New Jersey (Chesler, J.) ordered transfer, but did not reach Scholastic's motion to dismiss. *See generally* A272-277. In so doing, Judge Chesler countered Yamashita's argument that he should not be

bound to the forum selection clauses in the PVAs because he did not have notice of them, because "[k]nowledge of the agreement between Corbis and Scholastic is thus imputed to Plaintiffs, since Plaintiffs are principals and Corbis is their agent." A275.

## C. THE LOWER COURT DISMISSES THE CASE AS A "FISHING EXPEDITION" AND "AIMLESS TRAWLING" NOT PERMITTED BY RULE 8

Upon receipt of the case, the District Court for the Southern District of New York inquired whether Scholastic intended to renew its motion to dismiss, which it would hear without further briefing. A279. Scholastic confirmed that it did, and the Court thereafter heard the motion. A280.

In the order that followed, the District Court dismissed Yamashita's Complaint in its entirety for failure to "plead facts to support its claims beyond mere speculation . . . ." as is required by Rule 8. SPA1-3 (the "Dismissal Order"). As the District Court stated, while the Complaint "speculate[d] about 'various ways' defendants might have infringed" Yamashita's copyrights, it failed to "name a single instance of infringement or allege facts to establish a timeframe for when such an infringement might have occurred." SPA2-3. It also rejected Yamashita's argument that he properly established a timeframe for the alleged infringement by claiming that it occurred after Scholastic obtained the photographs, noting that '[a]ny infringement would necessarily happen 'after' defendants accessed the copyrighted material." *Id*. The District Court concluded that "[t]he complaint contain[ed] so few factual

7

allegations it is nothing more than a fishing expedition.  Rule 8 does not permit such aimless trawling."  SPA3.  The District Court thereafter entered judgment on January 9, 2017, repeating this admonition.  A281.

## D. YAMASHITA'S AMENDED COMPLAINT LARGELY REPEATS THE CONCLUSORY ALLEGATIONS

On January 23, 2017, Yamashita sought reconsideration of the Dismissal Order and leave to file an amended complaint.  A282-283.  Yamashita did not contest the District Court's finding that the initial Complaint was a fishing expedition.  *See* A300 ("Yamashita accepts (but respectfully disagrees with) the Court's ruling regarding the sufficiency of the copyright infringement claims in the original Complaint, and does not wish to relitigate the sufficiency of the original Complaint in this motion.").  Instead, Yamashita referred to the District Court's finding that "[Yamashita does] not name a single instance of infringement or allege facts to establish a timeframe for when such infringement might have occurred" (A289 (citing Dismissal Order at 2-3)), and asked that the District Court allow him to replead the very same 119 Uses by providing additional information related to only *one*.  A293 ("Yamashita proposes to amend the copyright infringement claims to address the Court's finding that the original Complaint does 'not name a single instance of infringement or allege facts to establish a timeframe for when such an infringement might have occurred.'").

The proposed first amended complaint that Yamashita attached to his motion (the "FAC") provided no additional information whatsoever regarding 116 of the

Uses that the District Court dismissed and merely included images of 2 other licensed Uses that provided no indication that Scholastic exceeded the terms of the licenses for those Uses. *See generally* A307-429. Yamashita instead confirmed, as he did in the Complaint, that he still had no information of infringement for those 118 Uses. A312 ¶ 21 ("Scholastic alone knows the full extent to which it has infringed Yamashita's copyrights by making unauthorized uses of the Photographs, but Scholastic wrongfully has refused to share this knowledge with Yamashita…"). The lone additional fact Yamashita pled concerned only to the Use identified in row 80 of the initial Complaint (the "Row 80 Use"). Yamashita claimed that a reference to the publication associated with the Row 80 Use appeared on Scholastic's website as part of a lesson plan—with no link or other apparent way to purchase that book—after the invoice for the Row 80 Use allegedly expired. A302-303, A353-360.

In the FAC, Yamashita also sought to assert claims sounding in breach of contract based on the PVAs (A312-316 ¶¶ 25-44), bailment (A316-317 ¶¶ 45-57), and conversion, the latter two claims based on Scholastic's possession of high-resolution copies of his Photographs (A317-318 ¶¶ 58-62). Yamashita also argued that these claims entitled him to an accounting—in other words, an audit—of *all* of Scholastic's uses of his photographs. A318 ¶¶ 63-65.

In an Order dated February 28, 2017, the District Court granted leave to amend only as to the Row 80 Use, and denied leave as to all other Uses as "plaintiff has

shown not a single fact supportive of an infringement claim with regard to any of these images."  SPA4.  The District Court also denied leave to amend to add the additional common law claims, because they largely depended on generic provisions of the PVAs to which Yamashita was not a party.  SPA4.  The District Court noted that the fact that Corbis was Yamashita' agent "is not equivalent to standing in Corb[i]s's shoes in the contract for all purposes" and that the language of the PVAs contradicted certain claims.  SPA4.  It also found Yamashita's attempt to rely on generalized provisions in these agreements was insufficient to support his claims. SPA4.

The parties thereafter settled the Row 80 Use (A532-534), and this appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court properly held that, to state a copyright infringement claim, the plaintiff must plead the acts that constitute the alleged infringement and the time frame in which they took place.  Yamashita's conclusory and wholly unsupported allegations regarding the ways in which Scholastic might have infringed his copyrights fail to meet the standards set forth in Rule 8 and Supreme Court decisions interpreting that rule.  Quite simply, Yamashita did not allege a single, specific fact to support the conclusion that Scholastic infringed Yamashita's copyrights—he did not even plead the license terms that he claimed were exceeded.  Yamashita's allegation

10

that Scholastic had been sued by other photographers with respect to other photographs in other publications does not provide a basis for Yamashita's claims. And his failure to include and/or enforce an audit right in the licenses with Scholastic, or to pay attention to how his photographs were being used, do not allow him to excuse his pleading deficiencies by arguing that only Scholastic knows how it used his photographs. A plaintiff must not be allowed to bring claims based on fifteen- or twenty-year old invoices and insist that a defendant prove that it has not infringed the plaintiff's copyrights by failing to monitor the licensed uses of his copyrights and relying on pure speculation of infringement.

