# 17-1957-cv

## United States Court of Appeals
### *for the*
## Second Circuit

MICHAEL YAMASHITA, MICHAEL YAMASHITA, INC.,

*Plaintiffs-Appellants,*

– v. –

SCHOLASTIC INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

MAURICE HARMON
CHRISTOPHER SEIDMAN
GREGORY N. ALBRIGHT
HARMON SEIDMAN BRUSS & KERR, LLC
101 South Third Street, Suite 265
Grand Junction, Colorado 81501
(970) 245-9075

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................3

I.    Scholastic's statute of limitations arguments are not properly
before this Court ...............................................................3

II.    Scholastic's tepid defense of *Kelly* as the proper pleading
standard is not persuasive; the Court should overrule *Kelly* ...............9

    A.    Scholastic's suggestion that Judge Forrest did not
really rely on *Kelly* is refuted by the record.............................9

    B.    *Kelly/Gee* is a heightened pleading standard that cannot
survive this Court's holdings in *Arista* .......................9

    C.    Contrary to Scholastic's argument, Yamashita is not
required to plead more details in his complaint than he
must prove at the time of trial ..................................11

    D.    Scholastic makes no meaningful response to
Yamashita's arguments that the *Kelly/Gee* standard is
outdated and inconsistent with subsequent decisions by
the Supreme Court and this Court..............................12

III.    Scholastic's "fishing expedition" arguments fail................................13

IV.    Yamashita adequately pleaded Scholastic's "copying" and,
contrary to Scholastic's arguments, Yamashita satisfied even
*Kelly's* heightened pleading standard..................................15

V.    Scholastic's "audit" arguments have no merit ....................................18

VI.    Scholastic's challenges to the sufficiency of Yamashita's
proposed amended complaint lack merit............................................24

    A.    Contrary to Scholastic's arguments, the Proposed First
Amended Complaint bolsters Yamashita's allegations
of copyright infringement .........................................24

i

B.     Scholastic concedes that any supposed need to join Corbis as a party was not a proper basis for dismissal ............25

C.     Scholastic has not shown that Yamashita has no viable claims for specific performance of Scholastic's obligations under the pricing agreements ("PVAs") ...............25

     1.     Scholastic is estopped to challenge Yamashita's standing to enforce the PVAs ..........................................25

     2.     Scholastic does not demonstrate futility of Yamashita's contract claims ...........................................27

D.     Scholastic's arguments regarding Yamashita's bailment-related claims are not persuasive ..............................28

     1.     Yamashita has viable bailment claims even without a written contract ...............................................28

     2.     This case is principally concerned with Scholastic's refusal to account for its *uses* of the bailed property, not a failure to *return* it ........................30

     3.     Bailment law is not limited to unique originals ............33

     4.     The high-resolution digital files in which the images were embodied are the proper subject of a bailment.....................................................................34

     5.     Scholastic's preemption arguments fail.........................35

CONCLUSION ....................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Arista Records LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ........................................................11, 13, 15, 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................12, 13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................5, 13, 15

*Clark v. City of Braidwood*,
    318 F.3d 764 (7th Cir. 2003) ........................................................................4

*Clifton v. Houghton Mifflin Harcourt Pub. Co.*,
    152 F. Supp. 3d 1221 (N.D. Cal. 2015)........................................................17

*Csepel v. Republic of Hungary*,
    808 F. Supp. 2d 113 (D.D.C. 2011), *affirming in part and reversing
    in part*, 714 F.3d 591 (D.C. Cir. 2013)........................................................32

*Cuomo v. Crane Co.*,
    771 F.3d 113 (2d Cir. 2014) ...........................................................................4

*Davis & Davis v. S&T World Products*,
    154 A.D.2d 330, 545 N.Y.S.2d 806 (2d Dep't 1989) ..................................36

*Davis v. Indiana State Police*,
    541 F.3d 760 (7th Cir. 2008) .....................................................................5, 6

*Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*,
    373 F.3d 1100 (10th Cir. 2004) ...................................................................35

*Design Basics, LLC v. Quality Crafted Homes Inc.*,
    2017 WL 1301465 (N.D. Ind. 2017) ..............................................................6

*Energy Intelligence Group, Inc. v. Scotia Capital (USA), Inc.*,
    2017 WL 432805 (S.D.N.Y. 2017) .................................................................6

*Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*,
    499 U.S. 340 (1991)........................................................................11, 12, 13

*Frerck v. John Wiley & Sons, Inc.*,
    2014 WL 3512991 (N.D. Ill. 2014) ................................................................6

*Frerck v. Pearson Educ., Inc.*,
2012 WL 1280771 (N.D. Ill. 2012) ............................................................18

*Gee v. CBS, Inc.*,
471 F. Supp. 600 (E.D. Pa.), *aff'd without opinion*, 612 F.2d 572
(3d Cir. 1979)...................................................................................*passim*

*General Mills, Inc. v. Filmtel Intern. Corp.*,
178 A.D.2d 296, 577 N.Y.S.2d 384 (1st Dep't 1991)...................................36

*Grace v. Corbis Sygma*,
403 F. Supp. 2d 337 (S.D.N.Y. 2005), *reversed on other grounds*,
487 F.3d 113 (2d Cir. 2007) ........................................................29, 30, 32, 33

*Grecco v. Associated Press*,
2017 WL 2913501 (S.D.N.Y. 2017) ..............................................................6

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
759 F. Supp. 2d 363 (S.D.N.Y. 2010) ..........................................................25

*Jaso v. The Coca Cola Co.*,
435 Fed. Appx. 346 (5th Cir. 2011) ................................................................7

*John Wiley & Sons, Inc. v. DRK Photo*,
998 F. Supp. 2d 262 (S.D.N.Y. 2014) ..........................................................19

*Johnson v. City of Shelby, Miss.*,
135 S.Ct. 346 (2014)....................................................................................29

*Kashi v. McGraw-Hill Global Education Holdings*,
Civil Action No. 17-1818, 2017 WL 4547962 (E.D. Pa. Oct. 12, 2017) ......11, 18

*Kelly v. L.L. Cool J*,
145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd without opinion*, 23 F.3d 398
(2d Cir. 1994)...................................................................................*passim*

*Kousnsky v. Amazon.com, Inc.*,
631 Fed. Appx. 22 (2d Cir. 2015)................................................................13

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993)....................................................................................10

*Lefkowitz v. McGraw-Hill Global Education Holdings, LLC*,
23 F. Supp. 3d 344 (S.D.N.Y. 2014) .......................................................17-18

*Mays v. New York, N.H. & H.R. Co.*,
197 Misc. 1062, 97 N.Y.S.2d 909 (Sup. App. Term 1950) ..........................32

*McDonald v. Adamson*,
  840 F.3d 343 (7th Cir. 2016) ........................................................................4