The District Court also properly denied Yamashita leave to replead 118 claims of copyright infringement upon review of a proposed amended complaint that pled no more facts relevant to these Uses than his original Complaint did. Finally, the District Court correctly denied Yamashita leave to amend to bring common law claims that were unsupported by relevant law and contradicted by the underlying agreements and facts on which he purported to rely.

## ARGUMENT

## I. THE DISTRICT COURT APPLIED THE PROPER PLEADING STANDARD UNDER RULE 8

Yamashita's principal argument is that the District Court improperly applied a heightened pleading standard for a copyright infringement claim. That is plainly incorrect. The District Court analyzed the sufficiency of Yamashita's complaint

11

under Rule 8 and the standards articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under this framework, Yamashita was required to plead factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As the District Court noted, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability,' it cannot survive a motion to dismiss." SPA2 (quoting *Iqbal*, 556 U.S. at 678).

The District Court also cited *Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd* 23 F.3d 398 (2d Cir. 1994), for the elements that must be pled for a valid copyright infringement claim—with the sufficiency required under Rule 8 and *Twombly*/*Iqbal*. *Kelly*, which requires that a plaintiff allege, "*inter alia*, by what acts during what time the defendant infringed the copyright" (145 F.R.D. at 36), remains good law in this Circuit. Contrary to Yamashita's argument, is not at odds with *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340 (1991). In *Feist*, the Supreme Court articulated two elements that must be *proven* to establish copyright infringement: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361. *Feist* made no mention of applicable pleading requirements (indeed, the underlying case was decided at the summary judgment stage) and has little direct applicability to the sufficiency of Yamashita's Complaint. There is no dispute that Yamashita ultimately

must prove copyright ownership and unauthorized reproduction (or other protected right) to prevail on a copyright infringement claim. But, at the pleading stage, Yamashita must plead facts to show that he could plausibly make such a claim.

*Kelly*—decided and affirmed after *Feist*—articulated the *types of facts* that must be pled. Contrary to Yamashita's contention, the elements discussed in *Kelly* are neither outdated nor rejected by this Court. Rather, this Court recently reaffirmed the holding in *Kelly* in *Kousnsky v. Amazon.com, Inc.*, 631 F. App'x 22 (2d Cir. 2015), a case with a defective complaint similar to Yamashita's. In *Kousnsky*, the plaintiff alleged, among other things, that the defendant exceeded the scope of the license to use plaintiff's copyrighted work. The Court affirmed the dismissal because the complaint "did not articulate how or when" defendant committed the acts that plaintiff alleged to be beyond the scope of the license. *Id.* at 25.

Ignoring the District Court's plain application of the proper pleading standard, Yamashita relies heavily on *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), for the proposition that there is no heightened pleading requirement for copyright infringement claims. But this is the proverbial straw-man argument because neither the District Court nor Scholastic has stated otherwise. *Arista* applied the pleading standards of *Twombly*, *Iqbal*, and Rule 8—just as both the *Kelly* court and District Court did. *Arista* did not purport to overrule or contradict *Kelly*, or to address the elements necessary to plead a copyright infringement claim.

13

Even without citation to or reliance on *Kelly*, under Yamashita's own argument, he would have had to allege plausibly that Scholastic copied his copyrighted work (presumably without permission) to state a claim under *Feist*. Brief and Special Appendix for Plaintiffs-Appellants, Dkt No. 26, dated Aug. 28, 2017 (the "Brief" or "Br.") at 1. The District Court's decision would still apply under Yamashita's articulation of the pleading requirements. As discussed below, Yamashita "do[es] not name a single instance of infringement" in the Complaint and therefore cannot plausibly allege that Scholastic copied Yamashita's work or otherwise violated one of his rights as a copyright owner. SPA2. Under any formulation of the well-established elements of a copyright infringement claim, therefore, Yamashita's Complaint falls short of the required pleading standard.

## II. YAMASHITA'S COPYRIGHT INFRINGEMENT CLAIM IS BASED ON PURE SPECULATION

The District Court correctly held that Yamashita did not meet the applicable pleading standard. Yamashita—by his own admission—lacked knowledge that Scholastic infringed any of his copyrighted works. He expressed no justification for his purported belief that Scholastic "exceeded the licenses and infringed Yamashita's copyrights" in any of the "various ways" listed in the Complaint. A12 (Compl. ¶ 13). Without any articulation of why he believed Scholastic committed the acts listed in the Complaint—indeed, he conceded that he had no reason to know that these acts were committed because that information allegedly lies solely within Scholastic's

14

control (A13 (Compl. ¶¶ 14-15))—Yamashita's allegations of infringement were pure speculation. This is precisely what the Supreme Court deemed insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555.

It is clear that Yamashita failed to allege facts showing "by what acts during what time" Scholastic purportedly infringed Yamashita's copyrights, as required by *Kelly*. 145 F.R.D. at 36. But this Court need not reaffirm yet again the elements set forth in *Kelly* to uphold the District Court's decision. Whatever facts need to be pled to state a claim for copyright infringement, Yamashita has not done so. Yamashita brought an action for copyright infringement without any knowledge or plausible reason to believe that Scholastic committed the acts alleged.