*Motorola, Inc. v. Lemko Corp.*,
  609 F. Supp. 2d 760 (N.D. Ill. 2009)..............................................................7

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998) ...........................................................................22

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S. Ct. 1962 (2014)...................................................................................6

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014) ...........................................................................6

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
  813 F. Supp. 2d 489 (S.D.N.Y. 2011) ...........................................................34

*Rich v. Touche Ross & Co.*,
  415 F. Supp. 95 (S.D.N.Y. 1976) .............................................................28, 29

*S.E.C. v. Bronson*,
  14 F. Supp. 3d 402 (S.D.N.Y. 2014) ...............................................................5

*S.E.C. v. Credit Bancorp, Ltd.*,
  2000 WL 1752979 (S.D.N.Y. 2000) ...............................................................29

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ......................................................................19

*Seaboard Sand & Gravel Corp. v. Moran Towing Corp.*,
  154 F.2d 399 (2d Cir. 1946) .........................................................................28

*Sohm v. Scholastic, Inc.*,
  S.D.N.Y. Case No. 1:16-cv-07098-JPO .....................................................13, 14

*St. John's Univ., N.Y. v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) .............................................................5

*Strozzo v. Sea Island Bank*,
  240 Ga. App. 183, 521 S.E.2d 392 (1999) ....................................................35

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002).................................................................................10, 13

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016) .........................................................................22

*U.S. v. Space Hunters, Inc.*,
    429 F.3d 416 (2d Cir. 2005) ............................................................5

*United States ex rel Coyne v. Amgen, Inc.*,
    229 F. Supp. 3d 159 (S.D.N.Y. 2017) ...........................................12

*Young-Wolff v. McGraw-Hill Cos.*,
    2014 WL 349711, No. 13-CV-4372 (KMW)(JCF)
    (S.D.N.Y. Jan. 31, 2014) ......................................................... 20-21

*Ziegler v. Akin*,
    261 F.2d 88 (10th Cir. 1958) ..........................................................4

## Statutes & Other Authorities:

17 U.S.C. § 106.................................................................16, 19, 20, 36

17 U.S.C. § 106(1) ...........................................................................20

17 U.S.C. § 106(3) ...........................................................................20

17 U.S.C. § 106(5) ...........................................................................20

17 U.S.C. § 202 ................................................................................36

17 U.S.C. § 301(a) ...........................................................................36

17 U.S.C. § 501(b) ...........................................................................20

8A Am. Jur. 2d Bailments § 3............................................................34

8A Am. Jur. 2d Bailments § 123........................................................31

8A Am. Jur. 2d Bailments § 206........................................................31

Fed. R. Civ. P. 8(c)............................................................................5

Fed. R. Civ. P. 8(d)(2)..................................................................17, 29

Fed. R. Civ. P. 12(b)(6)..............................................................*passim*

Fed. R. Civ. P. 26 ............................................................................20

Wright, Miller, *et al*., 4 Fed. Prac. & Proc. Civ. § 1018 (4th ed.) .........20

Wright, Miller, *et al*., 5 Fed. Prac. & Proc. Civ. § 1237 (3d ed.) ..........10

## INTRODUCTION

The gist of the Brief for Appellee Scholastic, Inc. ("Scholastic") is this: Scholastic is *entitled* to get away with a coverup of its print run and other usage information, and thereby sabotage Appellants Michael Yamashita and Michael Yamashita Inc.'s ("Yamashita's") ability to plead copyright infringement. Scholastic refused Yamashita's pre-litigation request for disclosure of how Scholastic used Yamashita's high-resolution photographic images. Then, after Yamashita served the summons on the Complaint, Scholastic attacked Yamashita's Complaint for not pleading the very information Scholastic concealed, purporting to fault Yamashita for pleading on information and belief and not being clairvoyant enough to divine the details known only to Scholastic.

Scholastic's scheme involves two kinds of actionable wrongs against Yamashita's property interests.

First, as Yamashita's Complaint and Proposed First Amended Complaint ("PFAC") both plausibly allege, Scholastic exceeded the scope of its limited licenses and infringed Yamashita's copyrights. Yamashita adequately pleaded the only two elements of his infringement claim – copyright ownership and copying – and the District Court erred when it

1

relied on the *Kelly/Gee* heightened pleading standard and found allegations upon information and belief insufficient. Further, contrary to Scholastic's arguments, the law does not impose an additional element in the licensing context – a copyright owner-licensor does not have to secure and enforce an "audit" right as a prerequisite to an infringement action. And Scholastic's statute of limitations arguments – asserted for the first time on appeal – are not properly before this Court.

Second, Scholastic's coverup is independently wrongful under Yamashita's common law theories. Scholastic does not dispute the sufficiency of Yamashita's allegation that the high-resolution digital files at issue are *Yamashita's* personal property, not Scholastic's. Yet, Scholastic contends that it was entitled to take possession of Yamashita's personal property, refuse to disclose *any* information about how Scholastic used it, and through that refusal (and a heightened pleading standard for an infringement action) escape all accountability. And, according to Scholastic, the Court should blame the victim – Yamashita – for not (1) securing and enforcing an audit right, and (2) anticipating that Scholastic could not trusted to either comply with

2

license limits or disclose its uses in good faith.

Scholastic's refusal to disclose how it used Yamashita's property is inherently wrongful. It offends basic notions of decency and common sense. And Scholastic's Brief does not demonstrate that Yamashita's proposed contract and bailment-related claims are futile as a matter of law.

## ARGUMENT

## I. Scholastic's statute of limitations arguments are not properly before this Court.

Beginning with the very first paragraph of its Brief, and on pages 21-24, Scholastic improperly attempts to raise statute of limitations issues for the first time on appeal that (1) Scholastic did not present to the District Court, (2) were not ruled upon by Judge Forrest, and (3) are not supported by any allegation on the face of the Complaint or any facts in the record. Specifically, Scholastic's Brief argues for the first time that "[t]he pleading standard and the statute of limitations are, in essence, linked here."[1]

This is improper for several reasons.

_____

[1] Scholastic's Brief, p. 22.

First, an appellate court "will not affirm a judgment based on an affirmative defense raised for the first time on appeal."[2] This is consistent with "the general rule … that a federal appellate court does not consider an issue not passed upon below."[3] Here, Scholastic's Rule 12(b)(6) motion was *not* based on the statute of limitations, and Judge Forrest did *not* dismiss the Complaint as time-barred. Instead, as Scholastic admits, it argued "the Complaint failed to satisfy the requirements of Rule 8 and, in particular, failed to allege by what acts and at what time Yamashita's Photographs were allegedly infringed."[4] That was the sole basis for dismissing Yamashita's copyright claims.[5]

Second, "a plaintiff is not required to negate an affirmative defense in his complaint."[6] The statute of limitations is an affirmative

---

[2] *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016) (refusing to consider collateral estoppel defense because defendant did not carry its "burden to raise it in the district court and show that its application is clear on the face of [plaintiff's] complaint"); *see also Ziegler v. Akin*, 261 F.2d 88, 92 (10th Cir. 1958) ("The defense of the statute of limitations cannot be raised for the first time on appeal.").