The only concrete fact that Yamashita alleged for believing that Scholastic exceeded the scope of its licenses was that Scholastic had been sued in the past for such conduct (almost always by Yamashita's counsel, incidentally). A13 (Compl. ¶ 16). Simply because other photographers accused Scholastic of exceeding the scope of their respective license agreements provides no sufficient basis for accusing Scholastic of doing so here. Tellingly, Yamashita did not plead that any court had found that Scholastic exceeded any copyright license in any of the cases listed in the Complaint. Nor did Yamashita allege that his photographs appeared in any of the publications at issue in those other cases. The basis for his claim thus essentially amounted to, for all intents and purposes, the argument that "other photographers

15

sued Scholastic for exceeding their license terms, so why shouldn't I?"  But, as the

District Court recognized, "Rule 8 'asks for more than a sheer possibility that

defendant acted unlawfully.  Where a complaint pleads facts that are merely

consistent with a defendant's liability,' it cannot survive a motion to dismiss."  SPA2

(quoting *Iqbal*, 556 U.S. at 678).

Again, *Arista* does not save Yamashita here.  In finding the cause of action

sufficiently stated in that case, *Arista* recognized that the allegations in the

complaint's exhibit A "could hardly be more specific."  604 F.3d at 122.  The *Arista*

complaint specified the exact time, location, method, and works infringed.

Yamashita's Complaint offered none of that information.  The exhibit to the

Complaint instead listed the licenses that *allowed* Scholastic to use the works at

issue—which is the opposite of infringement.  Yamashita did not even identify the

terms of those licenses, which is information that was undoubtedly in the possession

of Corbis, Yamashita's licensing agent.  Nor did the Complaint include a single

specific allegation of how or when or in what actual way Scholastic used any of the

works it licensed from Yamashita beyond the scope of those licenses.  The Complaint

merely provided a list of ways that Scholastic *could* have done so.

Yamashita's brief cites to a handful of district court cases for the proposition

that other courts have permitted similar generalized allegations.  To the extent that

these cases support that proposition (many do not), they are district court cases, often

16

from other jurisdictions—and none decided by this Court.[1]  In fact, Yamashita cites a

case from the Southern District of New York, *Palmer Kane LLC v. Scholastic Corp.*,

No. 12 Civ. 3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013), for the statement that

"the complaint need not specify which copyright is infringed by which act."  (Brief at

43 n.137 (quoting *Palmer Kane*, 2013 WL 709276, at *3)).  But, Yamashita

neglected to include the entire sentence.  The court actually stated: "While the

complaint need not specify which copyright is infringed by which act, *the complaint

needs to contain some factual allegations to narrow the infringing acts beyond broad

conclusory statements of infringement*."  *Palmer Kane*, 2013 WL 709276, at *3

(citations omitted) (emphasis added).  The *Palmer Kane* court dismissed the

complaint for failing to properly allege the acts that constitute infringement

because—like Yamashita's Complaint—the pleading contained "several broad

assertions that Scholastic 'exceeded the licenses it obtained to use Plaintiff's images,

reused Plaintiffs works without a license' and used the images 'without permission'

or 'prior to obtaining permission.'"  *Id.*  And like Yamashita's Complaint, the *Palmer*

---

[1] Other than *Arista*, the only Second Circuit decision cited by Yamashita in defense of his insufficient pleading is *DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F. 2d 1242 (2d Cir. 1987).  *DiVittorio*, however, was examining a fraud claim under Rule 9(b) and held that, under the limited exception where a plaintiff may plead fraud upon information and belief, "the allegations must be accompanied by a statement of the facts upon which the belief is based."  *Id.* at 1247.  No such statement accompanied Yamashita's allegations made on information and belief, as discussed below.

*Kane* complaint was also deficient for failing to specify a time period of infringement. *Id.*; *see also Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000) ("plaintiff's unadorned allegation in paragraph nine that defendants have published the [] photograph 'beyond the scope . . . of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss").

Accordingly, the District Court properly held that Yamashita failed to allege facts sufficient to state a claim for relief.

## III. YAMASHITA'S ALLEGATIONS MADE "ON INFORMATION AND BELIEF" DO NOT CURE THE PLEADING DEFECTS

Effectively acknowledging that he lacks knowledge of sufficient facts to support his claim, Yamashita argues that he is entitled to plead his infringement claims "on information and belief" under *Arista* and *Twombly*. The District Court, however, did not dismiss Yamashita's claims solely because they were alleged on "information and belief." The District Court accepted the facts alleged as true and stated:

> The complaint speculates about "various ways" defendants might have infringed, but admits that the allegedly infringing publications "have not yet been identified," that "Scholastic alone knows of these wholly unauthorized uses," and that "Scholastic alone knows the full extent to which it has infringed [plaintiffs'] copyrights[.]" Plaintiffs do not name a single instance of infringement or allege facts to establish a timeframe for when such an infringement might have occurred. Instead, they cast out five possible ways defendants could have infringed some time "after" defendants obtained the photographs. This is wholly insufficient

18

to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

SPA2-3 (citing *Twombly*, 550 U.S. at 555).

Although a plaintiff may make certain allegations "on information and belief," that does not excuse the requirement that Yamashita plead "factual allegations . . . above the speculative level." *Twombly*, 550 U.S. at 555. In *Arista*, the plaintiffs pled the type of factual support that Yamashita's Complaint lacked. In particular, the *Arista* court noted that, "[t]o the extent that [paragraph 22 of the complaint's] allegations are made on information and belief, *virtually all of them are supported by factual assertions in Exhibit A*." *Arista*, 604 F.3d at 121 (emphasis added). The *Arista* Court then proceeded to discuss the detailed factual bases supporting the allegations of infringement made "on information and belief"—precisely what was missing from Yamashita's Complaint. Only one assertion in *Arista* made on "information and belief" lacked factual support, which was that the defendant acted without plaintiff's permission. The Court excused the lack of support in that instance because "no more definitive assertion as to lack of permission seems possible when the users remain anonymous." *Id.*

Here, Yamashita pled none of the detail contained in the *Arista* complaint. As discussed above, there were no factual assertions supporting the laundry list of possible ways that Scholastic "on information and belief . . . exceeded the licenses and infringed Yamashita's copyrights in the Photographs." A12 (Compl. ¶ 13).