[3] *Cuomo v. Crane Co.*, 771 F.3d 113, 117, n. 2 (2d Cir. 2014) (citation omitted).

[4] Scholastic's Brief, p. 5.

[5] SPA2-3.

[6] *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003).

4

defense that *Scholastic* must plead and prove.[7]  Yamashita had no

obligation to "plead around" Scholastic's time-bar defense.[8]

Third, "[a] court may dismiss a claim on the basis of an

affirmative defense *only* if the facts supporting the defense appear on

the face of the complaint, and it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim would entitle him to

relief."[9]  And the Supreme Court's decision in *Bell Atlantic Corp. v.*

*Twombly*[10] "did not revise the allocation of burdens concerning

affirmative defenses."[11]

The gravamen of Yamashita's infringement claims is that

Scholastic infringed copyrights by exceeding the scope of limited

---

[7] Fed. R. Civ. P. 8(c).

[8] *Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008) ("Complaints need not anticipate, and attempt to plead around, potential affirmative defenses.").

[9] *U.S. v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005) (internal quotation marks omitted; emphasis added); *see also St. John's Univ., N.Y. v. Bolton*, 757 F.Supp.2d 144, 157 (E.D.N.Y. 2010 ("Dismissal is proper only when, drawing all reasonable inferences in the favor of the plaintiff, the court concludes that the plaintiff's own factual allegations prove the defendant's statute of limitations defense.").

[10] 550 U.S. 544 (2007).

[11] *S.E.C. v. Bronson*, 14 F.Supp.3d 402, 411 (S.D.N.Y. 2014), *quoting Davis*, 541 F.3d at 763.

licenses.[12]  To prevail on a time-bar defense, Scholastic would have to

show, on a claim-by-claim basis (1) when it first exceeded the scope of

the licenses, and thus began infringing, and when (if ever) its

infringements ended;[13] *and* (2) when Yamashita actually discovered or

might reasonably have discovered the facts underlying each claim.[14]

No such facts appear on the face of the Complaint.  It is improper

_____

[12] A12 ¶¶ 9-13.  Yamashita is not, as Scholastic argues, trying to "extend his claims back to the date [the images] were licensed – nearly twenty years ago."  Scholastic's Brief, p. 22.  An infringement commenced when Scholastic first exceeded the scope of a pertinent license, which may not coincide with the date of the license, or initial publication within license limits.  *See Grecco v. Associated Press,* 2017 WL 2913501 *4-5 (S.D.N.Y. 2017) (declining to infer in defendants' favor that infringement began with initial publication where limited license was alleged).  Yamashita could not have discovered any particular infringement before Scholastic exceeded the pertinent license, and Scholastic alone knows when that was.  A13 ¶ 15.

[13] *Frerck v. John Wiley & Sons, Inc.*, 2014 WL 3512991 *6 (N.D. Ill. 2014).

[14] *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124-25 (2d Cir. 2014) (joining "every Circuit to have considered the issue," and holding "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement").  Courts uniformly recognize the discovery rule is still the law after *Petrella v. Metro-Goldwyn-Mayer*, *Inc.,* 134 S.Ct. 1962 (2014).  *See Energy Intelligence Group, Inc. v. Scotia Capital (USA), Inc.*, 2017 WL 432805 *2 (S.D.N.Y. 2017) (following the discovery rule); *Design Basics, LLC v. Quality Crafted Homes Inc.*, 2017 WL 1301465 *2-3 (N.D. Ind. 2017) (collecting cases).

for Scholastic to ask this Court to *assume* facts, or draw inferences in favor of Scholastic (based solely on argument of defense counsel),[15] for the purpose of resolving an affirmative defense Scholastic did not assert as a basis for its Rule 12(b)(6) motion.

To the contrary, as even the limited pleading-stage record demonstrates, Scholastic *cannot* show that, because of the statute of limitations, Yamashita "can prove no set of facts in support of his claim would entitle him to relief." For example, Exhibits 3 and 4 to Yamashita's Proposed First Amended Complaint ("PFAC") are excerpts of Scholastic publications – *Earthquakes* and *True or False, Storms*.[16] These publications correspond to claims in the PFAC, Exhibit 1, rows 10 and 85, and concern licenses issued in 2002 and 2008.[17] Judge Forrest in error denied Yamashita a chance to pursue these claims.

---

[15] *See Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 353-54, n. 5 (5th Cir. 2011) (unpublished) (deciding time-bar issue in copyright case at pleading stage based on inferences drawn from "the flat assertion" by defense counsel "was, to say the very least, flawed"); *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp.2d 760, 768 (N.D. Ill. 2009) (denying motion to dismiss because "[b]ased on the facts stated in the complaint" the Court "cannot say definitively that [plaintiff] knew or should have known of [defendant's] alleged conduct" outside limitations period).

[16] A342-49.

[17] A323, 332.

Scholastic first published *Earthquakes* in February 2002,[18] and *Storms* in September 2009.[19] There is *no evidence* Scholastic *ever* stopped selling these books. To the contrary, the Court may take judicial notice that Scholastic is *currently* selling them on its website.[20] If Scholastic's distribution of these books since June 28, 2013 (three years before the Complaint was filed) exceeded the print-run limits in the pertinent licenses, those sales were infringing[21] and Yamashita's claims are undeniably timely (even apart from the discovery rule). Scholastic alone knows its print run information, and a coverup is its main objective here. But even now it is clear that Scholastic has no *good faith* argument that there is *no set of facts* under which Yamashita would have timely infringement claims.

---

[18] A345.

[19] A348.

[20] *See* https://www.scholastic.com/teachers/books/schol-sci-rdr-earthquakes-lvl-2-by-deborah-heiligman/, and https://shop.scholastic.com/teachers-ecommerce/books/scholastic-true-or-false-storms-9780545202022.html.

[21] Exhibits 3 and 4 do not, as Scholastic misrepresents, "confirm that Scholastic used the Photographs within the terms of the licenses identified in rows 10, 80, and 85." Scholastic's Brief, p. 25. Nothing in the record shows Scholastic's compliance with print run limits, for example.

**II.   Scholastic's tepid defense of *Kelly* as the proper pleading standard is not persuasive; the Court should overrule *Kelly*.**

   **A.   Scholastic's suggestion that Judge Forrest did not really rely on *Kelly* is refuted by the record.**

Scholastic's Rule 12(b)(6) motion cited *Gee v. CBS, Inc.*,[22] and asked the District Court to rule "[b]ased on this standard."[23]  As explained in Yamashita's opening brief, *Kelly v. L.L. Cool J*[24] is derived from the 38-year-old *Gee* standard.[25]  Judge Forrest quoted *Kelly*, and found "Plaintiff have not met *this standard*."[26]  Hence, there is no merit in Scholastic's argument that Judge Forrest did *not* hold Yamashita to the *Kelly/Gee* pleading standard.