Yamashita's excuse for not including the requisite factual basis is that "Scholastic keeps confidential and refuses to disclose many of the details it says are missing from the complaint, including its print runs . . . and its geographic distributions."  Br. at 32-33.  Or, as stated in the Complaint: "Scholastic alone knows of these wholly unauthorized uses" and "Scholastic alone knows the full extent to which it has infringed Yamashita's copyrights."  A13 (Compl. ¶¶ 14-15).

But, Yamashita cannot cloak himself in ignorance and avoid the pleading requirements of the Federal Rules of Civil Procedure by claiming Scholastic—like essentially all businesses—keeps the details of its business operations confidential.  This is particularly true given that Yamashita could have learned the missing facts.  Yamashita, through Corbis, voluntarily licensed his works to Scholastic to allow Scholastic to use Yamashita's Photographs in certain publications.  Such license agreements typically contain audit provisions to allow the licensor to monitor compliance with the license terms.  *See* 3-18 Milgrim on Licensing § 18.64 (2017) ("One of the most common provisions of a license agreement is a provision giving the licensor the right to verify or otherwise confirm running royalty reports (or other promised performance) of the license.").  Yamashita, however, chose not to require that Corbis include and/or enforce audit rights in those licenses.  Nor did Yamashita apparently ever ask Corbis to provide information regarding Scholastic's uses, despite receiving regular royalty statements indicating the sales Corbis made to

Scholastic. A160-161 ¶ 6. Yamashita did not even plead the terms of the licenses granted to Scholastic—a fact clearly within his or his agent's control. Yamashita cannot possibly allege that Scholastic exceeded the terms of the licenses when he is not aware of them. The facts of this case, therefore, are quite different from those in the limited instances where a plaintiff is given leniency for failing to plead sufficient facts because the facts were hidden by the defendant.

Forgoing any contractual audit right, Yamashita instead sought to use this lawsuit and his factually insufficient complaint to audit Scholastic's records to determine if he had any claim against Scholastic. But, the Copyright Act does not grant copyright owners a statutory right to audit supposed uses of their works. *See* 17 U.S.C. § 106 (identifying the exclusive rights of copyright owners, which does not include an audit right); *see also Young-Wolff v. McGraw-Hill Cos.*, No. 13 Civ. 4372, 2014 WL 349711, at *6-8 (S.D.N.Y. Jan. 31, 2014) ("Plaintiff points to neither case law nor language in the Copyright Act[] indicating that a copyright owner has an inherent right to sue a licensee for an audit."). Were such a right to exist under the Copyright Act, it would render superfluous all contractual audit rights that copyright holders and licensees bargain for on a regular basis.

Yamashita's decision not to bargain for any audit right creates problems beyond the applicable pleading standard. By choosing to remain ignorant of Scholastic's licensed use of his copyrighted works, Yamashita must also attempt to

avoid the application of the Copyright Act's three-year limitations period by invoking the "discovery rule." *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued."); *Psihoyos v. John Wiley & Sons, Inc*., 748 F.3d 120, 124 (2d Cir. 2014) (applying "discovery rule"). Under the discovery rule, a copyright infringement claim does not accrue until the copyright holder discovers, or with due diligence should have discovered, the infringement. *See Psihoyos*, 748 F.3d at 124. Here, Yamashita pleads his ignorance, seeking to rely on it not only to bring an unsupported claim, but to extend his claims back to the date they were licensed—nearly twenty years ago.

Scholastic disputes that the discovery rule is the applicable standard for statute of limitations purposes.[2] Nevertheless, at the pleading stage, Yamashita should not be able to take advantage of the lax enforcement of his rights, plead without specific facts and with the hope of acquiring those facts through an audit in discovery, and then expand that audit over eighteen years by relying on the discovery rule. The pleading standard and statute of limitations are, in essence, linked here. If a plaintiff

---

[2] Indeed, in two recent decisions, the Supreme Court went out of its way to cast doubt on its applicability. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014) ("Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, *and only three years* of its occurrence.") (emphasis added); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 961-62 (2017) (same). The *Petrella* decision specifically noted that the Supreme Court "ha[s] not passed on the question" of whether the discovery rule is applicable. 134 S. Ct. at 1969 n.4.

can bring a timely suit without pleading facts supporting his infringement allegations, because he allegedly does not know them, he could do so 50 years later, extending the statute of limitations to seek recovery back through this entire 50-year period. This would be an absurd result and an unintended windfall to the plaintiff.[3]

Rule 8 nevertheless prevents Yamashita's effort to avoid the impact of his lack of diligence. *See Iqbal*, 556 U.S. at 678-79 (Although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). The District Court properly recognized Yamashita's Complaint for what it was: "nothing more than a fishing expedition" and "aimless trawling." SPA3.[4] Yamashita had no legitimate reason to believe that Scholastic exceeded the

---

[3] Yamashita repeatedly argues that Scholastic is engaging in the "perfect crime" because Scholastic maintains the confidentiality of its business records. Br. at 3, 13. Yamashita, however, disregards that he: (a) accepted payment from Scholastic in exchange for a license; (b) chose not to include or enforce any audit provision in the license; (c) waited years—well beyond the applicable limitations period—before suing Scholastic for copyright infringement without any sufficient factual basis to believe that Scholastic exceeded the terms of the license (but after the information regarding Scholastic's use of the licensed works became stale); and (d) argued that he needed no factual basis and is not barred by the statute of limitations because Scholastic alone has the requisite usage information.