   **B.   *Kelly/Gee* is a heightened pleading standard that cannot survive this Court's holdings in *Arista*.**

Contrary to what Scholastic argues, *Kelly/Gee* is a heightened pleading standard that purportedly requires detailed, factual specificity

---

[22] 471 F.Supp. 600 (E.D. Pa.), *aff'd without opinion*, 612 F.2d 572 (3d Cir. 1979).

[23] A45.

[24] 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd without opinion*, 23 F.3d 398 (2d Cir. 1994).

[25] Yamashita's opening Brief ("AOB") 38-40.

[26] SPA2 (emphasis added).

9

about the "copying" element.[27]  Applying *Kelly*, Judge Forrest faulted

Yamashita for supposedly failing to plead "by what acts during what

time the defendant infringed the copyright."[28]

As Wright, Miller, et al. observes, "[a] few district courts have

imposed a heightened pleading requirement in cases involvement

copyright infringement." [29]  The treatise cites cases that adopted the *Gee*

standard, as *Kelly* did, and states "this requirement appears to be in

clear violation of the 'short and plain' mandate of [Fed. R. Civ. P.] 8,"[30]

especially in light of the Supreme Court's decisions in *Leatherman v.*

*Tarrant County Narcotics Intelligence & Coordination Unit*[31] and

*Swierkiewicz v. Sorema N.A.*[32]  Notably, another District Judge in the

Eastern District of Pennsylvania recently rejected *Gee* as the

appropriate pleading standard in a similar case against an infringing

---

[27] *See* AOB 27.

[28] SPA2.

[29] 5 Fed. Prac. & Proc. Civ. § 1237 (3d ed.).

[30] *Id.*

[31] 507 U.S. 163, 167 (1993) (heightened pleading standard is "impossible to square … with the liberal system of 'notice pleading' set up by the Federal Rules").

[32] 534 U.S. 506, 508 (2002) (complaint need not "contain specific facts establishing a prima facie case").

10

publisher.[33]

Scholastic apparently concedes, as it must, that *Arista Records LLC v. Doe 3* squarely held that copyright infringement claims are *not* subject to heightened pleading standards.[34]  As explained in Yamashita's opening Brief,[35] *Kelly* cannot be squared with *Arista,* and the Court should take this opportunity to overrule *Kelly*.

### C. Contrary to Scholastic's argument, Yamashita is not required to plead more details in his complaint than he must prove at the time of trial.

Scholastic argues that when the Supreme Court in *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.*[36] identified the two elements of copyright infringement – "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original" – the Court merely identified what litigants must *prove* at

---

[33] *Kashi v. McGraw-Hill Global Education Holdings*, Civil Action No. 17-1818, 2017 WL 4547962 *3-5 (E.D. Pa. Oct. 12, 2017) (distinguishing *Gee* and denying motion to dismiss); *see also* Doc. 26 (Memorandum Opinion), p. 6 ("there has not been a whiff anywhere that the Third Circuit has adopted *Gee's* specific pleading requirements").

[34] 604 F.3d 110, 119-21 (2d Cir. 2010); *see* AOB 27-31.

[35] AOB 36-41.

[36] 499 U.S. 340 (1991).

trial.  Scholastic's premise – that *more* specificity is required at the *pleading* stage – is illogical.  A plaintiff's complaint need not show *more* than his evidence at trial.

As the Supreme Court did in *Ashcroft v. Iqbal*,[37] a court evaluating a Rule 12(b)(6) motion "*begin[s]* by taking note of the elements a plaintiff must plead to state a claim."[38]  In other words, the elements of the claim frame the inquiry about what is required for plausibility.[39]  Yamashita's Complaint is sufficient because it pleads facts that plausibly support the two elements of copyright infringement identified in *Feist* – copyright ownership and "copying."  Nothing more is required.

### D.  Scholastic makes no meaningful response to Yamashita's arguments that the *Kelly/Gee* standard is outdated and inconsistent with subsequent decisions by the Supreme Court and this Court.

Section I.B.4 of Yamashita's opening Brief explained the many reasons it is no longer appropriate for district courts to apply the

---

[37] 556 U.S. 662 (2009).

[38] *Id.* at 675 (emphasis added);

[39] *See United States ex rel Coyne v. Amgen, Inc.*, 229 F.Supp.3d 159, 169 (S.D.N.Y. 2017) (issue on motion to dismiss is not whether plaintiff has *established* prima facie case, but elements of prima facie case provide outline of what is necessary to render claims for relief plausible).

12

*Kelly/Gee* pleading standard. Scholastic did not respond to most of Yamashita's points, and impliedly concedes them.

Nor does Scholastic argue that any *published* opinion of this Court has reviewed *Kelly*, or considered whether it is consistent with *Feist, Twombly, Iqbal, Swierkiewicz,* and *Arista. Kelly* itself was affirmed without opinion in 1994. And *Kousnsky v. Amazon.com, Inc.*[40] is unpublished, not precedent, and too abbreviated to support *Kelly*. Further, *Kousnsky* did *not*, as Scholastic argues, affirm a dismissal with prejudice, like Judge Forrest's order here. *Kousnsky remanded* "for the district court to amend its judgment to reflect that the dismissal of Kousnsky's copyright infringement claims against Pyramid was without prejudice to amendment of the complaint."[41]

## III. Scholastic's "fishing expedition" arguments fail.

Scholastic is playing fast and loose with the facts if it denies that Scholastic, through its lead counsel here, *stipulated* to numerous print overruns in *Sohm v. Scholastic, Inc.*[42] Contrary to Scholastic's specious

---

[40] 631 Fed.Appx. 22 (2d Cir. 2015).

[41] *Id.* at 25.

[42] S.D.N.Y. Case No. 1:16-cv-07098-JPO. *See* Scholastic's Brief, p. 23, n. 4.

13

argument, the fact that discovery confirmed Scholastic's violation of license limits in *Sohm* shows that cases like this one are not a "fishing expedition."[43]  Nor does the fact that Scholastic has routinely settled other under-licensing-scheme cases, to avoid an adjudication of its liability, support its argument that Yamashita's similar case is a "fishing expedition."

Scholastic misrepresents the record when it suggests Yamashita did not dispute Judge Forrest's "fishing expedition" finding.  Yamashita did not move for reconsideration of that error, but "disagree[d]" with it and reserved the right to appeal.[44]

Moreover, Judge Forrest erred because her "fishing expedition" and "aimless trawling" characterizations improperly forecasted whether Yamashita would find evidentiary support for his claims, and succeed on the merits.  "[A] well-pleaded complaint may proceed even if … a recovery is very remote and unlikely," and "when a complaint adequately states a claim it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support

---

[43] AOB 50-51.