[4] Tellingly, Yamashita's only response to the District Court's conclusion that Yamashita was engaging in a fishing expedition is a citation to another case brought against Scholastic by Yamashita's counsel, *Sohm v. Scholastic*, Case No. 16 Civ. 07098 (S.D.N.Y.). Br. at 50. Yamashita cites to a summary judgment motion filed (and not yet decided) by the plaintiff in that case, in which the plaintiff argued that Scholastic exceeded its licenses with that plaintiff. Yamashita does not claim that any of the publications at issue in that case relate to the publications at issue in this

license terms and infringed Yamashita's copyrights; indeed, he did not even endeavor to determine what those limits were. The Complaint was merely a series of conclusory statements that did not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, the District Court's order dismissing Yamashita's Complaint should be affirmed.

## IV. THE DISTRICT COURT PROPERLY DENIED LEAVE TO AMEND YAMASHITA'S COPYRIGHT INFRINGEMENT CLAIM AFTER ANALYZING THE PROPOSED AMENDMENTS

The District Court reviewed Yamashita's proposed amended complaint and properly determined that the FAC did not cure the Complaint's copyright infringement pleading defects with respect to all but one image. The District Court therefore granted Yamashita's motion to amend with regard to that image and denied the motion for the remaining images because Yamashita had not alleged "a single fact supportive of any infringement claim with regard to any of those images." SPA4.

A review of the FAC could lead to no other possible result—there are no additional facts alleged to support an infringement claim, as the District Court correctly observed. Yamashita makes three arguments as to why the District Court

---

case, however, nor does he claim that Scholastic was found to have exceeded any of the license terms in that case.

erred in denying Yamashita's proposed amendment; a review of each of these arguments confirms the propriety of the District Court's decision.[5]

*First*, Yamashita argues that the FAC alleged that the information regarding Scholastic's use of his Photographs is within Scholastic's possession, thereby excusing Yamashita's failure to plead facts supporting his claims of infringement. Br. at 55. But this allegation was in the original Complaint and did not excuse Yamashita's pleading deficiencies for the reasons discussed above.

*Second*, the FAC included exhibits (A337-349) showing Scholastic's use of three Photographs, corresponding to the licenses identified in rows 10, 80, and 85 of Exhibit 1. A310 ¶ 15; A337-349. These exhibits, however, do nothing but confirm that Scholastic used the Photographs within the terms of the licenses identified in rows 10, 80, and 85. They provide no indication that Scholastic infringed any of Yamashita's copyrights. The District Court allowed the copyright infringement claim to proceed only with regard to the image identified in row 80 because

---

[5] Relying on cases where the district court denied leave to replead without consideration of the proposed amendments, Yamashita argues that the "liberal spirit of Rule 15" favors allowing the amendment. Br. at 54. "Leave to amend need not be granted, however, where the proposed amendment would be 'futil[e].'" *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alteration in original); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (same). Because the District Court denied leave based on futility, which Yamashita expressly acknowledges (Br. at 53), Yamashita's argument regarding the applicability of Rule 15 here is inapposite.

Yamashita separately alleged facts in Paragraph 16 and Exhibit 6 supporting the argument that Scholastic continued to promote the sale of the publication containing that image past the expiration of the license.  A310-311¶ 16; A353-360.  Yamashita made no such factual allegation—however minimal—for any of the other licensed Uses.

*Third*, Yamashita argues that the inclusion of "additional details about uses of three images in three publications provides support for *all* the claims."  Br. at 56 (emphasis in original).  The logic of this argument plainly is flawed, particularly given that the additional details regarding the three images (Exhibits 2-4) did not even provide support for infringement claims related to *those* images.  And the two district court cases cited by Yamashita in support are merely two infringement suits brought by Yamashita's counsel where the district court improperly allowed a similarly deficient pleading to survive.  *See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344 (S.D.N.Y. 2014); *Muench Photography, Inc. v. The McGraw-Hill Cos., Inc.*, No. 12 Civ. 6595, 2013 WL 5372785 (S.D.N.Y. Aug. 15, 2013).

Accordingly, the District Court properly denied Yamashita's motion for leave to amend with respect to the insufficiently pled copyright infringement claims related to the 118 remaining uses.

## V.    THE DISTRICT COURT PROPERLY DENIED LEAVE TO PLEAD COMMON LAW CLAIMS

Lacking any right to an audit under the Copyright Act, Yamashita attempted to create one through common law. As the District Court held, however, these ill-fitting claims, which sound in bailment, breach of contract, and conversion, were contradicted by the underlying facts. The District Court therefore rightly denied leave to amend.

### A.    The District Court Properly Denied Leave To Plead Bailment

Yamashita's main argument with respect to the common law claims is that Corbis's delivery of "a high-resolution copy of each of the Photographs" created a bailment, and any use outside what was permitted by the "PVAs and Corbis Invoices" required Scholastic to account. Br. at 57-58.

On appeal, Yamashita faults the District Court for tying the bailment claim to the PVAs between Yamashita's agent, Corbis, and Scholastic. *Id.* at 59-60. But, that is precisely how Yamashita pled this claim in the FAC. *See* A316 (FAC ¶ 49 (alleging that Scholastic promised, pursuant to the PVAs, to "(a) return the Bailed Property once the purpose of the bailment was fulfilled or Yamashita requested the Bailed Property back, or (b) otherwise deal with the Bailed Property as Yamashita instructed"); A317 (FAC ¶ 51 (alleging that "Scholastic's rights to use the Bailed Property were limited as provided in the PVAs and Corbis Invoices")); A317 (FAC ¶

27

55 (alleging an entitlement to have the Photographs returned under the "PVAs and Corbis Invoices")).