[44] A300, and note 50.

for his allegations or prove his claim to the satisfaction of the factfinder."[45]

## IV.   Yamashita adequately pleaded Scholastic's "copying" and, contrary to Scholastic's arguments, Yamashita satisfied even *Kelly's* heightened pleading standard.

Scholastic's arguments fail principally because they depend upon ignoring or misrepresenting what Yamashita actually pleaded.

Scholastic's various assertions that Yamashita did not allege "a single specific fact to support his claim,"[46] "provided no factual basis for" his belief "infringement occurred,"[47] and instead alleged only "five ways in which Scholastic *might* have infringed,"[48] erroneously mischaracterize the Complaint in the same way Judge Forrest did.  The complaint here, like the one in *Arista*, attaches an Exhibit which – as discussed in Yamashita's opening Brief – provides a great deal of *factual detail*.[49]

And, contrary to Scholastic's argument, Paragraph 13 of the

---

[45] *Twombly*, 550 U.S. at 556, 563 n. 8.

[46] Scholastic's Brief, p. 1.

[47] *Id.*, p. 3.

[48] *Id.*, p. 2.

[49] AOB 41-49.

Complaint alleges *facts*, not mere conclusions, that make the claims plausible. There are many ways a defendant can infringe – by violating a copyright owner's exclusive right to prepare a derivative work, or publicly performing a musical work, for examples.[50] Yamashita gave Scholastic notice of what is at issue here, by alleging the specific *facts* that distinguish this case from some other kind of case:

• this case concerns photographs, not some other kind of work;

• in Exhibit 1 to the Complaint the specific at-issue photographs are identified by thumbnail, image ID, and registration information;

• Yamashita claims Scholastic infringed by exceeding license limits, or using the photographs with no license at all;

• the pertinent licenses are identified by Invoice number and *date* (thus narrowing the "time" of infringement);

• the kinds of license limits at issue are specified: "number of copies, distribution area, language, duration and/or media"; and

• in Paragraph 13, Yamashita alleges how Scholastic violated the Section 106 rights pertinent to the at-issue photographs – reproduction,

---

[50] 17 U.S.C. § 106.

distribution, and display.[51]

Scholastic faults the Complaint for using the "and/or" connector in Paragraph 13. But that is not a pleading defect, because Rule 8(d)(2) *permits* a party to "set out two or more statements of a claim … alternatively or hypothetically," and "the pleading is sufficient if any one of them is sufficient."[52]

The additional details Scholastic argues are missing – whether Scholastic printed 400,000 copies of a book containing Yamashita's image when it had a license for only 40,000, or sold books in Brazil licensed for distribution only in "North America," for example – are matters Scholastic keeps secret and refuses to disclose. As explained in Yamashita's opening Brief, these kinds of details fall squarely within what *Arista* held may be pleaded on information and belief.[53] Numerous similar cases – which Scholastic has not distinguished – have so held.[54]

---

[51] A11-12, A16-31.

[52] Fed. R. Civ. P. 8(d)(2).

[53] AOB pp. 31-36.

[54] *Clifton v. Houghton Mifflin Harcourt Pub. Co.*, 152 F.Supp.3d 1221, 1224 (N.D. Cal. 2015); *Lefkowitz v. McGraw-Hill Global Education*

In *Kashi*, Judge Beetlestone recently denied another publisher's motion to dismiss, finding a photographer plaintiff like Yamashita is entitled to plead upon information and belief where, as here, the additional details are peculiarly within the defendant's knowledge or control. Judge Beetlestone found: "What uses McGraw-Hill made of Plaintiff's photographs are peculiarly within its control, and it alone knows the full extent to which it has infringed plaintiff's copyrights."[55] The same is true of Scholastic here.

## V. Scholastic's "audit" arguments have no merit.

Scholastic's "audit" arguments boil down to this: a copyright owner who has issued a limited license for use of a work may not sue for infringement unless the owner has *also* secured and enforced a contractual right to an audit, because discovery in a copyright case amounts to an "audit." Essentially, Scholastic asks this Court to add an additional essential element to a copyright infringement claim in the licensing context, and require an owner-licensor to plead a contractual right to an "audit" before suing a licensee for infringing copyright by

---

*Holdings, LLC,* 23 F.Supp.3d 344, 355-56 (S.D.N.Y. 2014); *Frerck v. Pearson Educ., Inc.*, 2012 WL 1280771 *2-3 (N.D. Ill. 2012).

[55] *Kashi*, 2017 WL 4547962 *5.

exceeding the scope of its license.[56]

Not surprisingly, Scholastic cites no case that has imposed that pleading standard. If Congress had intended to condition a copyright owner-licensor's right to sue for infringement upon first obtaining, and enforcing, a contractual audit right, it could have said so. It did not, for an obvious reason: the right to sue for copyright infringement (and obtain discovery) is statutory, not contractual.

Scholastic's strained interpretation of 17 U.S.C. § 106 is flawed. According to Scholastic, Yamashita cannot sue a licensee-publisher for infringement and seek discovery about its uses of a photograph because Section 106 does not confer the right to an "audit." But Section 106 identifies ways of *"copying"* a work that a copyright owner alone may do and authorize.[57] A photographer, for example, has the exclusive rights

---

[56] "It is black-letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license." *John Wiley & Sons, Inc. v. DRK Photo*, 998 F.Supp.2d 262, 287 (S.D.N.Y. 2014) (citation omitted); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) ("A licensee infringes the owner's copyright if its use exceeds the scope of its license.").

[57] "The word 'copying' is shorthand for the infringing of any of the copyright owner's five [now six] exclusive rights described in § 106." *Arista*, 604 F.3d at 117 (citation and internal quotation marks omitted).

to reproduce, distribute and display a photograph.[58] "Auditing" is not a kind of "copying," however, and the significance Scholastic attaches to its omission from Section 106 is illogical. Section 106 sheds no light on the question whether an owner-licensor with no contractual audit rights can obtain *discovery* in an infringement litigation.

But Section 501(b) does. It authorizes legal and beneficial owners of copyright to sue for infringement, and there is *no exception* for owner-licensors who do not hold contractual audit rights.[59] Further, "[t]he Federal Rules of Civil Procedure are now fully applicable to copyright proceedings,"[60] including the discovery Rules.[61] Hence, contrary to Scholastic's argument, a copyright owner is entitled to *discovery* in an infringement action whether or not the owner has any contractual "audit" right.

Scholastic cites the following statement in Judge Wood's January 31, 2014 decision in *Young-Wolff v. McGraw-Hill Cos.*:[62] "Plaintiff points

---

[58] 17 U.S.C. § 106(1), (3), and (5).

[59] 17 U.S.C. § 501(b).

[60] Wright, Miller, et al., 4 Fed. Prac. & Proc. Civ. § 1018 (4th ed.).