As the District Court rightly observed, the PVAs do not support Yamashita's theory. The 2001 PVA clearly states that the agreement does not create a bailment. SPA4 (citing A64 ¶ 5 ("This Agreement is not considered a bailment and is specifically conditioned upon the Client returning all materials to Corbis in the same, undamaged condition as delivered.")). The other PVAs suggest a similar conclusion, proscribing and limiting the manner in which Scholastic may use the Photograph copies and requiring deletion rather than return, as would be expected with a bailment. *See* A74[6] (requiring Scholastic to "limit access to the [Photographs] to those having a bona-fide need to facilitate production or creation of any licensed use"; "agree to cease use of all [Photographs] and delete/destroy any digital copies within fifteen (15) days"; and "agree not to store or maintain any archive of any [Photograph] in any format or medium unless your invoice with Corbis permits re-use . . .[.]").[7] This too is contrary to a bailment, where the bailor "transfers control

---

[6] The 2008 and 2011 PVAs contain nearly identical provisions. A87 ¶ 17; A98 ¶ 17.

[7] Yamashita also complains that the District Court erred in noting, as an aside, that these common law claims may require the joinder of Corbis. Br. at 60-63. This was merely dicta. The District Court did not dismiss pursuant to 12(b)(7), rather it suggested, as Yamashita recognizes, that the claim might require joinder. Br. at 61 ("And Judge Forrest did not explain any sound basis for her *sua sponte*—and erroneous—suggestion that joining Corbis as a party 'might' be required.").

28

and possession" (*see Marvin E. Herman, Inc. v. White*, Nos. 91 Civ. 5025, 73412,

1994 WL 363980, at *2 (S.D.N.Y. July 13, 1994)) and includes an expectation that

the bailed property be returned. *See Muller Boat Works, Inc. v. Unnamed 52%2C*

*House Barge*, 464 F. Supp. 2d 127, 147 (E.D.N.Y. 2006) (citing *Goudy & Stevens,*

*Inc. v. Cable Marine, Inc.*, 924 F.2d 16, 18 (1st Cir. 1991)) ("A bailment is 'the

delivery of goods by their owner to another for a specific purpose, and the acceptance

of those goods by the other, with the express or implied promise that the goods will

be *returned* after the purpose of the delivery has been fulfilled.'") (emphasis added).

Yamashita attempts to ignore these provisions in the PVAs, suggesting that his

bailment theory does not depend on the existence of a written contract. Br. at 59-60.

This argument fails for two reasons. *First,* "[a] bailment is a contractual arrangement

and, as in any contract, both parties must assent to the relationship." *U.S. v. $79,000*

*in Account No. 2168050/6749900 at Bank of N.Y.*, No. 96 Civ. 3493, 1996 WL

648934, at *5 (S.D.N.Y. Nov. 7, 1996) (citing *Rich v. Touche Ross & Co.*, 415 F.

Supp. 95, 99 n.2 (S.D.N.Y. 1976)).  In other words, even absent a written contract,

there must be assent, and that assent was lacking here.  Rather, as noted above, the

terms of the PVAs contradict this theory, indicating that neither Corbis nor Scholastic

intended a bailment.  SPA4 (citing A64 ¶ 5 ("This Agreement is not considered a

bailment and is specifically conditioned upon the Client returning all materials to

Corbis in the same, undamaged condition as delivered.")).[8] This defeats the bailment

claim. *See S.E.C. v. Credit Bancorp, Ltd.,* No. 99 Civ. 11395, 2000 WL 1752979, at

*26 (S.D.N.Y. Nov. 29, 2000), *aff'd*, 290 F.3d 80 (2d Cir. 2002) (provisions of

contract between parties that were "inconsistent with the law of bailments" defeated

claim).

*Second*, even looking past the PVAs, Yamashita cannot properly plead

bailment because Scholastic never had exclusive possession or control over the

Photographs and only ever obtained "a high-resolution copy." A316 (FAC ¶ 47).

Exclusive possession or control is an essential element of bailment. *See Mulvaney v.*

*King Paint Mfg. Co.*, 256 F. 612, 614 (2d Cir. 1919) (where corporation

"had exclusive possession" of property at issue, it could "therefore be held as

the bailee subject to the liability thus imposed"); *Aronette Mfg. Co. v. Capitol Piece*

*Dye Works, Inc.,* 6 N.Y.2d 465, 469 (1959) ("well-settled rule in the law of

bailments" assumes that the "bailee [] had the goods exclusively under his control");

*see also Dubay v. Trans-Am. Ins. Co.*, 75 A.D.2d 312, 317 (2d Dep't 1980) ("It is the

---

[8] Yamashita claims that "the parties can contract in such a manner as to enlarge or reduce the bailee's responsibility to the bailor." Br. at 66 (citing *Marvin E. Herman, Inc.*, 1994 WL 363980, at *2). Be that as it may, as indicated above, Yamashita points to nothing in the PVAs that suggests the parties intended a bailment, let alone enlarged duties and, unlike *Marvin E. Herman, Inc.*(*see id.,* 1994 WL 363980, at *2), there was no bailment contract between Scholastic and Corbis.

transfer of absolute control and possession of property at an agreed price which differentiates a lease from other arrangements dealing with property rights.").

The cases Yamashita cites, which involved master or submaster copies of physical objects, do not suggest otherwise. *See*, *e.g.*, *Grace v. Corbis-Sygma*, 487 F.3d 113, 116 (2d Cir. 2007) (where photographer entrusted originals of his photographs to his agent, for licensing purposes, the existence of a bailment relationship was not contested); *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 196 (S.D.N.Y. 2006) (bailor obtained unique "sub master" tapes which the contract explicitly provided "[we]re the property of [the bailee], and [we]re to be returned to [the bailee] upon request, along with any and all of [the bailee's] other material"). They are also particularly inapplicable to electronic copies, as the sending of an electronic file actually *creates* an additional copy and leaves the original in the possession of the sender rather than divesting the owner of possession. Indeed, extension of Yamashita's bailment theory to electronic copies—which, unlike *Sleeping Hermaphrodite* or *The Burghers of Calais*, may be duplicated either by the very fact of sending or otherwise with little effort—would make little sense, and would create a bailment of every email or file transfer even though the sender retained the ability to use the original as desired.