[61] Fed. R. Civ. P. 26, *et seq.*

[62] 2014 WL 349711, No. 13-CV-4372 (KMW)(JCF) (S.D.N.Y. Jan. 31,

to neither case law or nor language in the Copyright Act[ ] indicating that a copyright owner has an inherent right to sue a licensee for an audit."[63]  But *Young-Wolff* did not find that *discovery* in an infringement action amounts to an "audit."  *Young-Wolff* held only that the plaintiff failed to state a "claim for a *declaratory judgment* premised on a right to an audit under the Copyright Act."[64]  Yamashita makes no such claim here.

The *true* significance of *Young-Wolff* is Judge Wood's *subsequent* March 27, 2015 decision, after the plaintiff filed an amended complaint.[65]  Judge Wood found that the amended complaint adequately pleaded the "ways in which Defendants violated applicable license restrictions," and the time period of the infringement.[66]  Judge Wood denied the publisher's motion to dismiss the amended complaint[67] and –

---

2014).

[63] *Id* \*6.

[64] *Id.* at \*7 (emphasis added).

[65] 2015 WL 1399702, No. 13-CV-4372 (KMW) (S.D.N.Y. March 27, 2015).  Through inadvertence, footnotes 135 and 137 in Yamashita's Opening Brief in error cited Judge Wood's January 31, 2014 decision; the correct citations are to pages in her 2015 decision in *Young-Wolff*.

[66] 2015 WL 1399702 \*2-4; *see* AOB pp. 43, 48.

[67] 2015 WL 1399702 \*6.

notably – did *not* hold the plaintiff could not have *discovery* because he did not hold an "audit" right.

Scholastic's audit arguments also fail because they improperly ask the Court to (1) consider matters outside the record,[68] and (2) draw inferences in *Scholastic's* favor.[69]  Scholastic asserts: (1) Yamashita "could have learned the missing facts" but for his choice "not to require that Corbis include and/or enforce audit rights;" and (2) there is no audit provision in the *licenses* that Corbis issued to Scholastic.[70]  But these supposed "facts" do not appear on the face of the Complaint, and are not in evidence.

Further, Scholastic *misrepresents* the record when it suggests Corbis *never* obtained a right to audit Scholastic.  The October 1, 2004 "Preferred Pricing Agreement" between Corbis and Scholastic has an "Audit Rights" provision, the terms of which Scholastic has, true to

---

[68] *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998) ("We limit our review [of a Rule 12(b)(6) dismissal], as we must, to the allegations contained within the four corners of [the] complaint.").

[69] *TCA Television Corp. v. McCollum*, 839 F.3d 168, 177 (2d Cir. 2016) (this Court reviews dismissal under Rule 12(b)(6) *de novo* "accepting all factual allegations in the amended complaint … as true and drawing all reasonable inferences in plaintiffs' favor").

[70] Scholastic's Brief, pp. 20 and 23, n. 3.

22

form, concealed (by redaction).[71]  And this Court must draw all reasonable inferences in *Yamashita's* favor at the pleading stage, and credit Yamashita's plausible allegations that Scholastic "alone knows the full extent to which it has infringed Yamashita's copyright by making unauthorized uses of the Photographs, but Scholastic has not shared this knowledge with Yamashita,"[72] and in fact *refuses* to provide information about its uses upon request.[73]  Hence, the only *permissible* inference at this stage is that Yamashita could *never* learn Scholastic's confidential usage information without formal litigation and discovery.

Scholastic's "audit" arguments also fail because a copyright owner-licensor who does not secure and enforce a contractual audit right does not thereby waive his statutory right to sue a licensee who has infringed by exceeding the scope of limited licenses.  In this regard, the Corbis Terms and Conditions incorporated into each of the Scholastic pricing agreements provide: "Unauthorized use of Content constitutes infringement of copyright and other applicable rights and shall entitle

---

[71] A376.

[72] A13 ¶ 15.

[73] A308 ¶ 2(e); A163 ¶ 5, A200.

23

Corbis to exercise all rights and remedies under applicable copyright and other laws…."[74]  Nothing in the Terms and Conditions – nor in the Copyright Act, as discussed above – conditions Yamashita's right to sue Scholastic for copyright infringement upon the existence or exercise of audit rights.

## VI. Scholastic's challenges to the sufficiency of Yamashita's proposed amended complaint lack merit.

### A. Contrary to Scholastic's arguments, the Proposed First Amended Complaint bolsters Yamashita's allegations of copyright infringement.

As discussed above, two instances of actual copying of Yamashita's images in Scholastic publications are shown by Exhibits 3 and 4 to the PFAC.  Judge Forrest erred when she disregarded these plausible claims of copying, and Scholastic has not shown otherwise.

Further, the PFAC provided additional detail that explained why Yamashita was making allegations on information and belief.[75]  The PFAC also alleged that Yamashita would be in a position to provide even more detail about the basis for his copyright infringement claims

---

[74] A392 ¶ 11, 404 ¶ 11; *see also* A368 ¶ 10, and A378 ("Unauthorized Use").

[75] AOB 13-14, 31-36.

after obtaining relief on his proposed common law claims.

**B.    Scholastic concedes that any supposed need to join Corbis as a party was not a proper basis for dismissal.**

Yamashita's opening brief explained why Judge Forrest erred when she speculated, *sua sponte*, about a supposed need to join Corbis as a party in ruling on the sufficiency of Yamashita's PFAC.  Scholastic concedes this was error but suggests it was merely "dicta."[76]  The record, however, shows Judge Forrest's February 28, 2017 Order depended upon or was improperly influenced by this error.[77]

**C.    Scholastic has not shown that Yamashita has no viable claims for specific performance of Scholastic's obligations under the pricing agreements ("PVAs").**

**1.    Scholastic is estopped to challenge Yamashita's standing to enforce the PVAs.**

In the District Court,[78] and in his opening Brief,[79] Yamashita explained that "a principal can sue on a contract entered into by his agent on his behalf."[80]  Scholastic did not challenge Yamashita's

---

[76] Scholastic's Brief, p. 28, n. 7.

[77] SPA4.

[78] A296 n. 32.

[79] AOB 64.

[80] *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F.Supp.2d 363, 375 (S.D.N.Y. 2010).

standing in opposition to Yamashita's request for leave to file the PFAC, and instead doubled-down on its agency argument.[81]

Doing an about-face on appeal – in an effort to defend Judge Forrest's *sua sponte* "note" that "principle [sic]/agent relations is [sic] not equivalent to standing in Corbus's [sic] shoes in the contract for all purposes"[82] – Scholastic asserts that Corbis did not really enter into the PVAs as Yamashita's agent, for his benefit.