**B.    The District Court Properly Denied Leave To Plead Breach Of Contract**

31

Yamashita also asserts that leave to plead a breach of contract claim should have been granted, arguing that he has standing to enforce the PVAs (Br. at 63-65) and that certain provisions in the PVAs—which do not include any explicit accounting right—entitle him to an audit. *Id.* at 68-70. Both arguments fail.

The District Court correctly observed that Yamashita was "not a party" to the series of contracts on which this claim was based, and that Yamashita cannot "stand[] in Corb[i]s's shoes in the contract for all purposes." SPA4. Yamashita blithely asserts that Judge Chesler's determination that Yamashita was bound to the forum selection clauses in the PVAs is equivalent to grant standing to enforce all provisions of the PVAs. Br. at 63-65. This is incorrect.[9]

A non-signatory to a contract does not have standing to enforce a contract under an agency theory merely because the signatory is its agent generally, but only where its agent has entered into *the specific contract at issue* as the non-signatory's agent. *See* 22A N.Y. Jur. 2d Contracts § 437 (standing is appropriate where "the other party to the contract executed it as agent for the plaintiff"). The narrow holding of the Transfer Order stated that *notice* of the PVAs' forum selection clauses was imputed on Yamashita by virtue of the existence of a principal/agency relationship

---

[9] If Yamashita does have contract claims against Scholastic, his claims would be limited to those that accrued within the six-year statute of limitations for such a claim in New York, C.P.L.R § 213(2). Moreover, his damages would be limited to the amounts agreed to for particular uses in the PVAs. A60-100.

between Corbis and Yamashita.  A275.  It is silent on whether Corbis was

Yamashita's agent at the time it entered into the PVAs, nor does it speak to whether

Corbis, which necessarily represented many photographers in addition to Yamashita

and licensed their photographs to Scholastic pursuant to the PVAs, executed the

PVAs in its capacity as Yamashita's agent.  *See AGCS Marine Ins. Co. v. Hymel &*

*Assocs., LLC*, No. 16 Civ. 6899, 2017 WL 2729093, at *5 (S.D.N.Y. June 22, 2017)

(non-signatory who was registered agent for signatory could not enforce contract

where there was no indication in contract that it was signed on behalf of principal).

Indeed, as Judge Forrest correctly observed, it is instead clear that: (1) Corbis, which

obviously represented photographers other than Yamashita, "had itself a more

involved arrangement with Scholastic" (SPA4); and (2) Yamashita was not

mentioned anywhere in the PVAs, which purported to involve the "understanding

between [Corbis] and [Scholastic] with respect to future licensing by Scholastic of

images from the Corbis collection . . . ."  *See generally* A59-100.

Putting aside the lack of standing to enforce the PVAs, Yamashita has

attempted to assert a breach of an accounting provision that does not exist in the

PVAs.  The District Court recognized as much, holding that the "generic PVAs"

Yamashita cited did not support his common law claims.  SPA4.  On appeal,

Yamashita again attempts to twist the PVAs, citing two provisions, neither of which

entitle Yamashita to an accounting.

33

*First*, Yamashita claims that provisions in the 2001, 2008 and 2011 PVAs requiring Scholastic to furnish copies of publications containing the Photographs upon Corbis's request is equivalent to an audit, giving Yamashita the right to information on topics including how many copies of these publications were printed and where they were disseminated. A311 (FAC ¶ 18 (listing five ways in which the Photographs might have been infringed)). That is not the case. Even if Scholastic were required to give Yamashita copies of publications, the publications themselves would not include the type of information sought by Yamashita in the FAC or contain facts sufficient to form a basis as to whether Scholastic infringed Yamashita's copyrights.[10] Yamashita also failed to allege that Scholastic had not already provided copies of the publications to Corbis, as the District Court recognized. SPA4.

*Second*, Yamashita's FAC cited to a provision in the 2008 and 2011 PVAs that states that Scholastic "*may, as set forth in the applicable Invoice*, include an obligation to pay Corbis a use based royalty and to submit to an accounting or other records verifying [Scholastic's] use of the Content." A87 ¶ 12; A98 ¶ 12 (emphasis added). But, Yamashita did not identify a single invoice that included this confirming provision or even plead that any invoices said as much, and the one invoice Yamashita did include as an exhibit to the FAC did not include these terms. A350-352. Yamashita cannot enforce a right he does not have. *See ITT Corp. v. Lee*,

---

[10] Yamashita also did not indicate which invoices were licensed under which PVAs.

663 F. App'x 80, 83-84 (2d Cir. 2016) (summary order) (affirming dismissal of claim that defendant breached its obligation under a contract because "no such individual obligations exist under the contract"); *Doyle v. Mastercard Int'l Inc.*, No. 16 Civ. 4270, 2017 WL 2874528, at *1 (2d Cir. July 6, 2017) (summary order) (affirming dismissal of breach of contract claim where plaintiff failed to allege specific terms of a contract violated by the defendant).

Yamashita argues that "it is unreasonable to suggest Scholastic had no duty to account for its uses" when it received a limited license. Br. at 69. But, again, Yamashita presumes an audit right either under the Copyright Act—and there is none (*see* 17 U.S.C. § 106)—or as a necessary result of a limited license. These are bargained for rights, and Yamashita declined to do so. Nor are the PVAs ambiguous. Br. at 68-70. Rather, they clearly limit any accounting right to instances where it is outlined in the invoice. A87 ¶ 12; A98 ¶ 12. This provision only enforces the conclusion that the parties knew what it meant to include an accounting right, and chose to limit it to situations that are not applicable here.