Scholastic waived this argument by failing to make it in the District Court. And Scholastic did not respond to (and thus impliedly concedes) Yamashita's argument in his opening Brief that Scholastic is estopped to change its tune now, because to obtain transfer of this action from New Jersey, Scholastic "argu[ed] that the PVAs were entered into by Corbis as Yamashita's agent, for Yamashita's benefit."[83] It is at best disingenuous for Scholastic to *now* say the PVAs merely gave Yamashita imputed "notice" of the forum clauses. Judge Chesler

---

[81] A453, 456, 458.

[82] SPA4.

[83] AOB 64-65; *see also* A50 ("Plaintiffs had a principal-agent relationship with Corbis, and are bound by the PVAs Corbis signed to litigate disputes in New York."); A246 (again referring to Yamashita's "agent's agreements with Scholastic").

26

found: "Plaintiffs are principals and Corbis is their agent."[84]  Scholastic

asked for that finding and should be bound by it.

### 2. Scholastic does not demonstrate futility of Yamashita's contract claims.

The points on pages 34-35 of Scholastic's Brief lack merit.  First, it

is not correct that "the publications themselves would not include the

type of information sought by Yamashita in the FAC or contain facts

sufficient to form a basis as to whether Scholastic infringed Yamashita's

copyrights."[85]  While a single copy of a publication would not disclose

print runs, the PFAC also alleges Scholastic published the Photographs

(1) outside the authorized distribution areas, (2) in unauthorized

electronic, ancillary, or derivative publications, and (3) in international

editions or foreign publications.[86]  Copies of all Scholastic's uses would

show whether Scholastic infringed in these ways.

Second, Yamashita explained why Scholastic's proffered

interpretation of the "Payment/Reporting" provision in the PVAs is

---

[84] A275.

[85] Scholastic's Brief, p. 34.

[86] A311 ¶ 18.

unreasonable.[87]  Scholastic's response is not persuasive, principally because it ignores Yamashita's points and authorities.

### D. Scholastic's arguments regarding Yamashita's bailment-related claims are not persuasive.

#### 1. Yamashita has viable bailment claims even without a written contract.

Scholastic's Brief ignores the authorities cited at pages 59-60 of Yamashita's opening Brief, including this Court's decision in *Seaboard Sand & Gravel Corp. v. Moran Towing Corp.*,[88] which held that a bailment relation does not depend upon a contract, and "may be created by operation of law."[89]

The cases Scholastic relies upon are not to the contrary; they do *not* hold that a bailment can *only* arise from an express written contract.  Instead, *Rich v. Touche Ross & Co.*,[90] cited by Scholastic, recognizes that a bailment contract may be "implied," and "[a] bailment describes a result which in many instances does not flow from the conscious promises of the parties made in a bargaining process but from

---

[87] AOB 69-70.

[88] 154 F.2d 399 (2d Cir. 1946).

[89] 154 F.2d at 401.

[90] 415 F.Supp. 95 (S.D.N.Y. 1976).

28

what the law regards as a fair approximation of their (intentions)."[91] And the allegations in the PFAC are *consistent* with the creation of a bailment, as *Grace v. Corbis Sygma*[92] underscores.

Nor are Yamashita's bailment-based claims dependent upon his breach of contract claim, as Scholastic contends. The bailment-related claims in Counts III, IV and V of the PFAC are alternative statements of Yamashita's claims, permitted by Rule 8(d)(2), and Yamashita's "pleading is sufficient if any one of them is sufficient."[93] Moreover, as the Supreme Court held in *Johnson v. City of Shelby, Miss.*, the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."[94] The test is whether the facts, as alleged, support *any* valid claim entitling plaintiff to relief, and a complaint should not be dismissed if

---

[91] *Id.* at 99, n. 2 (internal quotation marks and citation omitted).

[92] 403 F.Supp.2d 337, 347 (S.D.N.Y. 2005), *reversed on other grounds*, 487 F.3d 113 (2d Cir. 2007). *S.E.C. v. Credit Bancorp, Ltd.*, 2000 WL 1752979 (S.D.N.Y. 2000), cited by Scholastic, is inapposite because the transfer of title in that case was inconsistent with a bailment. *Id.* at 26. Here, by contrast, no title passed to Scholastic, and "Yamashita is and at all pertinent times was owner of the Bailed Property." A316 ¶ 48.

[93] Fed. R. Civ. P. 8(d)(2).

[94] 135 S.Ct. 346, 346 (2014).

29

the facts alleged support any valid theory. Scholastic has not shown that Yamashita does not have *any* valid bailment theory on the facts alleged.

There also is no merit in Scholastic's argument that the necessary "assent" is lacking. The PFAC alleges Scholastic executed the PVAs, "explicitly or impliedly agreed to … deal with the Bailed Property as Yamashita instructed," and "took lawful possession of the Bailed Property."[95] Further, the defendant in *Grace* was a *Corbis* entity and, as Scholastic acknowledges, the parties in *Grace* did not dispute that the photographic images in question were the subject of a bailment.[96] That Corbis Sygma admitted the existence of a bailment in *Grace* undermines Scholastic's argument that Corbis did not intend a bailment here with respect to the very same kind of personal property.

### 2. This case is principally concerned with Scholastic's refusal to account for its *uses* of the bailed property, not a failure to *return* it.

As explained in Yamashita's opening Brief, the common law recognizes that when a bailee takes possession of property it does not

---

[95] A313 ¶¶ 26-29, A316 ¶¶ 49-50.

[96] Scholastic's Brief, p. 31.

30

own, and its right to use it are limited, it must account for the uses it makes of it.[97] It is hornbook law that a bailee's "right to use [the bailed property] for one purpose gives the bailee no right to use the property for another purpose," and an "invasion of the owner's right of property" is "complete when the bailee goes beyond the licensed use."[98] And "a bailor can maintain an action against the bailee when the bailee *uses* the bailed property in a different manner or for a different purpose than was agreed on, or otherwise departs from the agreed terms of the bailment."[99]

Scholastic ignores these principles, and tries to divert attention to cases concerned with a bailee's failure to *return* bailed property. But that is not what this case is mainly about. Yamashita seeks an *accounting* of Scholastic's *uses* of the bailed property, because it is wrongful for Scholastic to conceal what it did with property that belongs to Yamashita, not Scholastic.

Moreover, a bailment does not come into existence *solely* when the

---

[97] AOB 57-58.

[98] 8A Am.Jur.2d Bailments § 123.

[99] 8A Am.Jur.2d Bailments § 206.

31

bailment contemplates *return* of the bailed property to the bailor. It is true that a bailor can have an action for damages if the bailee fails to return bailed property, if return is what the bailor directed. But the law is not limited to that context. A bailee is required to "deal with the property as the [bailor] instructs,"[100] and there is no reason a bailment in the digital age cannot end with *deletion* of the digital file, if that is what the bailor instructs.[101]

When a bailee *uses* the bailed property to make a profit and refuses to account to the bailor for those uses, that constitutes a breach of the bailee's duties and is conversion because it is wrongful exercise of control over the bailed property to the bailor's injury. And the law of bailment and conversion provide a remedy – an accounting of the bailee's uses.[102] Yamashita explained this in his opening Brief, citing

---

[100] *Grace*, 403 F.Supp.2d at 347.