## C.     The District Court Properly Denied Leave To Plead Conversion

Yamashita argues that it was error for the District Court to deny him leave to plead conversion because: (1) exclusive possession is not required for conversion (Br. at 71-73); and (2) the claim was not preempted by the Copyright Act because Yamashita sought an accounting rather than damages. *Id.* at 73-74. Both arguments fail.

Yamashita claims to have properly pled conversion because "the [FAC] alleges Scholastic's exclusive control of the particular high-resolution copies at issue . . .," comparing Yamashita's Photographs to *Sleeping Hermaphrodite* and *The Burghers of Calais*. Br. at 71-73. This argument misses the point. Because the property at issue here is an electronic copy, Yamashita must demonstrate that Scholastic exercised unauthorized dominion over the Photographs *to the exclusion of Yamashita*. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,* 813 F. Supp. 2d 489, 536 (S.D.N.Y. 2011) (dismissing conversion claim where defendant only possessed copy of client list, while plaintiff remained able to access list); *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 288-89 (2007) (an action for conversion requires "the unauthorized assumption and exercise of the right of ownership over goods belonging to another *to the exclusion of the owner's rights*") (emphasis added). This makes logical sense. As with bailment, to hold otherwise would mean that each

time an individual sent an email or shared a file, that email could be "converted" although the sender retained his or her own copy and was free to use it.

Yamashita further argues that the Copyright Act does not preempt the conversion claim because Yamashita seeks an accounting rather than damages.  Br. at 73-74.  But, it is immaterial how Yamashita couched the claim.  Where, as here, "'unauthorized publication is the gravamen of [plaintiff's] claim, then it is clear that the right [she] seek[s] to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act' and thus that state law claim is preempted." *Miller v. Holtzbrinck Publishers, L.L.C.*, 377 F. App'x 72, 73-74 (2d Cir. 2010) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 359, 105 S.Ct. 1996 (1985) (holding that plaintiff's claims of tortious interference and conversion were preempted by the Copyright Act)).  *See also Baiul v. NBC Sports*, No. 15 Civ. 9920, 2016 WL 1587250, at *9 (S.D.N.Y. Apr. 19, 2016), *aff'd sub nom. Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, No. 16 Civ. 1616, 2017 WL 3911576 (2d Cir. Sept. 7, 2017) ("The Second Circuit has held that a conversion claim is coextensive with and preempted by the Copyright Act where based on the unauthorized publication of a work[.]").  Thus, the District Court properly denied leave to plead the conversion claim.

### D.    The District Court Properly Denied Leave To Plead Accounting

The District Court properly denied leave to plead an accounting.  Yamashita's alleged right to an accounting was based on "the terms of the PVAs and/or the law of bailment."  A318 (FAC ¶ 64).  In other words, it was dependent on Yamashita's other claims, which the District Court properly dismissed.

On appeal, Yamashita does not support his accounting claim separately, but argues only that it should not be preempted under the Copyright Act because "[i]t has always been Scholastic's position that an accounting (or what Scholastic calls an 'audit') is *not* available under the Copyright Act."  Br. at 74 (emphasis in original).  But, Yamashita sought an accounting not as a right, but as a remedy to Scholastic's alleged use outside the bailment.  A317 (FAC ¶ 57); Br. at 74 (charging Scholastic with "refusing to account for Scholastic's uses of [the Photographs] under the law of bailment").  While not a right in Section 106 of the Copyright Act that attaches to copyright ownership, an accounting remedy is nevertheless available under Section 504(b) once a copyright owner has proven infringement.  Courts have thus found the claim preempted by the Copyright Act.  *See Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 233 (S.D.N.Y. 2010) ("accounting claims based primarily on copyright infringement do not satisfy the 'extra element' test and are preempted"); *Baiul*, 2016 WL 1587250, at *10 (finding accounting claim preempted and collecting cases); *see also Netzer v. Continuity Graphic Assocs., Inc.*, 963 F.

38

Supp. 1308, 1322 (S.D.N.Y. 1997) (accounting sought as remedy to unjust enrichment claim preempted). Yamashita attempts to flip this on its head—using an accounting remedy to collect information in an attempt to support a claim for infringement. Br. at 17-18 ("Yamashita seeks a court-ordered accounting, which would put Yamashita in a position to plead the (already adequate) copyright infringement claims in more detail.").

Accordingly, the District Court's denial of Yamashita's motion to amend should be affirmed.

## CONCLUSION AND SUMMARY OF REQUESTED RELIEF

For the foregoing reasons, Scholastic respectfully requests that the Court affirm the Orders of the District Court in their entirety.

Dated: New York, New York
      October 2, 2017

                  FRANKFURT KURNIT KLEIN & SELZ, P.C.

                  By:         /s/ Edward H. Rosenthal
                    Edward H. Rosenthal
                    Craig B. Whitney
              488 Madison Avenue, 10th Floor
              New York, New York 10022
              Phone: (212) 980-0120
              Fax: (212) 593-9175
              erosenthal@fkks.com
              cwhitney@fkks.com

              *Attorneys for Defendant-Appellee Scholastic Inc.*

39

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure,

the foregoing brief is in 14-Point Times Roman proportional font and contains

9,567 words and thus is in compliance with the type-volume limitation set forth in

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

Dated:  New York, New York
      October 2, 2017

            FRANKFURT KURNIT KLEIN & SELZ, P.C.

            By: /s/ Edward H. Rosenthal
                Edward H. Rosenthal
                Craig B. Whitney
            488 Madison Avenue, 10th Floor
            New York, New York 10022
            Phone:  (212) 980-0120
            Fax:  (212) 593-9175
            erosenthal@fkks.com
            cwhitney@fkks.com

            *Attorneys for Defendant-Appellee Scholastic Inc.*