[101] *See Mays v. New York, N.H. & H.R. Co.*, 197 Misc. 1062, 97 N.Y.S.2d 909, 912 (Sup.App.Term 1950) (bailment can end "when specific direction is given by the bailor to deposit the property at a particular place and to leave it there").

[102] *See also de Csepel v. Republic of Hungary*, 808 F.Supp.2d 113, 136-37 n. 8 (D.D.C. 2011) (rejecting pleading-stage challenge to conversion and accounting claims, because the complaint adequately stated a claim for bailment), *affirming in part and reversing in part*, 714 F.3d 591, 605 (D.C. Cir. 2013) (finding complaint adequately alleged mutual

numerous supporting authorities[103] that Scholastic's Brief ignores.

### 3.  Bailment law is not limited to unique originals.

Scholastic does not persuade with its argument that high-resolution digital copies of Yamashita's photographs cannot be the subject of a bailment.  Notably, Scholastic's Brief offers no response to two key points in Yamashita's Brief: (1) *every* material object in which a work is embodied is a "copy," and (2) the legislative history of the Copyright Act recognized that a "copy" of a work may be the subject of a bailment.[104]

*Grace* also supports the conclusion that copies can be bailed property.  Contrary to Scholastic's argument, *Grace* was not concerned solely with "originals" of photographic images.  Judge Chin's opinion refers to "duplicates" of the original "slides"; both were in the defendant's possession, and both were bailed property.[105]

Finally, the "exclusivity" that is required for a bailment is not possession of a unique original, but rather exclusivity of the bailee's

---

consent to bailment relationship).

[103] AOB 57-58 notes 181-187.

[104] AOB 71-72.

[105] *See* 403 F.Supp.2d at 342, 346.

33

control over the bailed property as against the bailor. Here, the PFAC
alleges that Scholastic took possession of high-resolution copies of
Yamashita's images and – as between Scholastic and Yamashita –
Scholastic had exclusive control over those files, and exclusive control
over information about how it made use of them.[106]

### 4. The high-resolution digital files in which the images were embodied are the proper subject of a bailment.

Scholastic argues, without citation to authority, that images in
electronic form should not be subject to a bailment. But it is hornbook
law that "[a]ny kind of personal property, whether tangible or
intangible, may be the subject of a bailment."[107] There is no sound
reason why the law of bailment cannot keep up with the times, and
protect an image embodied in high-resolution digital file, especially
since it just as valuable as a hard copy of an image, and a publisher like

---

[106] A315-16 ¶¶ 44, 50, 53, 60, 65. *Pure Power Boot Camp, Inc. v.
Warrior Fitness Boot Camp, LLC*, 813 F.Supp.2d 489 (S.D.N.Y. 2011),
cited by Scholastic, is inapposite, because it did not involve a bailment
or a request for accounting of use of personal property like
Yamashita's photographs.

[107] 8A Am.Jur.2d Bailments § 3.

Scholastic can exploit it as fully as a tangible transparency.[108]

### 5. Scholastic's preemption arguments fail.

As a preliminary matter, Judge Forrest did not find, as Scholastic argues, that Yamashita's conversion and accounting claims are preempted. And, notably, Scholastic makes no argument that Yamashita's contract and bailment claims are preempted.

Scholastic's preemption argument here fails, and the cases it cites are inapposite, because unauthorized *copying* is *not* the gravamen of Yamashita's *bailment-theory* claims. Counts III – V *do not* incorporate the "copying" allegations of Count I, for infringement.[109] Yamashita charges Scholastic with conversion "by failing and refusing to disclose to Yamashita all of the uses that Scholastic has made of the Bailed Property."[110] Yamashita seeks an accounting "under the terms of the PVAs and/or the law of bailment," because "Scholastic has failed and

---

[108] *See Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1103, 1107 (10th Cir. 2004) ("blow[ing] dust off of … common law doctrine[ ] of bailments," and finding it "well settled … that there may be a bailment of incorporeal as well as corporeal personalty"); *Strozzo v. Sea Island Bank*, 240 Ga.App. 183, 521 S.E.2d 392, 396 (1999) (finding corporation liable under bailment law for, among other things, misdelivering *electronic* warehouse receipts).

[109] A316 ¶ 45, A317 ¶ 58, A318 ¶ 63.

[110] A318 ¶ 60.

refused and continues to fail and refuse to account for its uses of the Bailed Property."[111]

These bailment-theory claims go "far beyond those pertaining to copyright law."[112]  A bailee's refusal to provide usage information to the bailor/owner of an item of personal property is different than unauthorized copying of intellectual property.  It is a wrong against a "distinct" property interest.[113]

Scholastic itself asserts an "audit" is not a Section 106 right.  It follows that Yamashita's bailment-related claims assert rights not "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106,"[114] and they are not preempted.

---

[111] A318 ¶¶ 64-65.

[112] *Natkin v. Winfrey*, 111 F.Supp.2d 1003, 1014 (N.D. Ill. 2000).

[113] *See* 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied."); *see* 6 Patry on Copyright § 18:35 ("Many accounting actions are classic state law claims, which are not preempted."); *Davis & Davis v. S&T World Products*, 154 A.D.2d 330, 545 N.Y.S.2d 806, (2nd Dept. 1989) (licensor's accounting claim was not preempted, where more than "unauthorized use of copyrightable material" was alleged); *General Mills, Inc. v. Filmtel Intern. Corp.*, 178 A.D.2d 296, 577 N.Y.S.2d 384, 386 (1st Dept. 1991) (reversing dismissal of demand for accounting).

[114] 17 U.S.C. § 301(a).

## CONCLUSION

Yamashita asks the Court to grant the relief sought in his opening brief.

DATE:  October 16, 2017    HARMON SEIDMAN BRUSS & KERR, LLC

/s/ Maurice Harmon

Maurice Harmon
Christopher Seidman
Gregory N. Albright
*Attorneys for Plaintiffs / Appellants*
*Michael Yamashita and*
*Michael Yamashita, Inc.*

# <u>Certificate of Compliance with Word Limit, Typeface Requirements, and Type-Style Requirements</u>

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii), Fed. R .App. P. 32(e), and Local Rule 32.1(a)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,998 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook type style.


DATE: October 16, 2017    HARMON SEIDMAN BRUSS & KERR, LLC

        */s/ Maurice Harmon*

        Maurice Harmon
        Christopher Seidman
        Gregory N. Albright
        *Attorneys for Plaintiffs / Appellants*
        *Michael Yamashita*
        *and Michael Yamashita, Inc.*

38